FILED

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2  John B. Quinn (Bar No. 090378)
   (johnquinn@quinnemanuel.com)
   Bruce E. Van Dalsem (Bar No. 124128)
3  (brucevandalsem@quinnemanuel.com)
   B. Dylan Proctor (Bar No. 219354)
4  (dylanproctor@quinnemanuel.com)
   Joseph C. Sarles (Bar No. 254750)
5  (josephsarles@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Tel: (213) 443-3000/ Fax: (213) 443-3100
7
   Attorneys for Defendants Snapchat, Inc.,
8  Toyopa Group, LLC, Evan Thomas
   Spiegel, and Robert Cornelius Murphy
9
   DURIE TANGRI, LLP
10 Ragesh Tangri (Bar No. 159477)
   (rtangri@durietangri.com)
11 217 Leidesdorff Street
   San Francisco, CA 94111
12 Tel: (415) 362-6666/ Fax: (415) 236-6300

13 Attorneys for Defendants Lightspeed
   Venture Partners IX, L.P., Benchmark
14 Capital Partners VII, L.P., Institutional
   Venture Partners XIV, L.P., General
15 Catalyst Group VI, L.P., SF Growth Fund,
   GC&H Investments, LLC, SV Angel IV,
16 L.P. and THL A17 Limited

17                UNITED STATES DISTRICT COURT

18                CENTRAL DISTRICT OF CALIFORNIA

19                      WESTERN DIVISION

20

21 FRANK REGINALD BROWN IV,          CASE NO.

                                     CV13-8569 PGK (SSx)
22        Plaintiff,
                                     NOTICE OF REMOVAL TO
23        vs.                        FEDERAL COURT

24 SNAPCHAT, INC., a Delaware
   corporation; TOYOPA GROUP, LLC, a [28 U.S.C. §1331, §1367, §1441, §1446
25 California Limited Liability Company; and §1454]
   EVAN THOMAS SPIEGEL, an
26 individual; ROBERT CORNELIUS
   MURPHY, an individual;
27 LIGHTSPEED VENTURE            PART 1 OF 2
   PARTNERS IX. L.P.. a California
28

                       NOTICE OF REMOVAL

1  limited partnership; BENCHMARK
   CAPITAL PARTNERS VII, L.P., a
2  California limited partnership;
   INSTITUTIONAL VENTURE
3  PARTNERS XIV, L.P., a Delaware
   limited partnership; GENERAL
4  CATALYST GROUP VI, L.P., a
   Delaware limited partnership; GC&H
5  INVESTMENTS, LLC, a California
   limited liability company; SV ANGEL
6  IV, L.P., a Delaware limited
   partnership; SF GROWTH FUND, an
7  unknown entity; THL A17 Limited, an
   unknown entity; and DOES 1 through
8  25 inclusive,

9            Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES
2  AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that defendants Evan Thomas Spiegel, Robert
4  Cornelius Murphy, Lightspeed Venture Partners IX, L.P., Benchmark Capital
5  Partners VII, L.P., Institutional Venture Partners XIV, L.P., General Catalyst
6  Group VI, L.P., SF Growth Fund, GC&H Investments, LLC, SV Angel IV, L.P. and
7  THL A17 Limited (together the "Removing Defendants"), hereby remove this
8  action from the Superior Court of California, County of Los Angeles, to the United
9  States District Court for the Central District of California pursuant to 28 U.S.C.
10  §§1331, 1338(a), 1441(a) and 1454(a), and in support thereof, respectfully submit
11  the following:

12                          **STATEMENT OF THE CASE**

13      1.      On or about February 21, 2013, Plaintiff Frank Reginald Brown, IV,
14  ("Brown") commenced this action against Snapchat, Inc., Toyopa Group, LLC,
15  Evan Thomas Spiegel, Robert Cornelius Murphy and Does 1 through 25 by filing a
16  complaint in the Superior Court of California, County of Los Angeles, Case Number
17  BC501483. The original complaint included causes of action for breach of joint
18  venture agreement, breach of partnership agreement, breach of fiduciary duty,
19  conversion, unjust enrichment, accounting, and declaratory relief. See generally,
20  Complaint, Exh. 6. Among other things, Brown initially alleged that he devised the
21  idea for the smartphone application now popularly known as "Snapchat," and that
22  Brown, Spiegel and Murphy expressly agreed to form a partnership and/or joint
23  venture dedicated to developing the Snapchat application (the "Application") for
24  commercial purposes. Compl. ¶¶ 15-19. The Complaint further alleged that Spiegel
25  and Murphy wrongfully deprived Brown of his interest in the partnership/joint
26  venture. Compl. ¶¶ 45, 53.

27      2.      On October 23, 2013, plaintiff was granted leave to amend his
28  Complaint and the First Amended Complaint ("FAC") was deemed filed as of that

1 | date. See Stipulation and Order For Leave to File First Amended Complaint, Exh.
2 | 58; First Amended Complaint, Exh. 1.

3 |    3.    The FAC alleges two new causes of action against Spiegel and Murphy
4 | (the "Individual Defendants"). In the Second and Fourth Causes of Action, Brown
5 | for the first time asserts claims for "Breach of Implied Joint Venture Agreement"
6 | and "Breach of Implied Partnership Agreement," respectively. FAC ¶¶ 80-89; 97-
7 | 106, Exh. 1. The two new claims allege that, in the *absence* of any actual agreement
8 | to form a partnership/joint venture, the *conduct* of Brown, Spiegel, and Murphy --
9 | by intending to develop the Application together and each contributing to the
10 | development of the Application -- is sufficient to *imply* that a partnership/joint
11 | venture was formed, entitling Brown to an equal share of the Application's profits.
12 | See id.

13 |    4.    The FAC also adds eight new defendants, including, Lightspeed
14 | Venture Partners IX, L.P., Benchmark Capital Partners VII, L.P., Institutional
15 | Venture Partners XIV, L.P., General Catalyst Group VI, L.P., SF Growth Fund,
16 | GC&H Investments, LLC, SV Angel IV, L.P. and THL A17 Limited (the "Investor
17 | Defendants"). The only cause of action asserted against the Investor Defendants is
18 | the Eighth Cause of Action for Conversion. FAC ¶¶ 129-136, Exh. 1. Brown
19 | alleges that defendants wrongfully converted his "ownership interest" in
20 | Snapchat, Inc. Id. The Investor Defendants accepted service of the First Amended
21 | Complaint on November 19, 2013.

22 |    5.    The allegations in the Second, Fourth and Eighth Causes of Action are
23 | predicated on rights governed exclusively by federal law, specifically the federal
24 | Copyright Act, and present a federal question requiring removal of the state action
25 | to this Court. 17 U.S.C. § 301(a).

26 |    6.    Removal by the Individual Defendants is timely because Plaintiff's new
27 | claims in the FAC are removable pursuant to 28 U.S.C. §§1441(a) and 1454, and
28 | this Notice of Removal has been filed within 30 days of the Individual Defendants

1  receiving "through service or otherwise, of a copy of an amended pleading . . . from
2  which it may first be ascertained that the case is one which is or has become
3  removable." 28 U.S.C. §1446(b)(3); see also 28 U.S.C. §1454(b)(2).

4      7.    Removal by the Investor Defendants is timely because the conversion
5  claim asserted against them is removable pursuant to 28 U.S.C. §§1441(a) and 1454,
6  and this Notice of Removal has been filed within 30 days of service of the FAC. 28
7  U.S.C. § 1446(b)(2)(B) ("Each defendant shall have 30 days after receipt by or
8  service on that defendant of the initial pleading or summons described in
9  paragraph (1) to file the notice of removal"); see also 28 U.S.C. §1454(b)(2).

10 **II.    GROUNDS FOR REMOVAL**

11     8.    The Removing Defendants hereby remove this action based on federal
12 question jurisdiction, pursuant to 28 U.S.C. §1441(a). This Court has original
13 jurisdiction over this action because Plaintiff alleges claims for 1) breach of implied
14 partnership agreement, 2) breach of implied joint venture agreement, and 3)
15 conversion which, given the underlying facts alleged and rights asserted in the FAC,
16 are completely preempted under the laws of the United States, specifically, the
17 federal Copyright Act. See 28 U.S.C. §§1331, 1338(a), 1441(a), 1454(a); 17 U.S.C.
18 §301(a).

19     9.    An "independent corollary" of the well-pleaded complaint rule is that
20 "a plaintiff may not defeat removal by omitting to plead necessary federal questions
21 in a complaint." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation
22 Trust for S. California, 463 U.S. 1, 22, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983); see
23 also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L. Ed.
24 2d 55 (1987) ("Congress may so completely pre-empt a particular area that any civil
25 complaint raising this select group of claims is necessarily federal in character.").

26     10.    Under the doctrine of complete preemption, also known as "artful
27 pleading," even a well-pleaded state law claim is deemed to "arise under federal
28 law" when a federal statute has completely preempted a particular area of law. Hall

1 | v. N. Am. Van Lines, Inc, 476 F.3d 683, 687 (9th Cir. 2007). Any state claim based
2 | on a "completely preempted" law is considered a federal claim, from its inception,
3 | and warrants removal of the complaint to district court. Id. "If federal law
4 | completely preempts a plaintiff's state-law claim, that plaintiff may not escape
5 | federal jurisdiction no matter how careful his or her pleading." Botsford v. Blue
6 | Cross & Blue Shield of Montana, Inc., 314 F.3d 390, 393 (9th Cir. 2002).

7 |    11.    Complete preemption applies to claims arising under the Copyright
8 | Act, and the removal of preempted claims is proper. Dielsi v. Falk, 916 F. Supp.
9 | 985, 993 (C.D. Cal. 1996) ("copyright law 'completely preempts' equivalent state
10 | claims . . . [t]herefore, preempted copyright claims can be removed to federal
11 | court"). "Congress has clearly indicated that state-law claims which come within
12 | the subject matter of copyright law and which protect rights equivalent to any of the
13 | exclusive rights within the scope of federal copyright law ... should be litigated only
14 | as federal copyright claims." Id. (quoting Rosciszewski v. Arete Associates, Inc., 1
15 | F.3d 225, 232 (4th Cir. 1993)); see also Firoozye v. Earthlink Network, 153 F. Supp.
16 | 2d 1115, 1121-23 (N.D. Cal. 2001); JustMed, Inc. v. Byce, 600 F.3d 1118, 1124
17 | (9th Cir. 2010); 28 U.S.C. §1338(a) (federal courts have exclusive jurisdiction over
18 | copyright claims).

19 |    12.    A state claim is preempted by the Copyright Act when two elements
20 | are present: (1) the work on which the state claim is based is within the subject
21 | matter of copyright; and (2) the rights that plaintiff asserts under state law are
22 | qualitatively equivalent to rights within the general scope of copyright protection.
23 | Del Madera Properties v. Rhodes & Gardner, Inc., 820 F.2d 973, 976 (9th Cir. 1987)
24 | *overruled on other grounds by* Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct.
25 | 1023, 127 L.Ed. 2d 455 (1994); Worth v. Universal Pictures, Inc., 5 F. Supp. 2d
26 | 816, 821 (C.D. Cal. 1997); Firoozye, 153 F. Supp. 2d at 1122-23; Dielsi, 916 F.
27 | Supp. at 991. To survive preemption, the state claim must have an "extra element"
28 |

1  which changes the nature of the action.  Del Madera, 820 F.2d at 977; Worth, 5 F.
2  Supp. 2d at 821.

3          **A.      The Second and Fourth Causes of Action are Completely**
4                   **Preempted By the Copyright Act.**

5          13.     Plaintiff's state law claims for breach of an implied partnership or joint
6  venture agreement effectively seek to assert rights as a purported joint author of the
7  Snapchat Application.  See FAC ¶¶ 80-89; 97-106.  Brown attempts to use the guise
8  of an "implied partnership" under California law to avoid the Copyright Act's
9  governance of what constitutes a joint work and the rights of joint authors.  17
10 U.S.C. §§101, 201(a).  Under the Ninth Circuit's two-part test for copyright
11 preemption, however, Brown's claims for breach of implied partnership/joint
12 venture agreement are completely preempted.[1]

13                  **1.      The Work at Issue is Within The Subject Matter of**
14                           **Copyright.**

15         14.     The first prong is met because the work on which the claims are based
16 is plainly "within the subject matter of copyright."  Del Madera Properties, 820 F.2d
17 at 976.  The Snapchat Application is a type of computer program, consisting of,
18 *inter alia*, computer code and a user interface.  Computer programs are subject to
19 copyright protection, and are well within the broader "subject matter" of copyright.
20 17 U.S.C. §101 (defining "computer program"); Johnson Controls, Inc. v. Phoenix
21 Control Sys., Inc., 886 F.2d 1173, 1175 (9th Cir. 1989) ("Computer software is
22 subject to copyright protection"); Firoozye, 153 F. Supp. 2d at 1124-25 ("Even if a
23 particular piece of software is not copyrightable because it represents an idea itself

24

25 [1]  Plaintiff's claim for breach of implied partnership agreement is identical to his
26 claim for breach of implied joint venture agreement, except for the substitution of
   the word "partnership" for "joint venture."  See FAC ¶¶ 80-89; 97-106.  A
   partnership and a joint venture are indeed generally the same.  See Chambers v.
27 Kay, 29 Cal. 4th 142, 151 (2002).  Because the elements of plaintiffs' claims are the
28 same, defendants' arguments set forth herein apply equally to both claims.

1  rather than the expression of an idea, it is clear that computer programs in general
2  come within the subject matter of copyright. After all, the subject matter of
3  copyright is broader than the Act's protections, so material that falls within a
4  category that is eligible for protection in certain instances must come within the
5  Act's subject matter.").

6        **2.    The Rights Plaintiff Asserts Under State Law Are Equivalent**
7                 **to Copyright Protection.**

8        15.    The second prong of the test is also satisfied because the rights that
9  Brown asserts under state law are "equivalent to rights within the general scope of
10 copyright as specified by Section 106 of the Copyright Act." Del Madera
11 Properties, 820 F.2d at 976. The rights and remedies Brown seeks for his purported
12 "breach of implied partnership/joint venture agreement" are equivalent -- indeed
13 *identical* -- to the rights and remedies of a putative joint author under the Copyright
14 Act when authorship of a "joint work" is disputed. 17 U.S.C. §§101, 106, 201(a).

15       16.    Section 101 of Copyright Act establishes the concept of a "joint work"
16 and requires that in order for a "joint work" to be created, the authors must "intend"
17 to jointly create a work and must each make certain "contributions" to the work.
18 Aalmuhammed v. Lee, 202 F.3d 1227, 1231 (9th Cir. 2000); 17 U.S.C. §101. In
19 determining whether a work is jointly authored under the Copyright Act, the Ninth
20 Circuit examines whether there is a "shared intent to be coauthors," joint "control"
21 of the work, and whether the appeal of the work can "attributed" to the contributions
22 of multiple authors. Richlin v. Metro-Goldwyn-Mayer Pictures, Inc., 531 F.3d 962,
23 968 (9th Cir. 2008). If a joint work is found, Section 201(a) of the Act provides
24 that each of the "authors of a joint work are coowners of copyright in the work" and
25 each author has exclusive rights to use the work as enumerated in Section 106 of the
26 Act. 17 U.S.C. §§201(a), 106. As co-owners, joint authors are also "under a duty to
27 account to the other joint owners of the work for a ratable share of the profits
28 realized from his use of the work," including profits from any reproduction and/or

1 distribution as provided in Section 106. <u>Corbello v. DeVito</u>, 832 F. Supp. 2d 1231,
2 1249 (D. Nev. 2011).

3      17.    When authorship of a joint work is disputed, a putative joint author has
4 the right to bring a claim *in federal court* seeking a declaration under the Copyright
5 Act that he is a rightful author of the joint work, and seeking an accounting from his
6 co-authors for his share of any profits derived from the reproduction and distribution
7 of the work. <u>Kings Road Entertainment, Inc. v. West Coast Pictures</u>, 2012 WL
8 5937968, *2 (C.D. Cal. Nov. 26, 2012) ("[a]ll of the federal circuit courts of appeal
9 that have addressed the issue ... agree that a determination of copyright ownership
10 based on a disputed allegation of co-authorship presents a federal question that
11 arises under, and must be determined according to, the Copyright Act") (citing
12 <u>Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.</u>
13 <u>KG.</u>, 510 F.3d 77, 86 (1st Cir. 2007); <u>see also</u> <u>JustMed, Inc. v. Byce</u>, 600 F.3d 1118,
14 1124-25 (9th Cir. 2010). In addition, state law claims are preempted when they are
15 equivalent to the federal claim of a putative joint author seeking a declaration of
16 ownership and enforcement of his rights under Section 106(1) and 106(3) to share in
17 the profits of the reproduction and distribution of the joint work. <u>See</u> <u>System XIX,</u>
18 <u>Inc. v. Parker, 30 F. Supp. 2d 1225, 1231 (N.D. Cal. 1998)</u> ("the rights Maritime [as
19 putative joint author] asserts under its state law claim are equivalent to rights within
20 the general scope of copyright as specified in §106"); <u>Price v. Fox Entm't Grp., Inc.</u>,
21 473 F. Supp. 2d 446, 460-61 (S.D.N.Y. 2007) (finding state claims preempted
22 because "the act that gave rise to these claims is [defendant's] alleged failure to treat
23 [plaintiff] as a co-author and to account to him for profits, which is covered by
24 federal copyright law.").

25      18.    Plaintiff's state law claims are "equivalent" to this type of federal claim
26 under the Copyright Act, and are therefore completely preempted. Brown alleges
27 that by "engaging in the conduct of co-developing" the Application, he, Spiegel, and
28 Murphy "manifested an intention to enter into a joint venture [or partnership]

1 agreement to do those things and share co-equally in the profit and losses

2 therefrom." FAC ¶¶ 81, 98, Exh. 1. The alleged conduct includes "combining their

3 efforts and resources to develop the concept of the Application," combining efforts

4 "to implement" the Application, and "making important decisions concerning the

5 Application." Id. Brown alleges that his various "contributions" to the creation of

6 the Snapchat Application include developing the concept of the Application, the

7 original name of the Application, designing the logo, the logo (ghost) character, and

8 the "layout and design of the Application's features, including the camera button,

9 screen layout, and the colors." FAC ¶¶ 24, 30, 31, 37, Exh. 1.[2]

10    19.    No express partnership agreement, oral or written, is alleged as an

11 element of these claims. See FAC ¶¶ 80-89; 97-106, Exh. 1. Nonetheless, Plaintiff

12 claims that a "partnership" under state law should be implied based on this mutual

13 intent and joint conduct, affording Brown the right to a share of the profits from the

14 Application. FAC ¶¶ 81, 98, Exh. 1. Spiegel and Murphy allegedly "breached"

15 such partnership by depriving Brown of his "ownership share," by depriving Brown

16 of the "proceeds therefrom," and by "obstructing [Brown's] right to equally manage

17 and conduct" the business of the Application. FAC ¶¶ 86, 103, Exh. 1. Plaintiff

18 also claims that Spiegel and Murphy committed a breach by failing to provide

19 Brown with an "accurate accounting" of the profits realized from commercializing

20 the Application. FAC ¶¶ 87, 104, Exh. 1.

21    20.    When examining whether the second prong of the preemption test is

22 satisfied, "the court should engage in a fact-specific inquiry into the *actual*

23 allegations underlying the claims at issue in the case, so as to determine whether the

24 "gravamen" of the state law claim asserted is the same as the rights protected by the

25

26 [2] See also Plaintiff Reginald Brown IV's Responses To Special Interrogatories, Response to Interrogatory No. 9, Exh. 2, Brown's Responses And Objections To

27 Defendant Snapchat, Inc.'s Form Interrogatories, Response to Interrogatory 17.1 (RFA 50), Exh. 3; Plaintiff Reginald Brown IV's Responses To Special

28 Interrogatories, Response to Interrogatory No. 17, Exh. 2.

1  Copyright Act . . . In other words, the question is whether the state law claims *as*
2  *they are asserted* are "equivalent" to a federal copyright claim." Idema v.
3  Dreamworks, Inc., 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001) (emphasis in
4  original). The "gravamen" of Brown's claims are that he, Spiegel, and Murphy
5  *intended* to create and develop the Application together, they each made
6  *contributions* to the development and design of the Application, they exercised joint
7  *control* over the Application through voting on important decisions, and as such,
8  Brown is a "partner" entitled to an equal share of the Application's profits. FAC ¶¶
9  80-89; 97-106. These elements overlap with those of a joint authorship claim under
10 the Copyright Act. 17 U.S.C. §§101, 201(a); Richlin, 531 F.3d at 968. Moreover,
11 the damages Plaintiff seeks are a share of the profits from the *reproduction* and
12 *distribution* of the Snapchat Application – rights which are expressly provided to
13 joint authors under the Copyright Act. 17 U.S.C. §106(1) and (3). There is *no*
14 "extra element" that makes the state claims qualitatively different. Idema, 162 F.
15 Supp. 2d. at 1190.

16    21.   A right of joint ownership of a work falling under the subject matter of
17 copyright based on intent, conduct, contributions, and control arises *exclusively*
18 under the Copyright Act. 17 U.S.C. §301. Any state cause of action purporting to
19 give equivalent rights based on the same elements is preempted. Because the
20 Second and Fourth causes of action are completely preempted by the Copyright Act,
21 Plaintiff's First Amended Complaint is removable. Franchise Tax Bd. of State of
22 Cal., 463 U.S. at 22; Metro. Life Ins. Co., 481 U.S. at 63-64; see also NTD
23 Architects v. Baker, 2012 WL 2498868, *8 (S.D. Cal. June 27, 2012) ("The
24 preemption of just one claim is sufficient to warrant removal.").

25    22.   This Court has supplemental jurisdiction over the First, Third, Fifth,
26 Sixth, Seventh and Eighth Causes of Action in the FAC pursuant to 28 U.S.C.
27 §1367(a). These claims are related to the preempted claims such that they form part
28 of the same case or controversy under Article III of the United States Constitution

1 and are derived from a "common nucleus of operative fact." Worth v. Universal
2 Pictures, Inc., 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997); 28 U.S.C. §1367(a).

3       **B.**      **The Eighth Cause of Action is Completely Preempted By the**
4               **Copyright Act.**

5      23.    Brown's eighth cause of action, for conversion, alleges that the Investor
6 Defendants "wrongfully converted Plaintiff's ownership interest in Snapchat, Inc."
7 See FAC ¶ 130, Exh. 1.

8      24.    Brown's claim for conversion against the Investor Defendants therefore
9 depends upon (*inter alia*) his having had an ownership interest in Snapchat, Inc. in
10 the first place.

11      25.    Two of Brown's theories for why he had an ownership interest in
12 Snapchat, Inc. are implied partnership (as alleged in his second cause of action) and
13 implied joint venture (as alleged in his fourth cause of action).

14      26.    Both those causes of action are completely preempted by the Copyright
15 Act because they effectively are, and seek rights equivalent to those that would be
16 sought by, a claim for joint authorship, which claim is exclusively federal. See Part
17 II.A, supra.

18      27.    Insofar as Brown's conversion claim against the Investor Defendants
19 effectively depends upon his establishing a claim of joint authorship, it too is
20 dependent upon the Copyright Act and thus completely preempted and subject to
21 removal. See Cambridge Literary Properties, 510 F.3d at 80-81, 86 (holding that
22 plaintiff's claim to be "a co-owner in turn depends, on the facts of this case, upon
23 the federal Copyright Act," because those claims required "a determination of
24 copyright ownership based on a disputed allegation of co-authorship."). (The issue
25 in Cambridge was whether the Copyright Act's statute of limitations, or a state-law
26 statute of limitations, applied, but the court expressly relied upon the analysis of
27 jurisdictional cases, holding that "the question ... whether there is a federal question

28

1 | under the Copyright Act as to the pre-requisite of co-ownership involves parallel
2 | reasoning." Id. at 86.)

3 |     28.    The fact that Brown labels his claim as one for "conversion" under
4 | state law does not serve to avoid preemption. 17 U.S.C. §§ 101, 201(a). State
5 | claims alleging conversion which depend on and seek the profits from the
6 | exploitation of intellectual property rights are routinely preempted by the Copyright
7 | Act. See, e.g., Firoozye, 153 F. Supp. 2d at 113; Worth, 5 F. Supp. 2d at 823;
8 | Idema, 162 F. Supp. 2d at 1193; Dielsi, 916 F. Supp. at 992.

9 |     29.    Because the Eighth cause of action is completely preempted by the
10 | Copyright Act, Brown's First Amended Complaint is removable. Franchise Tax Bd.
11 | of State of Cal., 463 U.S. at 22; Metro. Life Ins. Co., 481 U.S. at 63-64; see also
12 | NTD Architects, 2012 WL 2498868 at *8 ("The preemption of just one claim is
13 | sufficient to warrant removal.").

14 |     30.    This Court has supplemental jurisdiction over the First, Second, Third,
15 | Fourth, Fifth, Sixth, and Seventh causes of action in the FAC pursuant to 28 U.S.C.
16 | § 1367(a). These claims are related to the preempted claim such that they form part
17 | of the same case or controversy under Article III of the United States Constitution
18 | and are derived from a "common nucleus of operative fact." Worth, 5 F. Supp. at
19 | 823; 28 U.S.C. § 1367(a).

20 | **III.**    **ADDITIONAL PROCEDURAL REQUIREMENTS**

21 |     31.    This action, filed in the Superior Court of the State of California,
22 | County of Los Angeles, is being removed to the district and division embracing the
23 | place where the action is pending. 28 U.S.C. §1441(a).

24 |     32.    Pursuant to 28 U.S.C. §1446(a), copies of all the process, pleadings and
25 | orders on file with the state court or served on defendants in the state court are
26 | attached collectively as Exhibits 4 through 63.

27 |     33.    A notice of filing of removal, with a copy of this Notice of Removal
28 | attached thereto, is being filed with the clerk of the Superior Court of the State of

1  California, County of Los Angeles, Case Number BC501483, pursuant to 28 U.S.C.
2  § 1446(d).

3      34.   A notice of filing of removal, with a copy of this Notice of Removal
4  attached thereto, is being served on Plaintiff's attorney pursuant to 28 U.S.C.
5  § 1446(d). A proof of such service is filed concurrently herewith.

6      35.   Defendants Evan Thomas Spiegel, Robert Cornelius Murphy, Toyopa
7  Group, LLC, Snapchat, Inc., Lightspeed Venture Partners IX, L.P., Benchmark
8  Capital Partners VII, L.P., Institutional Venture Partners XIV, L.P., General Catalyst
9  Group VI, L.P., SF Growth Fund, GC&H Investments, LLC, SV Angel IV, L.P.,
10 and THL A17 Limited join in and consent to removal in this action. 28 U.S.C.
11 § 1446(b)(2)(A, C).

12     36.   Defendant Does 1 through 25 are also named in the state court action.
13 These unknown defendants are not required to join in the Notice of Removal. See,
14 e.g., Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1213 (9th Cir. 1980).

15     37.   No previous application has been made for the relief requested herein.
16     38.   This notice has been signed pursuant to Federal Rule of Civil
17 Procedure 11.

18                              **CONCLUSION**

19     By this notice, the Removing Defendants do not waive any objections as to
20 improper service, jurisdiction, or venue, or any other defenses or objection to this
21 action. The Removing Defendants intend no admission of fact, law or liability by
22 this notice, and reserve all defenses, motions and pleas. The Removing Defendants
23 pray that this action be removed to this Court for determination; that all further
24 proceedings in the state court be stayed; and that the Removing Defendants obtain
25 all additional relief to which they are entitled.

26
27
28

1  | DATED: November 20, 2013

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____
Bruce E. Van Dalsem
Attorneys for Defendants Snapchat, Inc.,
Toyopa Group, LLC, Evan Thomas
Spiegel, and Robert Cornelius Murphy

DATED: November 20, 2013

DURIE TANGRI, LLP

By _____
Ragesh Tangri
Attorneys for Defendants Lightspeed
Venture Partners IX, L.P., Benchmark
Capital Partners VII, L.P., Institutional
Venture Partners XIV, L.P., General
Catalyst Group VI, L.P., SF Growth Fund,
GC&H Investments, LLC, SV Angel IV,
L.P. and THL A17 Limited

-13-

# EXHIBIT 1

50

1 | LEE TRAN LIANG & WANG LLP
K. Luan Tran (SBN 193808)
2 | James M. Lee (SBN 192301)
Cyrus Khojandpour (SBN 260233)
3 | Lisa J. Chin (SBN 259793)
601 S. Figueroa Street, Suite 3900
4 | Los Angeles, CA 90017
Tel. 213-612-3737 / Fax. 213-612-3773
5
RAY A. MANDLEKAR, ATTORNEY AT LAW
6 | Ray A. Mandlekar (SBN 196797)
601 S. Figueroa Street, Suite 4050
7 | Los Angeles, CA 90017
Tel. 213-785-6130 / Fax. 213-254-9001
8
Attorneys for Plaintiff
9 | Frank Reginald Brown, IV

**FILED**
Superior Court of California
County of Los Angeles

OCT 23 2013

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Ingrid Flores

10

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

11

### FOR THE COUNTY OF LOS ANGELES

12

— NO SUMMONS ISSUED —

13

| | |
|---|---|
| FRANK REGINALD BROWN, IV, | CASE NO: BC501483 |
| 14    Plaintiff, | Assigned for all purposes to the Honorable John L. Segal (Dept. 50) |
| 15 | |
| 16  v. | **VERIFIED FIRST AMENDED COMPLAINT** |
| 17  SNAPCHAT, INC., a Delaware corporation; TOYOPA GROUP, LLC, a California | |
| 18  Limited Liability Company; EVAN THOMAS SPIEGEL, an individual; | 1.  Breach of Express Joint Venture Agreement; |
| 19  ROBERT CORNELIUS MURPHY, an individual; LIGHTSPEED VENTURE | 2.  Breach of Implied Joint Venture Agreement; |
| 20  PARTNERS IX, L.P., a California limited partnership; BENCHMARK CAPITAL | 3.  Breach of Express Partnership Agreement; |
| 21  PARTNERS VII, L.P., a California limited partnership; INSTITUTIONAL VENTURE | 4.  Breach of Implied Partnership Agreement |
| 22  PARTNERS XIV, L.P., a Delaware limited partnership; GENERAL CATALYST | 5.  Breach of Fiduciary Duty; |
| 23  GROUP VI, L.P., a Delaware limited partnership; GC&H INVESTMENTS, LLC., | 6.  Constructive Fraud; |
|      a California limited liability company; SV | 7.  Conversion; and |
| 24  ANGEL IV LP; a Delaware limited partnership; SF GROWTH FUND, an | 8.  Conversion. |
| 25  unknown entity; THL A17 Limited, an unknown entity; and DOES 1 through 25 | **DEMAND FOR JURY TRIAL** |
| 26  inclusive, | |
|            Defendants. | |

27

28

VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 14

1

2

## INTRODUCTION

3      1.      This is a case of partners betraying a fellow partner. Plaintiff brings this

4   action to obtain relief from the betrayal and breach of fiduciary duty committed by two of

5   his former fellow students at Stanford University involving a startup venture they founded

6   to implement Plaintiff's idea for a mobile device application. While at Stanford, Plaintiff

7   came up with the idea of a mobile device application allowing users to send pictures to

8   others that then quickly disappear from the recipient's mobile device (the "Application").

9   Plaintiff shared his idea for the Application with Individual Defendants named herein for

10   the purpose of forming a joint venture/partnership to commercialize it. These three then

11   did in fact structure the joint venture/partnership for this purpose, explicitly dividing

12   ownership interests in it equally among them in thirds, living together to work on their

13   startup for months, and through this joint venture/partnership developed and marketed the

14   popular mobile phone application now universally known as "Snapchat."

15      2.      Despite the fact that Plaintiff devised the idea for Snapchat and fully

16   performed all his obligations in the joint venture/partnership, Individual Defendants then

17   improperly excluded Plaintiff from all participation, profit and interest in the joint

18   venture/partnership, just one month after the Application was publicly launched in July

19   2011. These defendants' actions were part of a deliberate scheme to deprive Plaintiff of his

20   rightful ownership interest in the joint venture/partnership so as to improperly benefit

21   themselves at the expense of Plaintiff, in violation of their agreement with Plaintiff and

22   other legal duties to Plaintiff. From then on, despite Plaintiff's role as one of the three

23   founders of the business, Individual Defendants held themselves out to the public as the

24   only two individuals who started the business.

25      3.      Due in large part to Plaintiff's contributions, Snapchat is now a wildly

26   popular application. The *Business Insider* publication recently called Snapchat "*A Threat*

27   *To Facebook, And It Is 2013's Most Likely Billion Dollar Startup.*" Other press articles

28   reported that Snapchat users are now sending over 350 million pictures per day, over five

- 1 -      VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 15

1 | times more than Instagram, a startup that was reportedly acquired by Facebook in 2012 for
2 | $1 billion dollars.

3 |     4.    By this action, Plaintiff seeks to have his rights and interests restored to what
4 | they would have been but for defendants' improper and actionable conduct.

5 |
6 | <center>**PARTIES**</center>
7 |

8 |     5.    Plaintiff Frank Reginald "Reggie" Brown, IV ("Brown" or "Plaintiff" or
9 | "Plaintiff Brown"), is an individual residing in Richland County, South Carolina.

10 |     6.    Defendant Snapchat, Inc., is a Delaware corporation with its principal place
11 | of business and headquarters located in Los Angeles County. Snapchat's corporate officers
12 | direct, control, and coordinate the corporation's activities from within Los Angeles County.
13 | Plaintiff is informed and believes, and on that basis alleges, that Snapchat, Inc. holds assets
14 | and interests rightfully belonging to the joint venture/partnership, and thus Plaintiff. It is
15 | further alleged, on information and belief, that Individual Defendants at various times used
16 | Snapchat, Inc. to bring money and property in and out of the joint venture/partnership,
17 | including to deposit joint venture/partnership income and to pay joint venture/partnership
18 | expenses.

19 |     7.    Defendant Toyopa Group, LLC ("Toyopa"), is a California Limited Liability
20 | Company with its principal place of business and headquarters located in Los Angeles
21 | County. Toyopa's members direct, control, and coordinate Toyopa's activities from within
22 | Los Angeles County. Plaintiff is informed and believes, and on that basis alleges, that
23 | Toyopa either holds (or at one time held) assets and interests rightfully belonging to the
24 | joint venture/partnership, and thus Plaintiff. It is further alleged, on information and belief,
25 | that Individual Defendants at various times used Toyopa to bring money and property in
26 | and out of the joint venture/partnership, including to deposit joint venture/partnership
27 | income and to pay joint venture/partnership expenses.

28 |     8.    Defendant Evan Thomas Spiegel ("Spiegel" or "Defendant Spiegel") is an

<center>- 2 -    VERIFIED FIRST AMENDED COMPLAINT</center>
<center>**EXHIBIT 1**</center>
<center>**PAGE 16**</center>

1 | individual residing in the County of Los Angeles.

2 | 9. Defendant Robert "Bobby" Cornelius Murphy ("Murphy" or "Defendant
3 | Murphy") is an individual residing in the County of Los Angeles.

4 | 10. Defendants Spiegel and Murphy are occasionally collectively referred to
5 | herein as the "Individual Defendants."

6 | 11. Upon information and belief, Defendant Lightspeed Venture Partners IX,
7 | L.P. ("Lightspeed"), is a California limited partnership with its principal place of business
8 | and headquarters located in Menlo Park, California.

9 | 12. Upon information and belief, Defendant Benchmark Capital Partners VII,
10 | L.P. ("Benchmark"), is a California limited partnership with its principal place of business
11 | and headquarters located in Menlo Park, California.

12 | 13. Upon information and belief, Defendant Institutional Venture Partners XIV,
13 | L.P. ("IVP"), is a Delaware limited partnership with its principal place of business and
14 | headquarters located in Menlo Park, California.

15 | 14. Upon information and belief, Defendant General Catalyst Group VI, L.P.
16 | ("GCG"), is a Delaware limited partnership with its principal place of business and
17 | headquarters located in Palo Alto, California.

18 | 15. Upon information and belief, Defendant GC&H Investments, LLC
19 | ("GC&H") is a California limited liability company with its principal place of business and
20 | headquarters located in San Francisco, California.

21 | 16. Upon information and belief, Defendant SV Angel IV LP ("SVA") is a
22 | Delaware limited partnership with its principal place of business and headquarters located
23 | in San Francisco, California.

24 | 17. Upon information and belief, Defendant SF Growth Fund ("SFGF") is an
25 | entity of unknown corporate form with its principal place of business and headquarters
26 | located in Northern California.

27 | 18. Upon information and belief, Defendant THL A17 Limited ("THL") is an is
28 | an entity of unknown corporate form with its principal place of business and headquarters

-3-                    VERIFIED FIRST AMENDED COMPLAINT
EXHIBIT 1
PAGE 17

1  located in Northern California.

2      19.    Defendants Lightspeed, Benchmark, IVP, GCG, GC&H, SVA, SFGF and

3  THL are occasionally referred to herein as the "Venture Capitalist Defendants."

4      20.    Plaintiff is unaware of the true names and capacities, whether individual,

5  corporate, associate or otherwise, of defendants Does 1 through 25, inclusive, or any of

6  them, and therefore sues these defendants, and each of them, by such fictitious names. The

7  Doe defendants include persons and entities assisting or acting in concert with the named

8  defendants in connection with the actions complained of herein and include persons and

9  entities that are responsible in some manner for the acts, occurrences and liability

10  hereinafter alleged and referred to. All defendants herein are referred to collectively as

11  "Defendants."

12      21.    Defendants are jointly and severally liable for the wrongful conduct set forth

13  herein because they are aiding and abetting each other and/or conspired to commit such

14  wrongful conduct.

15

16  **JURISDICTION AND VENUE**

17

18      22.    The Court has subject matter jurisdiction over this action pursuant to Article

19  VI, section 10 of the California Constitution and *California Code of Civil Procedure*

20  §410.10. The Court has personal jurisdiction over Defendants pursuant to *California Code*

21  *of Civil Procedure* §410.50.

22      23.    Venue is proper in this County pursuant to *California Code of Civil*

23  *Procedure* §395 because one or more of the Defendants either resides or maintains

24  executive offices in this County, a substantial portion of the wrongful acts complained of

25  herein, including the conspiracy to commit such acts, occurred in this County, and the

26  Defendants have received substantial compensation in this County by doing business here

27  and engaging in numerous activities which had an effect in this County.

28

1  **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

2

3  **Plaintiff Comes Up With Idea of Disappearing Pictures**

4

5  24.  In the Spring of 2011, Plaintiff Brown was a junior at Stanford University,

6  pursuing a degree in English and living on-campus in the Kimball Hall dormitory. At this

7  time, Plaintiff Brown independently conceived of the idea of a mobile device application

8  that would allow a person to transmit a picture to another mobile device user– but the

9  picture would then automatically delete itself after a short time, and no longer be present in

10  the recipient's inbox (the "Application"). Thus, unlike the normal situation where the

11  recipient of a picture may store the sent picture or forward it to others, Plaintiff Brown's

12  concept would impede the recipient from doing so.

13  25.  Plaintiff Brown endeavored to share his idea with Defendant Spiegel, another

14  Stanford student also living at Kimball Hall and a person whom Plaintiff Brown considered

15  a friend. Brown did so for the purpose of potentially forming an association with Spiegel

16  to commercialize Brown's idea together, in the form of a joint venture or partnership.

17  26.  In his deposition in this case, Defendant Spiegel admitted that Plaintiff

18  Brown devised the idea for deleting picture messages. Defendant Spiegel testified as

19  follows:

20  *Q. Did you come up with the idea for deleting picture*
   *messages?*

21  *A. No.*
   *Q. Did [Defendant] Bobby [Murphy] come up with the idea?*

22  *A. No, he did not.*
   *Q. Who came up with the idea?*

23  *A. [Plaintiff] Reggie [Brown] did.*

24

25  **Formation of Joint Venture/Partnership With Individual Defendants**

26

27  27.  Around this time, one day Brown and Spiegel were together in Spiegel's

28  dorm room. Brown stated to Spiegel something to the effect of: "we should make an

- 5 -  VERIFIED FIRST AMENDED COMPLAINT

**EXHIBIT 1**
**PAGE 19**

1  application that sends deleting picture messages." Spiegel acknowledged the commercial
2  viability of Brown's idea, repeatedly exclaiming that Brown had indeed conceived of a
3  "million-dollar idea." Spiegel also indicated his assent to the notion that the two were
4  forming an association as partners to pursue the commercialization of Brown's idea.
5  Spiegel asked Brown if they could work on the Application together, Brown responded in
6  the affirmative, and the two shook hands. That night, the two began searching for a
7  computer "coder" to join in developing the Application. They then started interviewing a
8  number of potential coders, including fellow Stanford students.

9      28.    Sometime after their initial meeting where they agreed to develop the
10  Application as joint venturers/partners, Brown and Spiegel chose defendant Murphy, a
11  fellow Stanford student, to serve as the coder for the Application. Murphy was Spiegel's
12  friend in that the two had previously worked together on a failed project called
13  "FutureFreshmen."

14      29.    At this point, Brown and the Individual Defendants, as joint venturers/
15  partners, entered into an explicit oral agreement as to their respective interests in their joint
16  undertaking to develop the Application (which would later be known as "Picaboo" and then
17  "Snapchat") for their common profit. That explicit agreement was that their interests in the
18  venture would be equally distributed, *i.e.*, each of them would have 1/3 ownership and
19  profit interests in the joint venture/partnership. Brown and Individual Defendants agreed
20  also that Brown would serve as Chief Marketing Officer; Spiegel would serve as Chief
21  Executive Officer; and Murphy would serve as Chief Technology Officer. Also, at this
22  time Brown and Individual Defendants agreed that each would have equal say in the control
23  and management of the joint venture/partnership. As alleged below, until the point where
24  the Individual Defendants' improperly kicked Plaintiff Brown out of the business, Plaintiff
25  Brown's conduct and the outward conduct of Individual Defendants were fully consistent
26  with this explicit oral agreement.

27
28

VERIFIED FIRST AMENDED COMPLAINT
                                              **EXHIBIT 1**
                                              **PAGE 20**

**Plaintiff's Further Contributions to the Joint Venture/Partnership**

30.     While the search for a coder was ongoing in about the Spring of 2011, Brown set about further developing the Application. Brown conceived of the original name for the Application, "Picaboo," a reference to the child's game where faces appear and disappear.

31.     At this time, Brown also conceived of and designed the logo for the Application– the same logo that Defendants continue to use for the Application to this day. This logo is a ghost cartoon drawn in black on a yellow background; the ghost is smiling and sticking its tongue out on the right side. Brown created this logo by directing Spiegel on what to draw, while the latter implemented Brown's direction on Adobe InDesign. Brown also independently devised the name for the ghost logo – that of "Ghostface Chillah" – which Defendants continue to use to this day.

32.     Brown also expended additional efforts in developing the Application. For example, Brown created the original pages for Picaboo on Twitter ("twitter.com/picaboo4you" and "twitter.com/teampictaboo"[1]), and the original page for Picaboo on Facebook ("https://www.facebook.com/pages/Picaboo/216412738369001? ref=hl").[2]

33.     In accordance with this joint venture/partnership agreement, once the 2010-2011 academic year ended, Brown and Individual Defendants decided to spend a good portion of the summer together developing the Application. As a startup company, Brown and Individual Defendants decided to perform their work that summer at the Los Angeles County residence of Spiegel's father. The residence is located on Toyopa Street, and is subsequently used as the corporate address for Defendants Snapchat, Inc., and Toyopa Group, LLC.

---

[1] "Pictaboo" was temporary, variant name for the Application.

[2] After excluding Plaintiff from the business, the Individual Defendants changed the name of the Application from "Picaboo" to "Snapchat."

34. Accordingly, at the beginning of the summer of 2011, Brown and Individual Defendants temporarily relocated to the Toyopa residence, where they lived and worked on the Application pursuant to the joint venture/partnership agreement they had entered into. Brown moved his personal belongings from his Stanford dorm to the Toyopa residence.

35. On June 9, 2011, in a text message to Plaintiff, Defendant Spiegel referred to his father's house, where Plaintiff and Defendants Spiegel and Murphy were living and working on the Application, as "startuphou5" (meaning "startup house"). By this message, Defendant Spiegel meant to recognize that the three men would be working on their startup company, Picaboo, at the house that summer.

36. During this time, Brown continued to fully perform all of his obligations pursuant to the joint venture/partnership agreement. For example, Brown authored the Terms of Service, Privacy Policy, website Frequently Asked Questions ("FAQ") and marketing materials for the Application. Brown also drafted the FAQ and offering language for the Application on the iTunes Store, as well as the photo release for the first photo shoot for the Application's marketing materials. Brown further devised the name "Toyopa Group, LLC," for Defendant Toyopa, the Limited Liability Company that he and Individual Defendants agreed would hold their interests in the Application. In Plaintiff Brown's discussions with Individual Defendants concerning Toyopa, Individual Defendants explicitly acknowledged that Brown would be an equal member of Toyopa with them. Brown also managed the tax returns for Toyopa.

37. Plaintiff Brown also contributed to the layout and design of the Application's features, including the camera button, screen layout, and the colors.

38. During this time, in recognition of their status as three co-equals in the joint venture/partnership, Plaintiff and Individual Defendants voted to make important decisions concerning the Application. For example, the three voted in favor of changing the Application's name from "Picaboo" to "Pictaboo" and then back again. The three also voted to implement in the Application a notification that the recipient of the message had taken a screenshot of it.

39. On June 28, 2011, Defendant Murphy sent a mass email to his friends asking them to try the beta test version of the Application that he, Spiegel and Plaintiff have been working on, and signed the email as "Bobby, Evan, Reggie;"

40. In July of 2011, Plaintiff Brown and Individual Defendants publicly launched the Application—by making it available for download by the public via the iTunes Store—under Brown's name for it, "Picaboo."

41. At this time Brown also undertook substantial additional efforts to market the Application, in accordance with his role as Chief Marketing Officer in the joint venture/partnership. Brown used popular social media websites to market the Application, interfacing with his numerous contacts to promote use of the Application.

42. For example, on August 3, 2011, Brown sent a Facebook message to an acquaintance stating the following:

> *im trying to tell you about the app though*
>
> *you dont have to help me but my friends and i made an*
>
> *app for the iphone that lets you send deleting picture*
>
> *messages to your friends so if you have an iphone you should*
>
> *get on that [...]*

43. The acquaintance, making reference to Brown's substantial marketing efforts for the Application, responded: "*youre such the salesman wow... how many times have you made this speech already? youre like an expert by now im sure.*"

44. Brown's marketing efforts were successful, and were in large part responsible for creating the original groundswell of interest in the Application that continues today.

45. In addition, at this time Brown undertook the responsibility of drafting and filing a patent application for the technology used in the Application, which named Brown and Individual Defendants as co-inventors. Brown prepared the patent application and filed it with the United States Patent Office on behalf of the joint venture/partnership.

46. At all times, Brown was paid no monetary compensation for his work, in

VERIFIED FIRST AMENDED COMPLAINT

**EXHIBIT 1**
**PAGE 23**

1 accordance with his role as a joint venturer/partner in an enterprise that was not yet

2 generating profits, as he was sharing equally in the risks and rewards of the startup.

3

4 **Individual Defendants Acknowledge that Plaintiff Was Among the Three**

5 **Individuals Who Built the Application and Co-Founded the Startup**

6

7 47. On several occasions, Individual Defendants acknowledged to Plaintiff and

8 others that the Application was developed by Brown, Spiegel and Murphy working

9 together as partners and co-founders of this startup.

10 48. For example, on June 21, 2011, Defendant Spiegel, in a Google chat to an

11 acquaintance, acknowledged Plaintiff Brown's central role in the marketing of the

12 Application:

13 *reggie gets here thurs*
*and thats when we'll solidify our marketing strategy*

14 49. Moreover, in recently produced discovery by Defendants, Plaintiff learned

15 that on July 21, 2011, Spiegel emailed his Stanford professor and wrote:

16 *Hi Professor Adams,*

17 *I found your sexting research compelling, and certainly in line with my college experience. I have developed a new iPhone*

18 *application with two classmates called Picaboo (http://picaboo.me/dl) that allows users to send timed picture*

19 *messages to each other. I would be very interested in any and all feedback you might have and I would love the opportunity*

20 *to further discuss your research.*
*Thank you,*

21 *Evan Spiegel*

22

23 50. On July 27, 2011, Spiegel emailed to an acquaintance:
*Nicole,*

24 ***I just built an app with two friends of mine** (certified bros our*

25 *frat just got kicked off campus) and we think you might really, really like it. It's called Picaboo and it's a game for sending*

26 *disappearing pictures with your friends. You just take a picture, set the timer up to 10 seconds, and send to a friend –*

27 *when they receive your Picaboo they can view it until the timer runs out and then it's gone forever! Fun stuff.*

28

1  *We'd love to hear your feedback even though your last post*
   *was a little moody.*
2  *(Nothing wrong with doing what you love and making $$$.*
   *Swag. It. Out.)*
3  *You can download our app here: http://picaboo.me/dl and if*
4  *you get one of your girlfriends on it we promise you'll be*
   *obsessed.*
5  *Next time just Picaboo the weird dude that stares at you,*
   *Evan* (emphasis added).
6
       51.    In his deposition in this case, Defendant Spiegel admitted that his reference
7
   to "two friends of mine" in this email referred to Defendant Murphy and Plaintiff Brown.
8
   Defendant Spiegel testified as follows:
9

10         *Q. Okay. You see where you referred to two friends of mine?*
11         *A. That's correct.*
           *Q. Who are those two friends you are referring to?*
12         *A. [Defendant] Bobby [Murphy] and [Plaintiff] Reggie*
           *[Brown].*
13

14     52.    On July 1, 2011, Defendant Spiegel's father John Spiegel, sent a text
15 message to Plaintiff Brown's mother. The text acknowledged that Plaintiff Brown and
16 Individual Defendants had been working cooperatively on their "startup" that summer, and
17 that this work included Brown's preparation of the patent application:
18
19         *.... It is delightful to have Reggie with us this summer as he,*
           *Evan and Bobby work on their startup. They are working hard,*
20         *having fun and seem to be learning a lot. Reggie is drafting his*
           *first patent application, so he is on his way to being a lawyer!*
21         *His lovely Southern manners are a welcome addition to my*
           *home (tho maybe you could get him to stop calling me "Mr.*
22         *Spiegel", as I can't!). ...*
23
24     53.    And in another recently produced document by Defendants, Mr. Spiegel
25 wrote to a personal chef for the household:
26
27         *Doug*
           *Thanks so much for your help cooking this summer. I am*
28         *looking forward to some more of those delicious meals you*
           *have cooked for deb and her family.*

-----

-11-     VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 25

> *Here is what we need at my house. My 21 year old son is home*
> *for the summer with two Stanford buddies, working on their*
> *start up business.*
> \*\*\*
> *Thanks again*
> *John*

54.     And as discussed, for months during the summer of 2011, the three of them were living and working together on the Application at the Toyopa residence. These three were also celebrating together the milestones achieved by their startup business.

55.     For example, in about mid-July 2011, shortly after Picaboo was launched on iTunes, Brown and Individual Defendants went to a restaurant in Los Angeles to celebrate the "birth of Picaboo" and Murphy's birthday. Below is a picture of them (from left to right, Brown, Murphy, and Spiegel) taken during that celebration with a cake that has the ghost logo of Picaboo (as discussed, this is the same logo now used by Snapchat).



56.     On July 21, 2011, Defendant Murphy "tagged" Plaintiff Brown on the former's Facebook page "in Picaboo under Employers," indicating his understanding that Brown and Murphy were working together on the Application.

57.     On or about July 25, 2011, one of Individual Defendants posted the following update on the www.crunchbase.com site:

> *Picaboo For iPhone*
>
> *Picaboo is the first-ever ephemeral picture messaging app for iPhone*
>
> *Milestones*
>
> *Picaboo for iPhone added Reggie Brown as CMO (5/1/11)*
>
> *Picaboo for iPhone added Bobby Murphy as CTO (5/1/11)*
>
> *Picaboo for iPhone added Evan Spiegel as CEO (5/1/11)*

58.     As the end of the 2011 summer drew near, Brown and Individual Defendants decided to take a short break from their work at the Toyopa residence, and Brown returned to South Carolina to visit his family while Murphy returned to Northern California to visit his. The three of them, however, continued to work remotely on their joint venture. For example, Brown was busy finalizing the patent application for Picaboo, and continued promoting the Application.

59.     Brown completed the patent application in early August 2011, and Individual Defendants were happy with this development upon being informed of it.

60.     During this time up until the betrayal in mid-August 2011 (discussed below), Brown and Individual Defendants continued to update each other regarding the business and the progress of their assigned tasks.

### The August 2011 Betrayal

61.     Unbeknownst to Plaintiff, at some time after the formation of their joint/venture partnership, Individual Defendants formed an undisclosed intent to eventually wrongfully exclude Plaintiff Brown from the joint venture/partnership, in order to take for themselves Brown's rightful share of the enterprise. At this time, while *outwardly*

VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 27

1 manifesting a continuing intent to develop the Application as a joint venture/partnership of
2 co-equals with Plaintiff, Individual Defendants secretly began to take steps in preparation
3 of excluding Brown once the Application gained an established user base.  For example,
4 while, as alleged above, Plaintiff and Individual Defendants explicitly agreed that Plaintiff
5 would have an equal ownership interest in Defendant Toyopa, the Individual Defendant
6 secretly formed Toyopa without including any interest for Plaintiff.

7      62.      By late July of 2011, the Application was heavily gaining in popularity.  For
8 example, on July 23, 2011, several days after launching the Application, Defendant Spiegel
9 texted Plaintiff to report on the increasing popularity of the Application and stated that
10 "[t]his thing is a rocketship."  And on July 24, 2011, Spiegel texted to Brown of the
11 Application that "Our 7 day retention is 60% right now (target is 30%) and were [(sic)]
12 growing."

13      63.      In mid-August 2011, as Brown was making plans to return to the Toyopa
14 residence (where he still had his personal belongings), he and Individual Defendants had a
15 contentious telephone conversation regarding their startup.  Defendant Spiegel at one point
16 abruptly hung up the phone.

17      64.      In the next few days, Individual Defendants wrongfully and physically shut
18 Brown out of the joint venture/partnership by, for example, changing the passwords for its
19 computer servers and accounts to prevent Brown from doing any further work on the
20 Application for the joint venture/partnership.  Individual Defendants then cut off all
21 communication with Brown and refused to respond to his requests to discuss the matter
22 with them.

23

24      **The Cover-Up**

25

26      65.      After they wrongfully ousted Brown from the joint-venture/partnership in
27 mid-August 2011, Defendants took one step after another to rewrite history to deny
28 Brown's undeniable role in the creation and building of the Application. Defendants also

- 14 -            VERIFIED FIRST AMENDED COMPLAINT
**EXHIBIT 1**
**PAGE 28**

1   changed the name of the Application, the company's logo, and the company's corporate
2   structure as part of their effort to eliminate any vestige of Brown's involvement in the
3   company he co-founded.

4       66.    For example, on August 30, 2011 (two weeks after Brown's ouster),
5   Defendant Spiegel sent out an email to market the Application which was strikingly similar
6   to an email he wrote to a blogger on July 27, 2011 (before the ouster), discussed above at
7   ¶50, with one obvious—and telling—exception: Brown's involvement in the building of
8   the Application was omitted. The chart below compares the two emails.

9

| July 27, 2011 Email By Defendant Spiegel (Before Brown's Ouster) | August 30, 2011 Email By Spiegel (After Brown's Ouster) |
|---|---|
| *I just built an app with two friends of mine (certified bros our frat just got kicked off campus) and we think you might really, really like it. It's called Picaboo and it's a game for sending disappearing pictures with your friends. You just take a picture, set the timer up to 10 seconds, and send to a friend – when they receive your Picaboo they can view it until the timer runs out and then it's gone forever! Fun stuff.* | *I built an app this summer with a friend of mine (our frat got kicked off last year …) and I think you'd love it. It's called Picaboo and it's a game for sending disappearing pictures with your friends. You take a picture, set the timer up to 10 seconds, and send to a friend –when they receive your Picaboo they can view it until the timer runs out and then it's gone forever! Fun stuff.* |

22

23      67.    In September 2011, Defendants changed the name of the Application from
24  "Picaboo" to "Snapchat."

25      68.    On May 16, 2012, after Brown attempted to contact the Defendant Spiegel to
26  resolve the matter without litigation, Defendants responded by hiring the international law
27  firm of Cooley LLP to send a threatening letter to the young college graduate. In the letter,
28  Cooley claimed that Brown "contributed nothing" to the joint-venture/partnership.

.1   However, on May 24, 2012, just eight days after the Cooley letter, Defendants Spiegel and

2   Murphy applied to the California Secretary of State to convert-out Toyopa Group LLC into

3   a new entity, Defendant Snapchat, Inc. On the following day, May 25, 2012, Defendants

4   incorporated Snapchat Inc. in Delaware. When Defendant Spiegel was asked at his

5   deposition about why Defendants suddenly made this corporate change, his lawyers at

6   Cooley refused to allow Defendant Spiegel to provide a full answer, objecting on the basis

7   of attorney-client privilege. Upon information and belief, this corporate change was an

8   attempt by Defendants to distance themselves from Toyopa Group LLC which they told

9   Brown he would have an equal ownership interest in.

10       69.   In June 2013, shortly after the filing of this lawsuit, Defendants changed the

11   company's ghost logo and replaced it with a logo that shows a face-less ghost. The *Los*

12   *Angeles Times* ran an article entitled "*Snapchat changes logo amid lawsuit challenging*

13   *founding of startup*" commenting on the change in the middle of this lawsuit in which

14   "Brown listed designing the Snapchat Ghostface Chillah logo [among] his contributions to

15   the company."

16

17         **Venture Capitalist Investment in Snapchat, Inc.**

18

19       70.   In or around April of 2012, Defendant Snapchat, Inc., received a seed

20   investment from Defendant Lightspeed, and for this investment, Defendant Lightspeed

21   received equity shares in Defendant Snapchat, Inc. Upon information and belief, at the

22   time of its acquisition of these equity shares, Defendant Lightspeed had actual and/or

23   constructive notice of Plaintiff Brown's ownership interest in Snapchat, Inc.

24       71.   Upon information and belief, in or around February of 2013, Defendant

25   Snapchat, Inc., received a Series A funding investment from Defendant Benchmark and

26   other firms, and for this investment, Defendant Benchmark received equity shares in

27   Defendant Snapchat, Inc. Upon information and belief, at the time of its acquisition of

28

- 16 -     VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 30

1 these equity shares, Defendant Benchmark had actual and/or constructive notice of Plaintiff
2 Brown's ownership interest in Snapchat, Inc.

3     72.   Upon information and belief, in or around June of 2013, Defendant Snapchat,
4 Inc., received a Series B funding investment from Defendants IVP, GCG, GC&H, SVA,
5 SFGF and THL, and for this investment, Defendants IVP, GCG, GC&H, SVA, SFGF and
6 THL received equity shares in Defendant Snapchat, Inc. Upon information and belief, at
7 the time of its acquisition of these equity shares, Defendants IVP, GCG, GC&H, SVA,
8 SFGF and THL had actual and/or constructive notice of Plaintiff Brown's ownership
9 interest in Snapchat, Inc. Upon information and belief, it is further alleged that Individual
10 Defendants each personally profited by over several millions of dollars as Individual
11 Defendants began selling shares in Snapchat to these other Defendants.

12
13
14             **FIRST CAUSE OF ACTION**
15       (BREACH OF EXPRESS JOINT VENTURE AGREEMENT)
16      (AS AGAINST DEFENDANTS SPIEGEL AND MURPHY)
17

18     73.   Plaintiff repeats and adopts the above paragraphs of this Complaint as though
19 fully set forth herein.

20     74.   In or around Spring of 2011, Plaintiff Brown and Defendants Spiegel and
21 Murphy entered into a valid oral joint venture agreement to commercialize the Application.
22 Pursuant to this joint venture agreement, the joint venture holds all rights and interests
23 corresponding to the Application now known as "Snapchat," with Plaintiff Brown owning
24 33.3% of the joint venture; Defendant Spiegel owning 33.3% of the joint venture; and
25 Defendant Murphy owning 33.3% of the joint venture.

26     75.   At all times, Plaintiff Brown performed all conditions, covenants and
27 promises required to be performed on his part in accordance with the terms of the joint
28 venture agreement.

76.    Defendants Spiegel and Murphy breached this joint venture agreement by, among other things, depriving Plaintiff Brown of his ownership share in the joint venture and the past, present, and future proceeds therefrom, and by obstructing Plaintiff Brown's right to equally manage and conduct the joint venture's business.

77.    Defendants Spiegel and Murphy have further breached the joint venture agreement by failing to provide Plaintiff Brown with an accurate accounting of the financial affairs of the joint venture.

78.    Other wrongful acts and/or omissions constituting breach by Defendants Spiegel and Murphy of the joint venture agreement are presently unknown. Plaintiff will seek leave of Court in order to amend this Complaint once such additional facts are ascertained through discovery.

79.    As a direct and foreseeable result of the breaches of the joint venture agreement by Defendants Spiegel and Murphy, Plaintiff Brown has been damaged in an amount according to proof within the jurisdiction of this Court. It is noted that in his deposition in this case, Defendant Spiegel admitted that "[Plaintiff] Reggie [Brown] may deserve something for some of his contributions [to the Application]."

### SECOND CAUSE OF ACTION

#### (BREACH OF IMPLIED JOINT VENTURE AGREEMENT)

#### (AS AGAINST DEFENDANTS SPIEGEL AND MURPHY)

80.    Plaintiff repeats and adopts the above paragraphs of this Complaint as though fully set forth herein, but pleads this cause of action in the alternative to the First and Third Causes of Action.

81.    In performing the acts and engaging in the conduct of co-developing and co-marketing the Application together, as described above, Plaintiff and Individual Defendants manifested an intention to enter into a joint venture agreement to do those things and to share co-equally in the profits and losses therefrom. Such acts and conduct

VERIFIED FIRST AMENDED COMPLAINT

**EXHIBIT 1**
**PAGE 32**

1 included, but were not limited to, combining their efforts and resources to develop the
2 concept of the Application, and to implement and market the Application, and making
3 important decisions concerning the Application by voting among themselves, as alleged
4 above.

5     82.    Individual Defendants and Plaintiff held themselves out to the public as a
6 co-equal joint venture for the development and marketing of the Application.

7     83.    Individual Defendants performed these acts and conduct with the intent to
8 manifest their intention to form the described joint venture with Plaintiff, who understood
9 said intent and acted with his own intent to enter into the joint venture.

10     84.    At no time did Individual Defendants conclusively manifest an intent to
11 Plaintiff that they did not intend to remain in the joint venture with Plaintiff, until their
12 betrayal of Plaintiff as alleged at ¶59 ff.

13     85.    At all times, Plaintiff Brown performed all conditions, covenants and
14 promises required to be performed on his part in accordance with the terms of the joint
15 venture agreement.

16     86.    Defendants Spiegel and Murphy breached this joint venture agreement by,
17 among other things, depriving Plaintiff Brown of his ownership share in the joint venture
18 and the past, present, and future proceeds therefrom, and by obstructing Plaintiff Brown's
19 right to equally manage and conduct the joint venture's business.

20     87.    Defendants Spiegel and Murphy have further breached the joint venture
21 agreement by failing to provide Plaintiff Brown with an accurate accounting of the
22 financial affairs of the joint venture.

23     88.    Other wrongful acts and/or omissions constituting breach by Defendants
24 Spiegel and Murphy of the joint venture agreement are presently unknown. Plaintiff will
25 seek leave of Court in order to amend this Complaint once such additional facts are
26 ascertained through discovery.

27

28

89.     As a direct and foreseeable result of the breaches of the joint venture
agreement by Defendants Spiegel and Murphy, Plaintiff Brown has been damaged in an
amount according to proof within the jurisdiction of this Court.

### THIRD CAUSE OF ACTION
#### (BREACH OF EXPRESS PARTNERSHIP AGREEMENT)
#### (AS AGAINST DEFENDANTS SPIEGEL AND MURPHY)

90.     Plaintiff repeats and adopts the above paragraphs of this Complaint as though
fully set forth herein.

91.     In or around Spring of 2011, Plaintiff Brown and Defendants Spiegel and
Murphy entered into a valid oral partnership agreement to commercialize the Application.
Pursuant to this partnership agreement, the partnership holds all rights and interests
corresponding to the Application now known as "Snapchat," with Plaintiff Brown owning
33.3% of the partnership; Defendant Spiegel owning 33.3% of the partnership; and
Defendant Murphy owning 33.3% of the partnership.

92.     At all times, Plaintiff Brown performed all conditions, covenants and
promises required to be performed on his part in accordance with the terms of the
partnership agreement.

93.     Defendants Spiegel and Murphy have breached this partnership agreement
by, among other things, depriving Plaintiff Brown of his ownership share in the partnership
and the past, present, and future proceeds therefrom, and by obstructing Plaintiff Brown's
rights to equally manage and conduct the partnership's business.

94.     Defendants Spiegel and Murphy have further breached the partnership
agreement by failing to provide Plaintiff Brown with an accurate accounting of the
financial affairs of the partnership.

95.     Other wrongful acts and/or omissions constituting breach by Defendants
Spiegel and Murphy of the partnership agreement are presently unknown.  Plaintiff will

1  seek leave of Court in order to amend this Complaint once such additional facts are
2  ascertained through discovery.

3      96.     As a direct and foreseeable result of the breaches of the partnership
4  agreement by Defendants Spiegel and Murphy, Plaintiff Brown has been damaged in an
5  amount according to proof within the jurisdiction of this Court.

6

7                              **FOURTH CAUSE OF ACTION**
8                      (BREACH OF IMPLIED PARTNERSHIP AGREEMENT)
9                      (AS AGAINST DEFENDANTS SPIEGEL AND MURPHY)

10

11     97.     Plaintiff repeats and adopts the above paragraphs of this Complaint as though
12  fully set forth herein, but pleads this cause of action in the alternative to the First and Third
13  Causes of Action.

14     98.     In performing the acts and engaging in the conduct of co-developing and
15  co-marketing the Application together, as described above, Plaintiff and Individual
16  Defendants manifested an intention to enter into a partnership agreement to do those things
17  and to share co-equally in the profits and losses therefrom. Such acts and conduct included,
18  but were not limited to, combining their efforts and resources to develop the concept of the
19  Application, and to implement and market the Application, and making important decisions
20  concerning the Application by voting among themselves, as alleged above.

21     99.     Individual Defendants and Plaintiff held themselves out to the public as a
22  co-equal partnership for the development and marketing of the Application.

23     100.    Individual Defendants performed these acts and conduct with the intent to
24  manifest their intention to form the described partnership with Plaintiff, who understood
25  said intent and acted with his own intent to enter into the joint venture.

26     101.    At no time did Individual Defendants conclusively manifest an intent to
27  Plaintiff that they did not intend to remain in the partnership with Plaintiff, until their
28  betrayal of Plaintiff as alleged above.

- 21 -          VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 35

1    102.   At all times, Plaintiff Brown performed all conditions, covenants and
2  promises required to be performed on his part in accordance with the terms of the
3  partnership agreement.

4    103.   Defendants Spiegel and Murphy have breached this partnership agreement
5  by, among other things, depriving Plaintiff Brown of his ownership share in the partnership
6  and the past, present, and future proceeds therefrom, and by obstructing Plaintiff Brown's
7  rights to equally manage and conduct the partnership's business.

8    104.   Defendants Spiegel and Murphy have further breached the partnership
9  agreement by failing to provide Plaintiff Brown with an accurate accounting of the
10  financial affairs of the partnership.

11    105.   Other wrongful acts and/or omissions constituting breach by Defendants
12  Spiegel and Murphy of the partnership agreement are presently unknown.  Plaintiff will
13  seek leave of Court in order to amend this Complaint once such additional facts are
14  ascertained through discovery.

15    106.   As a direct and foreseeable result of the breaches of the partnership
16  agreement by Defendants Spiegel and Murphy, Plaintiff Brown has been damaged in an
17  amount according to proof within the jurisdiction of this Court.

18

19                          **FIFTH CAUSE OF ACTION**
20                          BREACH OF FIDUCIARY DUTY
21                (AS AGAINST DEFENDANTS SPIEGEL AND MURPHY)

22

23    107.   Plaintiff repeats and adopts the above paragraphs of this Complaint as though
24  fully set forth herein.

25    108.   As alleged above, Brown and Individual Defendants entered into a joint
26  venture/partnership to develop the Application for commercial purposes.  As a joint
27  venturer/partner of the joint venture/partnership, Defendants Spiegel and Murphy at all
28  times owed Plaintiff Brown the fiduciary duties of disclosure, loyalty and care.  Pursuant to

- 22 -        VERIFIED FIRST AMENDED COMPLAINT
EXHIBIT 1
PAGE 36

1  such fiduciary duties, Defendants Spiegel and Murphy were required to act in the utmost
2  good faith towards Plaintiff Brown, and to avoid acts and omissions adverse to Plaintiff
3  Brown. By virtue of this fiduciary relationship, Plaintiff Brown reposed trust and
4  confidence in the integrity of Defendants Spiegel and Murphy. Plaintiff Brown provided
5  no cause for Defendants Spiegel and Murphy to act in any manner inconsistent with this
6  fiduciary relationship.

7      109. Defendants Spiegel and Murphy have breached their fiduciary duties,
8  including the duties of disclosure, loyalty, and care to Plaintiff Brown by engaging in the
9  acts and omissions alleged above.

10      110. Defendants Spiegel and Murphy intended to induce Plaintiff Brown to rely
11  on their fiduciary relationship, and in  reasonable reliance thereon, Plaintiff Brown was
12  induced to and did continue his fidelity.

13      111. As a direct and foreseeable result of these breaches of fiduciary duty by
14  Defendants Spiegel and Murphy, Plaintiff Brown has sustained damages in an amount
15  according to proof within the jurisdiction of this Court.

16      112. The aforementioned conduct was intentional on the part of Defendants
17  Spiegel and Murphy, to thereby deprive Plaintiff Brown of property and legal rights and
18  otherwise cause injury, and was despicable conduct that subjected Plaintiff to cruel and
19  unjust hardship and oppression in conscious disregard of his rights, so as to justify an award
20  of exemplary and punitive damages.

21

22              **SIXTH CAUSE OF ACTION**
23                CONSTRUCTIVE FRAUD
24      (AS AGAINST DEFENDANTS SPIEGEL AND MURPHY)
25

26      113. Plaintiff repeats and adopts the above paragraphs of this Complaint as though
27  fully set forth herein.

28      114. As alleged above, Brown and Individual Defendants entered into a joint

1  venture/partnership to develop the Application for commercial purposes. As a joint
2  venturer/partner of the joint venture/partnership, Defendants Spiegel and Murphy at all
3  times owed Plaintiff Brown the fiduciary duties of disclosure, loyalty and care. Pursuant to
4  such fiduciary duties, Defendants Spiegel and Murphy were required to act in the utmost
5  good faith towards Plaintiff Brown, and to avoid acts and omissions adverse to Plaintiff
6  Brown. By virtue of this fiduciary relationship, Plaintiff Brown reposed trust and
7  confidence in the integrity of Defendants Spiegel and Murphy. Plaintiff Brown provided
8  no cause for Defendants Spiegel and Murphy to act in any manner inconsistent with this
9  fiduciary relationship.

10      115.    In addition, at the time of the events alleged above, Plaintiff Brown was in a
11  close personal friendship with Defendant Spiegel. Defendant Spiegel encouraged Plaintiff
12  Brown to consider Defendant Spiegel a close personal friend of Brown's, worthy of his
13  trust and confidence. For example, in April of 2011, Defendant Spiegel sent Plaintiff a
14  message stating in part: "i love you and miss you dude." In addition, at this time Plaintiff
15  Brown and Defendant Spiegel were in the same Kappa Sigma college fraternity together.
16  The Mission Statement of that fraternity provides in part that "The Fraternity should
17  promote the ideal of Brotherhood," "The Fraternity fulfills the need of students to belong to
18  an extended family" and "The Fraternity should promote ethical behavior and
19  decision-making." Based on their close personal relationship and fraternity membership,
20  Plaintiff Brown reposed trust and confidence in the integrity of Defendant Spiegel not to do
21  anything that would prevent Plaintiff Brown from sharing in the fruits of the Application,
22  which sprung from his idea that he shared with his friend Defendant Spiegel.

23      116.    Defendants Spiegel and Murphy have breached their fiduciary/confidential
24  duties, including the duties of disclosure, loyalty and care, to Plaintiff Brown by engaging
25  in the acts and omissions alleged above.

26      117.    For example, as alleged above, Individual Defendants secretly formed
27  Defendant Toyopa excluding Brown. This was done without Brown's knowledge or
28  approval, and was directly contrary to the stated understanding of the parties, reached

- 24 -

VERIFIED FIRST AMENDED COMPLAINT
**EXHIBIT 1**
**PAGE 38**

1  earlier, which was that Brown would be an equal member in Defendant Toyopa. The
2  Individual Defendants' failure to disclose this material fact to Plaintiff Brown, and their
3  efforts to conceal their actions from him, were in breach of their fiduciary/confidential
4  duties to Plaintiff Brown.

5      118.  Because he reposed trust and confidence in the integrity of Defendants
6  Spiegel and Murphy, Plaintiff Brown reasonably relied upon the Individual Defendants'
7  statements that he would be an equal member in Defendant Toyopa, and further reasonably
8  relied upon the Individual Defendants' omission to inform Plaintiff Brown that they
9  intended to, and were in the process of, organizing Defendant Toyopa to his exclusion.
10 Had Plaintiff know of the truth, he would have taken steps to prevent the Individual
11 Defendants' actions and protect his rights and interests.

12     119.  By virtue of this conduct, Individual Defendants secured an advantage to the
13 detriment of Plaintiff Brown, in that they gained ownership in Defendant Toyopa to the
14 exclusion of Plaintiff Brown.

15     120.  As a direct and foreseeable result this conduct by Defendants Spiegel and
16 Murphy, Plaintiff Brown has sustained damages in an amount according to proof within the
17 jurisdiction of this Court.

18     121.  The aforementioned conduct was intentional on the part of Defendants
19 Spiegel and Murphy, to thereby deprive Plaintiff Brown of property and legal rights and
20 otherwise cause injury, and was despicable conduct that subjected Plaintiff to cruel and
21 unjust hardship and oppression in conscious disregard of his rights, so as to justify an award
22 of exemplary and punitive damages.

23

24                       **SEVENTH CAUSE OF ACTION**

25                          CONVERSION

26     (AS AGAINST DEFENDANTS SPIEGEL, MURPHY, TOYOPA AND SNAPCHAT, INC.)

27

28     122.  Plaintiff repeats and adopts the above paragraphs this Complaint as though

1  fully set forth herein.

2       123.  Plaintiff Brown, as a joint venturer/partner of the joint venture/partnership,

3  owned, possessed and/or was entitled to immediate possession at the time of conversion to

4  the personal property, assets, and profits in a sum capable of identification of the joint

5  venture/partnership.

6       124.  Individual Defendants have intentionally taken possession of, transferred,

7  and/or prevented Plaintiff from having access to the joint venture/partnership's personal

8  property, profits and/or assets for a significant period of time after Plaintiff demanded its

9  return.

10      125.  Plaintiff did not consent to Defendants' actions.

11      126.  As a result of Defendants' conversion, Plaintiff has suffered damage and lost

12  profits in a sum capable of identification in an amount according to proof within the

13  jurisdiction of this Court.

14      127.  Defendants' conduct was a substantial factor in causing Plaintiff's harm.

15      128.  The aforementioned conduct was intentional on the part of Defendants, to

16  thereby deprive Plaintiff Brown of property and legal rights and otherwise cause injury,

17  and was despicable conduct that subjected Plaintiff to cruel and unjust hardship and

18  oppression in conscious disregard of his rights, so as to justify an award of exemplary and

19  punitive damages.

20

21                          **EIGHTH CAUSE OF ACTION**

22                                CONVERSION

23           (AS AGAINST DEFENDANTS LIGHTSPEED, BENCHMARK, IVP, GCG, GC&H,

24                              SVA, SFGF AND THL)

25

26      129.  Plaintiff repeats and adopts the above paragraphs of this Complaint as though

27  fully set forth herein.

28      130.  As alleged above, the Individual Defendants, Toyopa and Snapchat, Inc.,

                                    - 26 -        VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 40

1   wrongfully converted Plaintiff's ownership interest in Defendant Snapchat, Inc.

2       131.    In light of Plaintiff's true ownership interest in Snapchat, Inc., which had
3   been wrongfully converted by the Individual Defendants, Toyopa and Snapchat, Inc.,
4   Defendants Lightspeed, Benchmark, IVP, GCG, GC&H, SVA, SFGF and THL (the
5   "Venture Capitalist Defendants"), by taking equity shares in Snapchat, Inc. (as alleged
6   above at ¶¶67-69), wrongfully converted Plaintiff's ownership interest in Snapchat, Inc.

7       132.    Upon information and belief, in doing so, the Venture Capitalist Defendants,
8   at the time each took equity shares in Defendant Snapchat, Inc., had actual and/or
9   constructive knowledge of Plaintiff's true ownership interest in Snapchat, Inc., and the fact
10  that Individual Defendants had wrongfully converted said interest as their own.  The
11  Venture Capitalist Defendants converted Plaintiff's ownership interest in the absence of
12  good faith.

13      133.    The Venture Capitalist Defendants have intentionally taken possession of,
14  transferred, and/or prevented Plaintiff from having access to his interest in Snapchat, Inc.,
15  for a significant period of time after Plaintiff demanded its return.

16      134.    Plaintiff did not consent to the Venture Capitalist Defendants' actions.

17      135.    As a result of the Venture Capitalist Defendants' conversion, Plaintiff has
18  suffered damage and lost profits in a sum capable of identification in an amount according
19  to proof within the jurisdiction of this Court.

20      136.    The Venture Capitalist Defendants' conduct was a substantial factor in
21  causing Plaintiff's harm.  The aforementioned conduct was intentional on the part of the
22  Venture Capitalist Defendants, to thereby deprive Plaintiff Brown of property and legal
23  rights and otherwise cause injury, and was despicable conduct that subjected Plaintiff to
24  cruel and unjust hardship and oppression in conscious disregard of his rights, so as to
25  justify an award of exemplary and punitive damages.

26

27

28

VERIFIED FIRST AMENDED COMPLAINT
**EXHIBIT 1**
**PAGE 41**

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory damages according to proof;

2. For the recovery of his one-third interest in the partnership/joint venture, and all profits and benefits arising therefrom;

3. For interest to the extent permitted by law;

4. For an award of exemplary and punitive damages; and

5. For such other and further relief as the Court may deem proper.

**LEE TRAN LIANG & WANG LLP**

Dated: October 21, 2013

K. Luan Tran
James M. Lee
Cyrus Khojandpour
Lisa J. Chin

**RAY A. MANDLEKAR, ATTORNEY AT LAW**
Ray A. Mandlekar

Attorneys for Plaintiff
Frank Reginald Brown, IV

- 28 -          VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 42

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial.

LEE TRAN LIANG & WANG LLP

Dated: October 22, 2013

K. Luan Tran
James M. Lee
Cyrus Khojandpour
Lisa J. Chin

**RAY A. MANDLEKAR,
ATTORNEY AT LAW**
Ray A. Mandlekar

Attorneys for Plaintiff
Frank Reginald Brown, IV

- 29 -

## VERIFICATION

I have read the foregoing and know its contents. The matters stated in the foregoing are true and correct to the best of my personal knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them, in good faith, to be true.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October ᴊ᥉, 2013 in Durham, North Carolina.

Frank Reginald Brown, IV

VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT 1
PAGE 44

**PROOF OF SERVICE**

**STATE OF CALIFORNIA)**
**COUNTY OF LOS ANGELES)**

   I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

   On **October 22, 2013**, I served the foregoing document(s) described as: **STIPULATION AND [PROPOSED] ORDER FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** on the interested parties in this action.

[X]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| John B. Quinn, Esq.<br>Bruce Van Dalsem, Esq.<br>Joseph Sarles, Esq.<br>Dylan Proctor, Esq<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Tel: (213) 443-3000<br>Fax: (213) 443-3100<br>Email: johnquinn@quinnemanuel.com,<br>brucevandalsem@quinnemanuel.com,<br>josephsarles@quinnemanuel.com;<br>dylanproctor@quinnemanuel.com<br><br>Ryan G. Baker, Esq.<br>Baker Marquart LLP<br>10990 Wilshire Blvd., Fourth Floor<br>Los Angeles, CA 90024<br>Tel: (424) 652-7800<br>Fax: (424) 652 – 7850<br>rbaker@bakermarquart.com | *Attorneys for Defendants*<br>*Snapchat, Inc., Toyopa Group, LLC,*<br>*Evan Thomas Spiegel,and Robert*<br>*Cornelius Murphy* |

[X]   **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**EXHIBIT 1**
**PAGE 45**

[X]  **BY ELECTRONIC MAIL** I transmitted the above listed document(s) to the e-mail address set forth above on this date.

Executed on **October 22, 2013**, at Los Angeles, California.

[X]  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

LYNETTE W. SUKSNGUAN
Type or Print Name                          Signature

EXHIBIT 1 SERVICE
PAGE 46

# EXHIBIT 2

1  LEE TRAN LIANG & WANG LLP
   K. Luan Tran (SBN 193808)
2  James M. Lee (SBN 192301)
   Cyrus Khojandpour (SBN 260233)
3  Lisa J. Chin (SBN 259793)
   601 S. Figueroa Street, Suite 3900
4  Los Angeles, CA 90017
   Tel. 213-612-8900 / Fax. 213-612-3773
5
   RAY A. MANDLEKAR, ATTORNEY AT LAW
6  Ray A. Mandlekar (SBN 196797)
   601 S. Figueroa Street, Suite 4050
7  Los Angeles, CA 90017
   Tel. 213-785-6130 / Fax. 213-254-9001
8

9

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                   **FOR THE COUNTY OF LOS ANGELES**

12

| | |
|---|---|
| 13  FRANK REGINALD BROWN, IV, | CASE NO: BC501483 |
| 14           Plaintiff, | |
| 15     v. | **PLAINTIFF REGINALD BROWN IV'S RESPONSES TO DEFENDANT SNAPCHAT, INC.'S SPECIAL INTERROGATORIES, SET ONE** |
| 16  SNAPCHAT, INC., et al., | |
| 17           Defendants. | Assigned for all purposes to the Honorable John L. Segal (Dept. 50) |
| 18 | |
| 19 | Action Filed: February 21, 2013 |
| 20 | Trial Date: Not Assigned Yet |

21

22

23  **PROPOUNDING PARTY:**    DEFENDANT SNAPCHAT, INC.

24  **RESPONDING PARTY:**    PLAINTIFF FRANK REGINALD BROWN, IV

25  **SET NUMBER:**          ONE

26

27

28

---

1    Pursuant to California Code of Civil Procedure Section 2030 *et seq.*, Plaintiff
2  Frank Reginald Brown IV responds to Defendant Snapchat, Inc.'s Special Interrogatories,
3  Set One as follows:

4
                        **PRELIMINARY STATEMENT**
5
            Plaintiff specifically reserves the right to continue discovery and
6  investigation in this matter for documents, facts, witnesses, dates and supporting evidence
7  that may reveal information that may have been included within these responses if it had
8  been presently within Plaintiff's knowledge. Plaintiff shall not be precluded from
9  presenting evidence at trial discovered after the date of these responses.

10          These responses are made solely for the purpose of this action. All responses
11  are those of Plaintiff only, and not of any other defendant. Each response is subject to all
12  objections as to competence, relevance, materiality, propriety and admissibility and any
13  and all other objections on grounds that would require the exclusion of any statement
14  herein if any interrogatory were asked of, or statements contained herein were made by, a
15  witness present and testifying in court, all of which objections and grounds are reserved
16  and may be interposed at the time of trial.

17          No incidental or implied admissions are intended by Plaintiff's responses to
18  these interrogatories. The fact that Plaintiff has responded to any interrogatory is not
19  intended to be and shall not be construed as a waiver by Plaintiff of all or any part of any
20  objection to any interrogatory.

21          Plaintiff responds to the interrogatories pursuant to the California Code of
22  Civil Procedure, and therefore objects to any definition or instruction inconsistent with the
23  Code. Specifically, Plaintiff objects to the definition of the terms "YOU, "YOUR" and
24  "YOURS" to the extent it purports to include Plaintiff's counsel and limits it responses
25  accordingly.

26          Plaintiff objects to each interrogatory herein to the extent that it seeks
27  information, documents, or materials protected by the attorney-client, the attorney work
28

1 | product doctrine, and/or any other judicially recognized protection or privilege, and

2 | Plaintiff limits its responses accordingly.

3 |     The information provided in these responses was supplied by employees and

4 | agents of Plaintiff, and by review of the files of Plaintiff related to this case. The wording

5 | of the responses is strictly that of Plaintiff's legal counsel.

6 |     The Preliminary Statement is incorporated into each response provided

7 | below by this reference.

8 |

9 | <div align="center">**SPECIAL INTERROGATORIES**</div>

10 | **INTERROGATORY NO. 1:**

11 | IDENTIFY all DOCUMENTS supporting the facts alleged in YOUR COMPLAINT.

12 |

13 | **RESPONSE TO INTERROGATORY NO. 1:**

14 |     Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly

15 | burdensome, oppressive and harassing. A response to this interrogatory would necessitate the

16 | preparation of a compilation, abstract, audit, or summary of Plaintiff's and Defendants'

17 | documents, and the burden or expense of preparing such a compilation would be substantially the

18 | same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff

19 | directs Defendant to the parties' production of non-privileged documents to date, as well as to the

20 | exhibits to the deposition transcripts of Plaintiffs Evan Spiegel and Robert Murphy. Discovery

21 | ongoing and Plaintiff reserves the right to amend and/or supplement this response if and when

22 | additional evidence is discovered.

23 |

24 | **INTERROGATORY NO. 2:**

25 | IDENTIFY all PERSONS with knowledge of the facts alleged in YOUR COMPLAINT.

26 |

27 |

28 |

<div align="center">- 2 -

PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE</div>

<div align="right">**EXHIBIT 2
PAGE 49**</div>

**RESPONSE TO INTERROGATORY NO. 2:**

1

2    Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

3  burdensome, oppressive and harassing. Subject to, and without waiving these objections, Plaintiff

4  responds as follows:

5    Plaintiff; Evan Spiegel; Robert Murphy; John Spiegel; Melissa Thomas; Rick Murphy;

6  Robert Murphy's mother; Eric Jensen; Omar Smith; Karl Francel; Nicole James, Chloe Kent;

7  Kaylee Tuberville; person most knowledgeable at Crunchbase; Jennifer Wales; Martha Goldstein;

8  Martha Brown; Plaintiff's father; Debra Yang; Anu Khosla; Ari Weiss; Audrey Blood; Ben Sagan;

9  Bevan Funderburk; Bobby Nob Hill; Dong Nghi Huynh; Emma Johnson; Erin Pontell; Kendall

10  Stevens; Kristin Lai; Lane Hartman; Laura Bomes; Lauren Ledford; Libbs Carbone; Madelin

11  Konti; Matt McClure; Michelle Deem; Nick Kugelman; Quentin Buckholz; Rachel Joslyn; Riggs

12  Brown; Stephanie Weber; Zineb Laraki; Jack Dubie; Julian Okuyiga; Lily Sadat; Lauren Spiegel;

13  person most knowledgeable at Lightspeed Venture Partners, Benchmark Capital, Institutional

14  Venture Partners, General Catalyst Partners, and SV Angel.

15    Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this

16  response if and when additional evidence is discovered.

17

18  **INTERROGATORY NO. 3:**

19  IDENTIFY all PERSONS with whom YOU have engaged in COMMUNICATIONS RELATING

20  OR REFERRING TO the ALLEGED PARTNERSHIP.

21

22  **RESPONSE TO INTERROGATORY NO. 3:**

23    Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

24  burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks

25  information that is protected by the attorney-client privilege and/or attorney work product

26  doctrine. Subject to, and without waiving these objections, Plaintiff responds as follows:

27    Evan Spiegel; Robert Murphy; John Spiegel; Melissa Thomas; Karl Francel; Chloe Kent;

28  Kaylee Tuberville; Martha Brown; Plaintiff's father; Debra Yang; Anu Khosla; Ari Weiss; Audrey

- 3 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

**EXHIBIT 2**
**PAGE 50**

1  Blood; Ben Sagan; Bevan Funderburk; Bobby Nob Hill; Dong Nghi Huynh; Emma Johnson; Erin

2  Pontell; Kendall Stevens; Kristin Lai; Lane Hartman; Laura Bomes; Lauren Ledford; Libbs

3  Carbone; Madelin Konti; Matt McClure; Michelle Deem; Nick Kugelman; Quentin Buckholz;

4  Rachel Joslyn; Riggs Brown; Stephanie Weber; Zineb Laraki; Jack Dubie; Julian Okuyiga; Lily

5  Sadat; Lauren Spiegel.

6      Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this

7  response if and when additional evidence is discovered.

8

9  **INTERROGATORY NO. 4:**

10  IDENTIFY all PERSONS with whom YOU have engaged in COMMUNICATIONS RELATING

11  OR REFERRING TO YOUR involvement in the APPLICATION, including, but not limited to, all

12  such attorneys, friends, family members, and members of the press.

13

14  **RESPONSE TO INTERROGATORY NO. 4:**

15      Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

16  burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks

17  information that is protected by the attorney-client privilege and/or attorney work product

18  doctrine. Subject to, and without waiving these objections, Plaintiff responds as follows:

19      Evan Spiegel; Robert Murphy; John Spiegel; Melissa Thomas; Karl Francel; Chloe Kent;

20  Kaylee Tuberville; Martha Brown; Plaintiff's father; Debra Yang; Anu Khosla; Ari Weiss; Audrey

21  Blood; Ben Sagan; Bevan Funderburk; Bobby Nob Hill; Dong Nghi Huynh; Emma Johnson; Erin

22  Pontell; Kendall Stevens; Kristin Lai; Lane Hartman; Laura Bomes; Lauren Ledford; Libbs

23  Carbone; Madelin Konti; Matt McClure; Michelle Deem; Nick Kugelman; Quentin Buckholz;

24  Rachel Joslyn; Riggs Brown; Stephanie Weber; Zineb Laraki; Jack Dubie; Julian Okuyiga; Lily

25  Sadat; Lauren Spiegel.

26      Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this

27  response if and when additional evidence is discovered.

28

- 4 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

**EXHIBIT 2
PAGE 51**

1  **INTERROGATORY NO. 5:**

2  IDENTIFY and DESCRIBE all facts supporting YOUR contention that the ALLEGED

3  PARTNERSHIP was formed.

4

5  **RESPONSE TO INTERROGATORY NO. 5:**

6        Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

7  burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks

8  information that is protected by the attorney-client privilege and/or attorney work product

9  doctrine. Subject to, and without waiving these objections, Plaintiff responds as follows:

10        In the Spring of 2011, Plaintiff Brown was a junior at Stanford University, pursuing a

11  degree in English and living on-campus in the Kimball Hall dormitory. At this time, Plaintiff

12  Brown independently conceived of the idea of a mobile device application that would allow a

13  person to transmit a picture to another mobile device user– but the picture would then

14  automatically delete itself after a short time, and no longer be present in the recipient's inbox (the

15  "Application"). Thus, unlike the normal situation where the recipient of a picture may store the

16  sent picture or forward it to others, Plaintiff Brown's concept would impede the recipient from

17  doing so.

18        Plaintiff Brown endeavored to share his idea with Defendant Spiegel, another Stanford

19  student also living at Kimball Hall and a person whom Plaintiff Brown considered a friend. Brown

20  did so for the purpose of potentially forming an association with Spiegel to commercialize

21  Brown's idea together, in the form of a joint venture or partnership.

22        In his deposition in this case, Defendant Spiegel admitted that Plaintiff Brown devised the

23  idea for deleting picture messages. Defendant Spiegel testified as follows:

24  *Q. Did you come up with the idea for deleting picture messages?*

25  *A. No.*

26  *Q. Did [Defendant] Bobby [Murphy] come up with the idea?*

27  *A. No, he did not.*

28  *Q. Who came up with the idea?*

- 5 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

**EXHIBIT 2**
**PAGE 52**

1 *A. [Plaintiff] Reggie [Brown] did.*

2  Around this time, one day Brown and Spiegel were together in Spiegel's dorm room.
3  Brown stated to Spiegel something to the effect of: "we should make an application that sends
4  deleting picture messages." Spiegel acknowledged the commercial viability of Brown's idea,
5  repeatedly exclaiming that Brown had indeed conceived of a "million-dollar idea." Spiegel also
6  indicated his assent to the notion that the two were forming an association as partners to pursue the
7  commercialization of Brown's idea. Spiegel asked Brown if they could work on the Application
8  together, Brown responded in the affirmative, and the two shook hands. That night, the two began
9  searching for a computer "coder" to join in developing the Application. They then started
10 interviewing a number of potential coders, including fellow Stanford students.

11  Sometime after their initial meeting where they agreed to develop the Application as joint
12 venturers/partners, Brown and Spiegel chose defendant Murphy, a fellow Stanford student, to
13 serve as the coder for the Application. Murphy was Spiegel's friend in that the two had previously
14 worked together on a failed project called "FutureFreshmen."

15  At this point, Brown and Defendants Spiegel and Murphy ("Individual Defendants"), as
16 joint venturers/ partners, entered into an explicit oral agreement as to their respective interests in
17 their joint undertaking to develop the Application (which would later be known as "Picaboo" and
18 then "Snapchat") for their common profit. That explicit agreement was that their interests in the
19 venture would be equally distributed, i.e., each of them would have 1/3 ownership and profit
20 interests in the joint venture/partnership. Brown and the Individual Defendants agreed also that
21 Brown would serve as Chief Marketing Officer; Spiegel would serve as Chief Executive Officer;
22 and Murphy would serve as Chief Technology Officer. Also, at this time Brown and the
23 Individual Defendants agreed that each would have equal say in the control and management of the
24 joint venture/partnership. As alleged below, until the point where the Individual Defendants'
25 improperly kicked Plaintiff Brown out of the business, Plaintiff Brown's conduct and the outward
26 conduct of the Individual Defendants were fully consistent with this explicit oral agreement.

27

28

**EXHIBIT 2
PAGE 53**

1    While the search for a coder was ongoing in about the Spring of 2011, Brown set about
2  further developing the Application.  Brown conceived of the original name for the Application,
3  "Picaboo," a reference to the child's game where faces appear and disappear.

4    At this time, Brown also conceived of and designed the logo for the Application– the same
5  logo that Defendants continue to use for the Application to this day. This logo is a ghost cartoon
6  drawn in black on a yellow background; the ghost is smiling and sticking its tongue out on the right
7  side.  Brown created this logo by directing Spiegel on what to draw, while the latter implemented
8  Brown's direction on Adobe InDesign.  Brown also independently devised the name for the ghost
9  logo – that of "Ghostface Chillah" – which Defendants continue to use to this day.

10    Brown also expended additional efforts in developing the Application.  For example,
11  Brown created the original pages for Picaboo on Twitter ("twitter.com/picaboo4you" and
12  "twitter.com/teampictaboo" ), and the original page for Picaboo on Facebook
13  ("https://www.facebook.com/pages/Picaboo/216412738369001?
14  ref=hl").

15    In accordance with this joint venture/partnership agreement, once the 2010-2011 academic
16  year ended, Brown and the Individual Defendants decided to spend a good portion of the summer
17  together developing the Application.  As a startup company, Brown and the Individual Defendants
18  decided to perform their work that summer at the Los Angeles County residence of Spiegel's
19  father.  The residence is located on Toyopa Street, and is subsequently used as the corporate
20  address for Defendants Snapchat, Inc., and Toyopa Group, LLC.

21    Accordingly, at the beginning of the summer of 2011, Brown and the Individual
22  Defendants temporarily relocated to the Toyopa residence, where they lived and worked on the
23  Application pursuant to the joint venture/partnership agreement they had entered into.  Brown
24  moved his personal belongings from his Stanford dorm to the Toyopa residence.

25    On June 9, 2011, in a text message to Plaintiff, Defendant Spiegel referred to his father's
26  house, where Plaintiff and Defendants Spiegel and Murphy were living and working on the
27  Application, as "startuphou5" (meaning "startup house").  By this message, Defendant Spiegel

28

- 7 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

**EXHIBIT 2
PAGE 54**

1   meant to recognize that the three men would be working on their startup company, Picaboo, at the
2   house that summer.

3        During this time, Brown continued to fully perform all of his obligations pursuant to the
4   joint venture/partnership agreement. For example, Brown authored the Terms of Service, Privacy
5   Policy, website Frequently Asked Questions ("FAQ") and marketing materials for the
6   Application. Brown also drafted the FAQ and offering language for the Application on the iTunes
7   Store, as well as the photo release for the first photo shoot for the Application's marketing
8   materials. Brown further devised the name "Toyopa Group, LLC," for Defendant Toyopa, the
9   Limited Liability Company that he and the Individual Defendants agreed would hold their interests
10  in the Application. In Plaintiff Brown's discussions with the Individual Defendants concerning
11  Toyopa, the Individual Defendants explicitly acknowledged that Brown would be an equal
12  member of Toyopa with them. Brown also managed the tax returns for Toyopa.

13       Plaintiff Brown also contributed to the layout and design of the Application's features,
14  including the camera button, screen layout, and the colors.

15       During this time, in recognition of their status as three co-equals in the joint
16  venture/partnership, Plaintiff and the Individual Defendants voted to make important decisions
17  concerning the Application. For example, the three voted in favor of changing the Application's
18  name from "Picaboo" to "Pictaboo" and then back again. The three also voted to implement in the
19  Application a notification that the recipient of the message had taken a screenshot of it.

20       On June 28, 2011, Defendant Murphy sent a mass email to his friends asking them to try
21  the beta test version of the Application that he, Spiegel and Plaintiff have been working on, and
22  signed the email as "Bobby, Evan, Reggie."

23       In July of 2011, Plaintiff Brown and Individual Defendants publicly launched the
24  Application—by making it available for download by the public via the iTunes Store—under
25  Brown's name for it, "Picaboo."

26       At this time Brown also undertook substantial additional efforts to market the Application,
27  in accordance with his role as Chief Marketing Officer in the joint venture/partnership. Brown

28

- 8 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

EXHIBIT 2
PAGE 55

1  used popular social media websites to market the Application, interfacing with his numerous

2  contacts to promote use of the Application.

3      For example, on August 3, 2011, Brown sent a Facebook message to an acquaintance

4  stating the following:

5      *im trying to tell you about the app though*

6      *you dont have to help me but my friends and i made an*

7      *app for the iphone that lets you send deleting picture*

8      *messages to your friends so if you have an iphone you should get on that [...]*

9      The acquaintance, making reference to Brown's substantial marketing efforts for the

10  Application, responded: "youre such the salesman wow... how many times have you made this

11  speech already? youre like an expert by now im sure."

12      Brown's marketing efforts were successful, and were in large part responsible for creating

13  the original groundswell of interest in the Application that continues today.

14      In addition, at this time Brown undertook the responsibility of drafting and filing a patent

15  application for the technology used in the Application, which named Brown and the Individual

16  Defendants as co-inventors. Brown prepared the patent application and filed it with the United

17  States Patent Office on behalf of the joint venture/partnership.

18      At all times, Brown was paid no monetary compensation for his work, in accordance with

19  his role as a joint venturer/partner in an enterprise that was not yet generating profits, as he was

20  sharing equally in the risks and rewards of the startup.

21      On several occasions, the Individual Defendants acknowledged to Plaintiff and others that

22  the Application was developed by Brown, Spiegel and Murphy working together as partners and

23  co-founders of this startup.

24      For example, on June 21, 2011, Defendant Spiegel, in a Google chat to an acquaintance,

25  acknowledged Plaintiff Brown's central role in the marketing of the Application:

26      *reggie gets here thurs*

27      *and thats when we'll solidify our marketing strategy*

28      On July 27, 2011, Spiegel emailed to an acquaintance:

- 9 -

PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

EXHIBIT 2
PAGE 56

1  Nicole,

2  *I just built an app with two friends of mine (certified bros our frat just got kicked off*

3  *campus) and we think you might really, really like it. It's called Picaboo and it's a game*

4  *for sending disappearing pictures with your friends. You just take a picture, set the timer*

5  *up to 10 seconds, and send to a friend – when they receive your Picaboo they can view it*

6  until the timer runs out and then it's gone forever! Fun stuff.

7  We'd love to hear your feedback even though your last post was a little moody.

8  (Nothing wrong with doing what you love and making $$$. Swag. It. Out.)

9  You can download our app here: http://picaboo.me/dl and if you get one of your girlfriends

10  on it we promise you'll be obsessed.

11  Next time just Picaboo the weird dude that stares at you,

12  Evan.

13  In his deposition in this case, Defendant Spiegel admitted that his reference to "two friends

14  of mine" in this email referred to Defendant Murphy and Plaintiff Brown. Defendant Spiegel

15  testified as follows:

16  *Q. Okay. You see where you referred to two friends of mine?*

17  *A. That's correct.*

18  *Q. Who are those two friends you are referring to?*

19  *A. [Defendant] Bobby [Murphy] and [Plaintiff] Reggie [Brown].*

20  On July 1, 2011, Defendant Spiegel's father John Spiegel, sent a text message to Brown's

21  mother, Mitten Brown. The text acknowledged that Plaintiff Brown and the Individual Defendants

22  had been working cooperatively on their "startup" that summer, and that this work included

23  Brown's preparation of the patent application:

24  *Mitten, thank you for your gracious note. It is delightful to have Reggie with us this*

25  *summer as he, Evan and Bobby work on their startup. They are working hard, having fun*

26  *and seem to be learning a lot. Reggie is drafting his first patent application, so he is on his*

27  *way to being a lawyer! His lovely Southern manners are a welcome addition to my home*

28  *(tho maybe you could get him to stop calling me "Mr. Spiegel", as I can't!). I do*

- 10 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

EXHIBIT 2
PAGE 57

1  *understand the difficult situation with your mother, and don't hesitate to call with any*

2  *information you would like me to share. My cell is [(number redacted)] and the home*

3  *phone here is [(number redacted)]. Hope you are having a great holdiay [(sic)] weekend,*

4  *john (emphasis added).*

5  And as discussed, for months during the summer of 2011, the three of them were living and

6  working together on the Application at the Toyopa residence. These three were also celebrating

7  together the milestones achieved by their startup business.

8  For example, in about mid-July 2011, shortly after Picaboo was launched on iTunes,

9  Brown and the Individual Defendants went to a restaurant in Los Angeles to celebrate the "birth of

10  Picaboo" and Murphy's birthday. Below is a picture of them (from left to right, Brown, Murphy,

11  and Spiegel) taken during that celebration with a cake that has the ghost logo of Picaboo (as

12  discussed, this is the same logo now used by Snapchat).

13  On July 21, 2011, Defendant Murphy "tagged" Plaintiff Brown on the former's Facebook

14  page "in Picaboo under Employers," indicating his understanding that Brown and Murphy were

15  working together on the Application.

16  On or about July 25, 2011, one of the Individual Defendants posted the following update on

17  the www.crunchbase.com site:

18  *Picaboo For iPhone*

19  *Picaboo is the first-ever ephemeral picture messaging app for iPhone*

20  *Milestones*

21  *Picaboo for iPhone added Reggie Brown as CMO (5/1/11)*

22  *Picaboo for iPhone added Bobby Murphy as CTO (5/1/11)*

23  *Picaboo for iPhone added Evan Spiegel as CEO (5/1/11)*

24  As the end of the 2011 summer drew near, Brown and the Individual Defendants decided to

25  take a short break from their work at the Toyopa residence, and Brown returned to South Carolina

26  to visit his family while Murphy returned to Northern California to visit his. The three of them,

27  however, continued to work remotely on their joint venture. For example, Brown was busy

28  finalizing the patent application for Picaboo, and continued promoting the Application.

- 11 -

1        Brown completed the patent application in early August 2011, and the Individual
2 Defendants were happy with this development upon being informed of it.

3        During this time up until the betrayal in mid-August 2011 (discussed below), Brown and
4 the Individual Defendants continued to update each other regarding the business and the progress
5 of their assigned tasks.

6        Unbeknownst to Plaintiff, at some time after the formation of their joint/venture
7 partnership, the Individual Defendants formed an undisclosed intent to eventually wrongfully
8 exclude Plaintiff Brown from the joint venture/partnership, in order to take for themselves
9 Brown's rightful share of the enterprise.  At this time, while outwardly manifesting a continuing
10 intent to develop the Application as a joint venture/partnership of co-equals with Plaintiff, the
11 Individual Defendants secretly began to take steps in preparation of excluding Brown once the
12 Application gained an established user base.  For example, while, as alleged above, Plaintiff and
13 the Individual Defendants explicitly agreed that Plaintiff would have an equal ownership interest
14 in Defendant Toyopa, the Individual Defendant secretly formed Toyopa without including any
15 interest for Plaintiff.

16        By late July of 2011, the Application was heavily gaining in popularity.  For example, on
17 July 23, 2011, several days after launching the Application, Defendant Spiegel texted Plaintiff to
18 report on the increasing popularity of the Application and stated that "[t]his thing is a rocketship."
19 And on July 24, 2011, Spiegel texted to Brown of the Application that "Our 7 day retention is 60%
20 right now (target is 30%) and were [(sic)] growing."

21        In mid-August 2011, as Brown was making plans to return to the Toyopa residence (where
22 he still had his personal belongings), he and the Individual Defendants had a contentious telephone
23 conversation regarding their startup.  Defendant Spiegel at one point abruptly hung up the phone.

24        In the next few days, the Individual Defendants wrongfully and physically shut Brown out
25 of the joint venture/partnership by, for example, changing the passwords for its computer servers
26 and accounts to prevent Brown from doing any further work on the Application for the joint
27 venture/partnership.  The Individual Defendants then cut off all communication with Brown and
28 refused to respond to his requests to discuss the matter with them.

- 12 -

**EXHIBIT 2
PAGE 59**

1       The Individual Defendants subsequently changed the name of the Application from
2 "Picaboo" to "Snapchat."

3       In 2012, after Brown attempted to contact the Defendant Spiegel to make an offer for
4 compromise/settlement offer, Defendants responded by hiring the international law firm of Cooley
5 LLP to send a threatening letter to the young college graduate.

6       In light of Defendants' wrongful conduct in shutting Plaintiff out of the joint
7 venture/partnership, and their refusal to acknowledge his ownership share in the Application he
8 conceived of and co-developed – or to even speak to him – Plaintiff had no choice but to file this
9 lawsuit.

10       In his deposition in this case, Defendant Spiegel admitted that "[Plaintiff] Reggie [Brown]
11 may deserve something for some of his contributions [to the Application]."

12       In or around April of 2012, Defendant Snapchat, Inc., received a seed investment of
13 approximately $485,000.00 from Defendant Lightspeed. For this investment, Defendant
14 Lightspeed received equity shares in Defendant Snapchat, Inc. At the time of its acquisition of
15 these equity shares, Defendant Lightspeed had actual and/or constructive notice of Plaintiff
16 Brown's ownership interest in Snapchat, Inc.

17       In or around February of 2013, Defendant Snapchat, Inc., received a Series A funding
18 investment of approximately $13,500,000.00 from Defendant Benchmark and other firms. For
19 this investment, Defendant Benchmark received equity shares in Defendant Snapchat, Inc. At the
20 time of its acquisition of these equity shares, Defendant Benchmark had actual and/or constructive
21 notice of Plaintiff Brown's ownership interest in Snapchat, Inc.

22       In or around June of 2013, Defendant Snapchat, Inc., received a Series B funding
23 investment of approximately $80,000,000.00 from Defendants IVP, GCP and SVA. For this
24 investment, Defendants IVP, GCP and SVA received equity shares in Defendant Snapchat, Inc.
25 At the time of its acquisition of these equity shares, Defendants IVP, GCP and SVA had actual
26 and/or constructive notice of Plaintiff Brown's ownership interest in Snapchat, Inc.

27       Discovery is continuing and Plaintiff reserves the right to amend this response if and when
28 additional evidence is discovered.

EXHIBIT 2
PAGE 60

**INTERROGATORY NO. 6:**

IDENTIFY all DOCUMENTS RELATING OR REFERRING TO YOUR contention that the ALLEGED PARTNERSHIP was formed.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, oppressive and harassing. A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's and Defendants' documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as to the exhibits to the deposition transcripts of Plaintiffs Evan Spiegel and Robert Murphy. Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this response if and when additional evidence is discovered.

**INTERROGATORY NO. 7:**

IDENTIFY and DESCRIBE, fully and separately, all jobs or employment YOU have held or obtained, including, but not limited to, the name of the employer, the location, the nature of the job or employment, and the salary, wages, or other compensation for each such job or employment.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects that this request is oppressive, burdensome, irrelevant and not likely to lead to the discovery of admissible evidence. Plaintiff objects to this interrogatory on the ground that it is overly broad and unlimited as to time and scope. Subject to, and without waiving these objections, Plaintiff responds as follows:

- 14 -

**EXHIBIT 2**
**PAGE 61**

1.  Plaintiff is currently self-employed in Columbia, South Carolina. He is the founder of Hoodies for Trayvon and has operated it since October 2011. Plaintiff designs and sells apparel in honor of the late Trayvon Martin. Plaintiff is also the founder and CEO of FRBIV, LLC and has operated it since April 2012. Current projects include the development and design of garments.

2.  Plaintiff has worked as a legal intern for the South Carolina Attorney General's Office in Columbia, South Carolina since April 2013. This was an unpaid volunteer position which subsequently became a paid position approximately $12 per hour.

3.  Plaintiff is the co-founder and was a partner and chief marketing officer of the partnership/joint venture currently known as Snapchat, Inc. in Palo Alto, CA from March 2011-August 2011. Plaintiff did not have a monthly income from the partnership/joint venture. Rather, Plaintiff had a 1/3 ownership interest as a partner and joint venturer in the entity now known as Snapchat, Inc.

4.  Plaintiff worked as a student curator for the Stanford Lively Arts in Palo Alto, California from October 2010 through May 2011. Plaintiff designed an opening act to open for South Indian artist Shubha Mudgal and also designed and marketed material to promote the concert on campus. The position paid $500.

5.  Plaintiff worked as a counselor Interlochen Center for the Arts in Interlochen, Michigan from June 2010 through August 2010. Plaintiff worked with a group of student artists and organized and led a book group studying the work of Oscar Wilde. This position paid $1,000.

6.  Plaintiff was a member of the Stanford IDEAS national marketing team in Palo Alto, California from September 2009 through June 2010. This was a volunteer position. Plaintiff conducted film and media operations for the nonprofit.

7.  Plaintiff worked as a legal intern for Ziegler LLC in Columbia, South Carolina from June 2008 through August 2008. This was an unpaid internship.

**INTERROGATORY NO. 8:**

IDENTIFY and DESCRIBE, fully and separately, every idea, concept or invention, relating to any product or service, that YOU have conceived or devised since January 1, 2010.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects that this request is oppressive, burdensome, harassing, irrelevant and not likely to lead to the discovery of admissible evidence. Plaintiff objects to the phrase "idea, concept or invention" as vague and ambiguous. Subject to, and without waiving these objections, Plaintiff responds as follows:

Plaintiff was the originator of the concept for a mobile application for disappearing messages, now known as Snapchat. Plaintiff was also a co-designer and co-inventor of the application's technology.

**INTERROGATORY NO. 9:**

For each idea, concept or invention that YOU IDENTIFY in response to Interrogatory Number 8, DESCRIBE, fully and separately, the status of YOUR efforts, if any, to develop the idea, concept or invention into a product or service.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects that this request is oppressive, burdensome, harassing, irrelevant and not likely to lead to the discovery of admissible evidence. Plaintiff objects to the phrase "idea, concept or invention" as vague and ambiguous. Subject to, and without waiving these objections, Plaintiff responds as follows:

Plaintiff was the originator of the concept for a mobile application for disappearing messages, now known as Snapchat. Plaintiff was also a co-designer and co-inventor of the application's technology. Plaintiff's efforts included designing the logo for the application, marketing the application, and preparing a provisional patent application for the application

PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

EXHIBIT 2
PAGE 63

**INTERROGATORY NO. 10:**

IDENTIFY and DESCRIBE, fully and separately, all electronic communications devices YOU have used from March 1, 2011 to the present, including, but not limited to, all land-line and cellular telephones, laptop computers, desktop computers, tablet computers, and pagers.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects that this request is overly broad and unduly burdensome. Plaintiff objects that this request is oppressive, harassing, irrelevant and not likely to lead to the discovery of admissible evidence. Plaintiff objects to the phrase "electronic communications devices" as vague and ambiguous. Subject to, and without waiving these objections, Plaintiff responds as follows:

13" Macbook pro laptop computer , iphone4, and iphone 5.

**INTERROGATORY NO. 11:**

IDENTIFY all electronic messaging and social media accounts YOU have used from March 1, 2011 to the present, including, but not limited to, all email, Facebook, Twitter, and LinkedIn accounts, all text and other messaging numbers and accounts, and all other messaging numbers or accounts.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects that this request is overly broad and unduly burdensome. Plaintiff objects that this request is oppressive, harassing, irrelevant and not likely to lead to the discovery of admissible evidence. Plaintiff objects to the phrase "electronic messaging and social media accounts" as vague and ambiguous. Subject to, and without waiving these objections, Plaintiff responds as follows:

reggielovesemail@gmail.com; reggieb@stanford.edu ; frbiv@alumni.stanford.edu; reggiebrown122@gmail.com; reggie.brown@fuqua.duke.edu; Facebook, iPhone (803-727-0520), Linkedin.

**INTERROGATORY NO. 12:**

IDENTIFY and DESCRIBE all facts relating to YOUR mailing of PROVISIONAL PATENT APPLICATION, including, but not limited to, the date on which YOU mailed the PROVISIONAL PATENT APPLICATION to the United States Patent and Trademark Office, and the delivery service YOU used (e.g., UPS, FedEx, United States Postal Service).

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff objects that this request is irrelevant and not likely to lead to the discovery of admissible evidence. Subject to, and without waiving these objections, Plaintiff responds as follows:

Plaintiff used the United States Postal Service regular first-class mail service to mail the provisional patent application on or about August 11, 2011 from South Carolina. Because Plaintiff was living at a South Carolina address at the time, he used such as his address.

**INTERROGATORY NO. 13:**

IDENTIFY and DESCRIBE, fully and separately, all COMMUNICATIONS, whether oral or in writing, in which YOU told anyone, before the date of YOUR COMPLAINT, that YOU were allegedly partners with defendants Evan Spiegel and/or Robert Murphy or that the ALLEGED PARTNERSHIP existed.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Subject to, and without waiving these objections, Plaintiff responds as follows:

Plaintiff had several oral discussions with Spiegel and Brown, starting in April 2011, about the fact that the three were partners/joint-venturers. These discussions are set forth in Response to Interrogatory No. 5 and incorporated herein.

- 18 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

**EXHIBIT 2
PAGE 65**

1  **INTERROGATORY NO. 14:**

2  IDENTIFY all DOCUMENTS, before the date of YOUR COMPLAINT, that reflect, describe or
3  otherwise mention any discussions of equity between YOU, on the one hand, and Evan Spiegel
4  and/or Robert Murphy on the other.

5

6  **RESPONSE TO INTERROGATORY NO. 14:**

7      Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly
8  burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks
9  information that is protected by the attorney-client privilege and/or attorney work product
10 doctrine. A response to this interrogatory would necessitate the preparation of a compilation,
11 abstract, audit, or summary of Plaintiff's and Defendants' documents, and the burden or expense
12 of preparing such a compilation would be substantially the same for Plaintiff as for Defendant.
13 Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties'
14 production of non-privileged documents to date, as well as to the exhibits to the deposition
15 transcripts of Plaintiffs Evan Spiegel and Robert Murphy. Plaintiff refers Defendant to Response
16 to Interrogatory No. 13 and incorporates it here. Discovery ongoing and Plaintiff reserves the right
17 to amend and/or supplement this response if and when additional evidence is discovered.

18

19 **INTERROGATORY NO. 15:**

20 IDENTIFY and DESCRIBE, fully and separately, all COMMUNICATIONS YOU have had with
21 "current and potential investors" in Snapchat, Inc., including, but not limited to, any
22 COMMUNICATIONS RELATING OR REFERRING TO informing such investors that "both
23 [Evan Spiegel] and Bobby, Toyopa Group, LLC, do not uniquely own your IP", as stated in
24 YOUR May 8, 2012 email message to Evan Spiegel, attached hereto as Exhibit 1.

25

26 **RESPONSE TO INTERROGATORY NO. 15:**

27      Plaintiff objects to this Interrogatory on the grounds that it seeks information not
28 reasonably calculated to lead to the discovery of admissible evidence. Indeed, the Interrogatory

- 19 -

1 | seeks information pertaining to the May 8, 2012 email message, which constitutes an inadmissible
2 | offer to compromise/settlement offer under California Evidence Code sections 1152 and 1154.

3

4 | **INTERROGATORY NO. 16:**

5 | IDENTIFY and DESCRIBE, fully and separately, all COMMUNICATIONS, including without
6 | limitation with YOUR actual or prospective attorneys, REFERRING OR RELATING TO any
7 | present or past claim or assertion "that due to the provision patent application . . . [YOU] still
8 | currently own a third of SnapChat's IP" or that "he will also be mandated to contact both your
9 | current and potential investors and inform them that both you and Bobby, Toyopa Group, LLC, do
10 | not uniquely own your IP", as YOU stated an attorney had so advised in YOUR May 8, 2012 email
11 | message to Evan Spiegel, attached hereto as Exhibit 1.

12

13 | **RESPONSE TO INTERROGATORY NO. 16:**

14 |      Plaintiff objects to this Interrogatory on the grounds that it seeks information protected
15 | from disclosure by the attorney-client privilege and the work product doctrine, and is not
16 | reasonably calculated to lead to the discovery of admissible evidence. Indeed, the Interrogatory
17 | seeks information pertaining to the May 8, 2012 email message, which constitutes an inadmissible
18 | offer to compromise/settlement offer under California Evidence Code sections 1152 and 1154.

19

20 | **INTERROGATORY NO. 17:**

21 | IDENTIFY and DESCRIBE, fully and separately, all of YOUR property that YOU allege was
22 | converted.

23

24 | **RESPONSE TO INTERROGATORY NO. 17:**

25 |      Plaintiff objects to this interrogatory to the extent it seeks information that is protected by
26 | the attorney-client privilege and/or attorney work product doctrine. Subject to, and without
27 | waiving these objections, Plaintiff responds as follows:

28

EXHIBIT 2
PAGE 67

1

2   Plaintiff's 1/3 ownership interest in the partnership/joint venture now known as Snapchat,

3   Inc. (aka Toyopa Group LLC), as well as any rights, benefits or assets deriving from such

4   ownership including, but not limited to, any intellectual property right pertaining to the

5   Picaboo/Snapchat application, and the $20 million that, upon information and belief, the

6   Individual Defendants received from the most recent round of funding. Discovery is ongoing and

7   Plaintiff reserves the right to amend and/or supplement this response if and when additional

8   evidence is discovered.

9

10  **INTERROGATORY NO. 18:**

11  DESCRIBE in detail each and every term or provision of the ALLEGED PARTNERSHIP,

12  including, but not limited to, all rights and obligations of the parties to the ALLEGED

13  PARTNERSHIP.

14

15  **RESPONSE TO INTERROGATORY NO. 18:**

16  Plaintiff objects to this interrogatory to the extent it seeks information that is protected by

17  the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this

18  interrogatory as calling for a legal conclusion. Subject to, and without waiving these objections,

19  Plaintiff responds as follows:

20  Brown and Defendants Spiegel and Murphy ("Individual Defendants"), as joint venturers/

21  partners, entered into an explicit oral agreement as to their respective interests in their joint

22  undertaking to develop the Application (which would later be known as "Picaboo" and then

23  "Snapchat") for their common profit. That explicit agreement was that their interests in the

24  venture would be equally distributed, i.e., each of them would have 1/3 ownership and profit and

25  loss interests in the joint venture/partnership. Brown and the Individual Defendants agreed also

26  that Brown would serve as Chief Marketing Officer; Spiegel would serve as Chief Executive

27  Officer; and Murphy would serve as Chief Technology Officer. Also, at this time Brown and the

28

**EXHIBIT 2
PAGE 68**

1 | Individual Defendants agreed that each would have equal say in the control and management of the
2 | joint venture/partnership.

3

4 | **INTERROGATORY NO. 19:**

5 | IDENTIFY and DESCRIBE, fully and separately, all contributions YOU made to the ALLEGED
6 | PARTNERSHIP.

7

8 | **RESPONSE TO INTERROGATORY NO. 19:**

9 | Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly

10 | burdensome, oppressive and harassing. Subject to, and without waiving these objections, Plaintiff

11 | responds as follows:

12 | Plaintiff directs Defendant to Response to Interrogatory No. 5 and incorporates it here.

13

14 | **INTERROGATORY NO. 20:**

15 | IDENTIFY and DESCRIBE, fully and separately, all costs YOU incurred in connection with

16 | YOUR participation in the ALLEGED PARTNERSHIP.

17

18 | **RESPONSE TO INTERROGATORY NO. 20:**

19 | Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly

20 | burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks

21 | information that is protected by the attorney-client privilege and/or attorney work product

22 | doctrine. Plaintiff objects to this interrogatory as calling for a legal conclusion. Subject to, and

23 | without waiving these objections, Plaintiff responds that he has incurred the following costs:

24 | • Dilution of Plaintiff's original 50% ownership interest in the partnership/joint venture
25 | to 33% when the partnership/joint venture added Murphy as a new
26 | partner/joint-venturer;

27 | • Cost of airfare for flights between Los Angeles and South Carolina during the summer
28 | of 2011 prior to being locked out of the partnership/joint-venture by the Individual

- 22 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

**EXHIBIT 2
PAGE 69**

1  Defendants; and

2  • Filing fees for the provisional patent application.

3

4  **INTERROGATORY NO. 21:**

5  IDENTIFY and DESCRIBE, fully and separately, all damages, harms or injuries that YOU claim

6  YOU have suffered as a result of DEFENDANTS' actions in this case.

7

8  **RESPONSE TO INTERROGATORY NO. 21:**

9  Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly

10  burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks

11  information that is protected by the attorney-client privilege and/or attorney work product

12  doctrine.  Plaintiff objects to this interrogatory as calling for a legal conclusion.  Subject to, and

13  without waiving these objections, Plaintiff responds as follows:

14  • Loss of Plaintiff's 1/3 ownership interest in the partnership/joint venture now known as

15  Snapchat, Inc. (aka Toyopa Group LLC); and

16  • Loss of Plaintiff's rights, benefits and/or assets deriving from his 1/3 ownership

17  interest in the partnership/joint venture now known as Snapchat, Inc. (aka Toyopa

18  Group LLC), including, but not limited to, any intellectual property right pertaining to

19  the Picaboo/Snapchat application, and the $20 million that, upon information and

20  belief, the Individual Defendants received from the most recent round of funding.

21  Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this

22  response if and when additional evidence is discovered.

23

24  **INTERROGATORY NO. 22:**

25  State the dates and total number of hours YOU spent working on the pursuits of the ALLEGED

26  PARTNERSHIP.

27

28

- 23 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

EXHIBIT 2
PAGE 70

**RESPONSE TO INTERROGATORY NO. 22:**

Plaintiff objects to this interrogatory on the ground that it is unduly burdensome, oppressive and harassing. Subject to, and without waiving these objections, Plaintiff responds as follows:

Plaintiff does not recall the exact number of hours he worked on the project from late March 2011—when Plaintiff came up with the idea for the application for disappearing messages at issue and first shared it with Spiegel—through mid-August 2011—when Spiegel and Murphy illegally kicked Plaintiff out of the partnership/joint venture. However, Plaintiff essentially worked full-time on the project from late March 2011 to mid-August 2011.

**INTERROGATORY NO. 23:**

State the dates on which YOU allegedly became, and on which YOU ceased to be, a fiduciary of Evan Spiegel and Bobby Murphy.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this interrogatory as calling for a legal conclusion. Subject to, and without waiving these objections, Plaintiff responds as follows:

Since mid-August 2011, Plaintiff has been wrongfully shut out from the partnership/joint venture now known as Snapchat, Inc. Although he has been wrongfully excluded as a partner, as partner/joint venturer, Plaintiff is still a fiduciary of Evan Spiegel and Bobby Murphy, but has been unable to act in that capacity due to defendants' wrongful exclusion of him.

**INTERROGATORY NO. 24:**

State the dates on which Evan Spiegel and Bobby Murphy allegedly became and ceased to be fiduciaries of YOU.

- 24 -

EXHIBIT 2
PAGE 71

**RESPONSE TO INTERROGATORY NO. 24:**

Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this interrogatory as calling for a legal conclusion. Subject to, and without waiving these objections, Plaintiff responds as follows:

Since mid-August 2011, Plaintiff has been wrongfully shut out from the partnership/joint venture now known as Snapchat, Inc. Although Plaintiff has been wrongfully excluded, as partners/joint venturers, Evan Spiegel and Bobby Murphy are still fiduciaries of Plaintiff.

**INTERROGATORY NO. 25:**

State all facts supporting YOUR claim that DEFENDANTS owed YOU a fiduciary duty.

**RESPONSE TO INTERROGATORY NO. 25:**

Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this interrogatory as calling for a legal conclusion. Subject to, and without waiving these objections, Plaintiff responds as follows:

Defendants owe Plaintiff a fiduciary duty by virtue of the fact that Individual Defendants Spiegel and Murphy were partners/joint venturers in the entity now known as Snapchat, Inc. The facts supporting this are set forth in Response to Interrogatory No. 5. Plaintiff incorporates his response to Response to Interrogatory No. 5 here. Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this response if and when additional evidence is discovered.

**INTERROGATORY NO. 26:**

IDENTIFY all assets, profits, interests, and value that YOU contend was unjustly earned or retained by defendants.

EXHIBIT 2
PAGE 72

**RESPONSE TO INTERROGATORY NO. 26:**

Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, oppressive and harassing. Plaintiff objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this interrogatory as calling for a legal conclusion. Subject to, and without waiving these objections, Plaintiff responds as follows:

Defendants unjustly earned and/or retained Plaintiff's 1/3 ownership interest in the partnership/joint venture at issue that is now known as Snapchat, Inc. (aka Toyopa Group LLC), as well as any right, benefit and/or asset deriving from such ownership including, but not limited to, any intellectual property right pertaining to the Picaboo/Snapchat application, and the $20 million that, upon information and believe, the Individual Defendants received from the most recent round of funding. Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this response if and when additional evidence is discovered.

**INTERROGATORY NO. 27:**

IDENTIFY the method by which Deposition Exhibit 72, attached hereto as Exhibit 2, was transmitted to YOUR mother.

**RESPONSE TO INTERROGATORY NO. 27:**

Text message.

**INTERROGATORY NO. 28:**

IDENTIFY each and every date on which YOU COMMUNICATED with Evan Spiegel or Bobby Murphy REFERRING OR RELATING to equity in or ownership of the APPLICATION or the ALLEGED PARTNERSHIP.

**RESPONSE TO INTERROGATORY NO. 28:**

Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, oppressive and harassing, and concerns an inadmissible offer to compromise/settlement offer under California Evidence Code sections 1152 and 1154. Subject to, and without waiving these objections, Plaintiff responds as follows:

Late March 2011; April 2011; early June 2011; August 16, 2011; May 2012. Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this response if and when additional evidence is discovered.

**INTERROGATORY NO. 29:**

IDENTIFY all attorneys and law firms with whom YOU COMMUNICATED, before YOU filed YOUR COMPLAINT, REFERRING OR RELATING TO YOUR allegations in this case, including without limitation by stating the dates of and parties to such COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 29:**

Plaintiff objects to this interrogatory on the ground that it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this interrogatory as irrelevant and not likely to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 30:**

IDENTIFY the "several intellectual property attorneys" REFERRED TO in YOUR May 8, 2012 email message, attached hereto as Exhibit 1 ("I have spoken to several intellectual property attorneys in the area and they have informed me that due to the provisional patent application referenced above, that I still currently own a third of SnapChat's IP.").

**RESPONSE TO INTERROGATORY NO. 30:**

Plaintiff objects to this interrogatory on the ground that it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects

- 27 -

**EXHIBIT 2
PAGE 74**

1  to this interrogatory on the ground that it seeks information not reasonably calculated to lead to the
2  discovery of admissible evidence. Indeed, the Interrogatory seeks information pertaining to the
3  May 8, 2012 email message, which constitutes an inadmissible offer to compromise/settlement
4  offer under California Evidence Code sections 1152 and 1154.

5

6  **INTERROGATORY NO. 31:**

7  IDENTIFY the attorney to which YOU refer in YOUR May 8, 2012 email message, attached
8  hereto as Exhibit 1 ("My attorney has advised me that if we decide to move forward and pursue
9  litigation with regards to this matter, that this will not only be a process that will last eight or nine
10 months at the least, but that he will also be mandated to contact both your current and potential
11 investors and inform them that both you and Bobby, Toyopa Group, LLC, do not uniquely own
12 your IP.").

13

14 **RESPONSE TO INTERROGATORY NO. 31:**

15       Plaintiff objects to this interrogatory on the ground that it seeks information that is
16 protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects
17 to this Interrogatory on the ground that it seeks information not reasonably calculated to lead to the
18 discovery of admissible evidence. Indeed, the Interrogatory seeks information pertaining to the
19 May 8, 2012 email message, which constitutes an inadmissible offer to compromise/settlement
20 offer under California Evidence Code sections 1152 and 1154.

21

22 **INTERROGATORY NO. 32:**

23 IDENTIFY the "patent attorney" to which YOU refer in your August 5, 2011 message to Evan
24 Spiegel, attached hereto as Exhibit 3.

25

26 **RESPONSE TO INTERROGATORY NO. 32:**

27       None. Plaintiff intended to refer to the patent attorney's book.

28

- 28 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

**EXHIBIT 2**
**PAGE 75**

**INTERROGATORY NO. 33:**

IDENTIFY the woman who claims YOU sexually assaulted her at Stanford, resulting in her pulling a fire alarm to prevent the assault.

**RESPONSE TO INTERROGATORY NO. 33:**

Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, oppressive and harassing. Plaintiff objects to this Interrogatory on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving these objections, Plaintiff responds as follows:

No such incident has occurred, nor has any such claim been made.

**INTERROGATORY NO. 34:**

State the all contact information, including, but not limited to, the telephone number and email address, for the "Timothy Jones at Morrison & Foerster" to whom YOU claimed YOU spoke regarding YOUR allegations in this case.

**RESPONSE TO INTERROGATORY NO. 34:**

Plaintiff objects to this interrogatory on the ground that it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this Interrogatory on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 35:**

Assuming the jury finds that YOU were not partners with Evan Spiegel or Bobby Murphy, IDENTIFY and DESCRIBE, fully and separately, each and every basis and/or theory, if any, by which YOU claim to be entitled to any relief in this action.

- 29 -

EXHIBIT 2
PAGE 76

**RESPONSE TO INTERROGATORY NO. 35:**

Plaintiff objects to this interrogatory on the ground that it seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this interrogatory on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to this interrogatory on the ground that is an incomplete hypothetical. Subject to and without waiving these objections, Plaintiff responds as follows:

The jury may find that Plaintiff was a joint venturer with Defendants Spiegel and Murphy. The jury may find that defendants perpetrated a fraud and/or constructive fraud on Plaintiff. The jury may find that defendants would be unjustly enriched.

DATED: September 23, 2013          LEE TRAN LIANG & WANG LLP

By:_____
      K. Luan Tran
      James M. Lee
      Cyrus Khojandpour
      Lisa J. Chin

      RAY A. MANDLEKAR, ATTORNEY AT LAW
      Ray A. Mandlekar (SBN 196797)

      Attorneys for Plaintiff
      Frank Reginald Brown, IV

- 30 -
PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE

EXHIBIT 2
PAGE 77

**VERIFICATION**

1

2    I, Frank Reginald Brown IV, declare as follows:

3       I am a plaintiff in the matter *Brown v. Snapchat et al.*, Case No. BC501483, Los

4   Angeles Superior Court. I am familiar with the contents of the foregoing document titled

5   **PLAINTIFF REGINALD BROWN IV'S RESPONSES TO DEFENDANT**

6   **SNAPCHAT, INC.'S SPECIAL INTERROGATORIES, SET ONE**. The information

7   supplied therein is based on my own personal knowledge and/or has been supplied by

8   attorneys, compiled from available documents, or obtained from others. To the extent the

9   information in the document is within my personal knowledge, I certify that such

10   information is true. As to all other information in the document, I am informed and believe

11   that it is true.

12       I certify under penalty of perjury under the laws of the State of California that the

13   foregoing is true and correct.

14       Executed on September 23, 2013, at Durham, North Carolina.

15

16   <u>Frank Reginald Brown IV</u>

17    TYPE OR PRINT NAME                       SIGNATURE

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

1 | LEE TRAN LIANG & WANG LLP
K. Luan Tran (SBN 193808)
2 | James M. Lee (SBN 192301)
Cyrus Khojandpour (SBN 260233)
3 | Lisa J. Chin (SBN 259793)
601 S. Figueroa Street, Suite 3900
4 | Los Angeles, CA 90017
Telephone:  213-612-8900
5 | Facsimile:   213-612-3773

6 | RAY A. MANDLEKAR, ATTORNEY AT LAW
Ray Mandlekar (SBN 196797)
7 | 601 S. Figueroa Street, Suite 4050
Los Angeles, California 90017
8 | Telephone:    213-785-6130
Facsimile:     213-254-9001
9 |

10 | Attorneys for Plaintiff
Frank Reginald Brown, IV
11 |

12 |

13 |                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14 |                    **FOR THE COUNTY OF LOS ANGELES**

15 |

16 | FRANK REGINALD BROWN, IV,            CASE NO: BC501483

17 |              Plaintiff,

18 |      v.                             **PLAINTIFF REGINALD BROWN IV'S
                                         RESPONSES AND OBJECTIONS TO**
19 | SNAPCHAT, INC., et al.,             **DEFENDANT SNAPCHAT, INC.'S FORM
                                         INTERROGATORIES, SET ONE**
20 |              Defendants.
                                         Assigned for all purposes to the Honorable John
21 |                                     L. Segal (Dept. 50)

22 |
                                         Action Filed: February 21, 2013
23 |                                     Trial Date: Not Assigned Yet

24 |

25 | **PROPOUNDING PARTY:**      DEFENDANT SNAPCHAT, INC.

26 | **RESPONDING PARTY:**       PLAINTIFF FRANK REGINALD BROWN, IV

27 | **SET NUMBER:**             ONE

28 |

PLAINTIFF'S RESPONSES TO DEFENDANT'S FORM INTERROGATORIES, SET ONE

EXHIBIT 3
PAGE 79

1       Pursuant to California Code of Civil Procedure ("C.C.P.") section 2033.010, *et. seq.*
2 Plaintiff Frank Reginald Brown, IV ("Plaintiff" or "Brown") by and through his attorneys of
3 record, respond to Defendant Snapchat, Inc.'s ("Defendant" or "Snapchat") request to for
4 responses for Form Interrogatories as follows:

5 <div align="center">**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**</div>

6     1.     Plaintiff objects to the Interrogatories on the grounds and to the extent that they
7 purport to require information that reveals privileged attorney-client communications or are
8 otherwise protected from disclosure under applicable privileges, laws or rules. Plaintiff hereby
9 claims such privileges and protections to the extent implicated by each interrogatory and exclude
10 privileged and protected information from its responses to the interrogatories. Any disclosure of
11 protected or privileged information is inadvertent and is not intended to waive these privileges or
12 protections.

13     2.     Plaintiff objects to the interrogatories, including the Definitions and Instructions
14 therein, on the ground and to the extent that they purport to impose any obligation on Plaintiff that
15 is beyond the scope of, or otherwise inconsistent with the Local Rules and any other applicable
16 laws or rules.

17     3.     Plaintiff objects to the interrogatories on the ground and to the extent that they seek
18 information that is not relevant to the claims and defenses in the pending action and is not
19 reasonably likely to lead to the discovery of admissible evidence. Plaintiff further objects to the
20 interrogatories to the extent that the information they seek relating to the requested subject matter
21 is over broad and unduly burdensome, and is not reasonably designed to lead to discovery of
22 admissible and relevant evidence.

23     4.     Plaintiff objects to the interrogatories on the ground that they are overbroad and
24 unduly burdensome to the extent that they purport to require that Plaintiff search every office and
25 facility for potentially responsive documents regardless of how unlikely or improbable that
26 responsive documents will be found. Plaintiff's search will be limited to locations and files where
27 Plaintiff believes it is reasonably likely that responsive documents may be found.

28

<div align="center">- 1 -</div>

5.    By responding to these interrogatories, Plaintiff does not concede the relevance or materiality of any response or the subject matter of any of the foregoing. Plaintiff's responses are made expressly subject to, and without waiving or intending to waive, any questions or objections as to the competence, relevance, materiality, privilege, or admissibility of any response or the subject matter of any of the foregoing, in any proceeding (including, without limitation, trial of this action or any subsequent proceeding). Plaintiff expressly reserves any and all rights and privileges under the California Code of Civil Procedure, the Local Rules, and any other applicable laws or rules. The failure to assert such rights and privileges, or the inadvertent disclosure by Plaintiff of information protected by such rights and privileges, shall not constitute a waiver thereof, either with respect to these responses or with respect to any further discovery responses or objections.

6.    The responding party has not fully completed its investigation of the facts related to this case, have not fully completed discovery in this action, and have not completed preparation for trial. The responses below should not be considered complete at this stage of the investigation and discovery process. All of the responses contained herein are based only upon such information and documents, which are presently available to and specifically known to the responding party. These responses disclose only those contentions, which are presently available to and specifically known to the responding party. These responses disclose only those contentions, which presently occur to such responding party. It is anticipated that further discovery, independent investigation, legal research and expert analysis will supply additional facts, add meaning to known facts, establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions set forth.

7.    The responses contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice the responding party in relation to further discovery, research or analysis. The responding party has made a reasonable effort to respond to each request to the extent it is not objectionable as the responding party understands that request. If the propounding parties subsequently assert a different interpretation, the responding party reserves the right to supplement these responses. These responses are made solely for the purpose of this litigation and

-2-

1  are given subject to all appropriate objections. By responding to any request, responding party
2  does not admit the existence of any facts set forth or assumed by such request.

3      8.      Plaintiff objects to the interrogatories insofar as they fail to specify any time period
4  or specify an unduly broad time period. Plaintiff has limited its response to the time periods set
5  forth in the Specific Responses and Objections.

6      9.      Plaintiff objects to the interrogatories on the ground and to the extent that they seek
7  disclosure of confidential information including, without limitation, confidential   business
8  information, trade secrets or information subject to any confidentiality agreement, order and/or
9  obligation. Subject to these General Objections and the Specific Responses and Objections set
10  forth below, Plaintiff will only respond with non-privileged answers containing such confidential
11  information upon entry of, and pursuant to the terms of, any applicable Protective Order entered in
12  this action.

13      10.     Plaintiff objects to terms and phrases defined or used by Plaintiffs to the extent that
14  those terms and phrases are vague and/or ambiguous or beyond their customary meaning. To the
15  extent that Plaintiff adopts any terms or phrases used by Plaintiffs, they are adopted solely for the
16  sake of convenience in responding to these interrogatories, and Plaintiff does not accept or
17  concede that any of the terms, phrases, or definitions used by Plaintiffs are appropriate, descriptive
18  or accurate.

19      11.     Plaintiff objects to each interrogatory to the extent that it is duplicative or
20  cumulative of other Discovery Requests.

21      12.     Plaintiff objects to each interrogatory to the extent that it requires Plaintiff to draw
22  legal conclusions. No response shall be construed as a concession or admission to any statement,
23  inference, or allegation implied by any interrogatory.

24      13.     Plaintiff's agreement to search for and produce documents in response to any
25  particular interrogatory is not an indication that documents exist or are within the possession,
26  custody and control of Plaintiff.

27

28

1      14.    Plaintiff objects to the definition of "Document" on the ground and to the extent
2 that it purports to impose discovery obligations beyond the scope of, or inconsistent with, the
3 California Code of Civil Procedure, or any other Local Rules.

4      15.    Plaintiff objects to Plaintiffs' definition of the terms "Plaintiffs," "Plaintiff," "you,"
5 and "your" as overly broad, unduly burdensome, vague and ambiguous. Plaintiff shall interpret
6 these terms to mean Plaintiff and its officers, directors, employees or other persons acting with
7 authority on Plaintiff's behalf.

8      16.    Plaintiff makes the General Objections and Specific Responses and Objections
9 herein based solely on its current knowledge, understanding and belief with respect to the facts and
10 information available to it as of the date of the responses. Additional discovery, investigation or
11 analysis may lead to additions to, changes in, or other modifications of these responses. Plaintiff
12 reserves the right to amend and/or supplement these responses consistent with California Code of
13 Civil Procedure. Plaintiff further reserves the right to produce evidence of any subsequently
14 discovered documents or facts, and to present evidence of subsequently discovered documents or
15 facts in depositions, at a hearing, at trial, and in support of, or opposition to, any motion.

16      17.    These General Objections are hereby incorporated into each and every Specific
17 Response and Objection to the interrogatories set forth below as if fully set forth therein.

19 **RESPONSES TO FORM INTERROGATORIES**

21 **FORM INTERROGATORY NO. 1.1:**

22 State the name, ADDRESS, telephone number, and relationship to you of each
23 PERSON who prepared or assisted in the preparation of the responses to these
24 interrogatories. (Do not identify anyone who simply typed or reproduced the responses.)

26 **RESPONSE TO FORM INTERROGATORY NO. 1.1:**

27 Frank Reginald Brown, IV
28 May be contacted through counsel, listed below.

- 4 -

K. Luan Tran
James M. Lee
Cyrus Khojandpour
Lisa J. Chin
601 S. Figueroa Street, Suite 3900
Los Angeles, CA 90017
Telephone:      213-612-8900
Facsimile:      213-612-3773
Counsel for Plaintiff in this action.

Ray Mandlekar
601 S. Figueroa Street, Suite 4050
Los Angeles, California 90017
Telephone:      213-785-6130
Facsimile:      213-254-9001
Counsel for Plaintiff in this action.

**FORM INTERROGATORY NO. 2.1:**

State:

(a) your name;

(b) every name you have used in the past; and

(c) the dates you used each name.

**RESPONSE TO FORM INTERROGATORY NO. 2.1:**

(a)      Frank Reginald Brown, IV

(b)      Reggie Brown

(c)      1990-present

**FORM INTERROGATORY NO. 2.2:**

State the date and place of your birth.

**RESPONSE TO FORM INTERROGATORY NO. 2.2:**

January 17, 1990; Isle of Palms, South Carolina.

- 5 -

PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FORM INTERROGATORIES, SET ONE

EXHIBIT 3
PAGE 84

**FORM INTERROGATORY NO. 2.3 :**

At the time of the INCIDENT, did you have a driver's license? If so state:

      (a) the state or other issuing entity;

      (b) the license number and type;

      (c) the date of issuance; and

      (d) all restrictions.

**RESPONSE TO FORM INTERROGATORY NO. 2.3:**

Plaintiff objects to this request on the grounds it seeks information that is not relevant to the claims and defenses in the pending action and is not reasonably likely to lead to the discovery of admissible evidence.  Subject to, and without waiving these objections, Plaintiff responds as follows:

    (a) South Carolina

    (b) 100703540; Class D

    (c) March 23, 2010

    (d) None

**FORM INTERROGATORY NO. 2.5:**

State:

      (a) your present residence ADDRESS;

      (b) your residence ADDRESSES for the past five years; and

      (c) the dates you lived at each ADDRESS.

**RESPONSE TO FORM INTERROGATORY NO. 2.5:**

(a) Plaintiff can be contacted through counsel of record.

(b) & (c)

Narnia, Stanford University (Fall 2011-2012)

579 Toyopa Drive, Pacific Palisades, CA 90272 (Summer 2011)

Kimball Hall, Stanford University (Spring 2011)

-6-

1     Stanford House, Oxford University (Winter 2010)

2     Robinson House, Stanford University (Fall 2010)

3     Kappa Sigma House, Stanford University (2009-2010)

4     5 North Bolen Hall Court, Columbia, SC 29209 (during breaks from school)

5

6   **FORM INTERROGATORY NO. 2.6:**

7     State:

8          (a) the name, ADDRESS, and telephone number of your present employer or

9   place of self-employment; and

10         (b) the name, ADDRESS, dates of employment, job title, and nature of work

11   for each employer or self-employment you have had from five years before the INCIDENT

12   until today.

13   **RESPONSE TO FORM INTERROGATORY NO. 2.6:**

14     (a)   Plaintiff is currently a student and self-employed. Plaintiff has also served as legal

15           intern for the South Carolina Attorney General's Office since April 2013. Plaintiff

16           has also been the founder and CEO of FRBIV, LLC since about April 2012.

17     (b)   Snapchat, Inc., Co-Founder and CMO, Palo Alto, CA (March 2011-August 2011)

18           Stanford IDEAS, member of national marketing team, Palo Alto, CA (September

19           2009-June 2010)

20           Stanford Lively Arts, student curator, Palo Alto CA (October 2010-May 2011)

21           Interlochen Center for the Arts, counselor, Interlochen, MI (June 2010-August

22           2010)

23           Pope Ziegler LLC, legal intern, Columbia, SC (June 2008-August 2008)

24

25

26

27

28

- 7 -

1  **FORM INTERROGATORY NO. 2.7:**

2     State:

3          (a) the name and ADDRESS of each school or other academic or vocational

4  institution you have attended, beginning with high school;

5          (b) the dates you attended;

6          (c) the highest grade level you have completed; and

7          (d) the degrees received.

8  **RESPONSE TO FORM INTERROGATORY NO. 2.7:**

9    (a) & (b)

10    A.C. Flora High School, 1 Falcon Drive, Columbia, South Carolina (2004)

11    The McCallie School, 500 Dodds Ave., Chattanooga, Tennessee (2005-2008)

12    Stanford University, 450 Serra Mall, Stanford, California (2008-2012)

13    Fuqua School of Business, Duke University, 100 Fuqua Drive, Durham, North Carolina

14    (2013-present)

15    (c) College

16    (d) B.A.

17

18  **FORM INTERROGATORY NO. 2.8:**

19     Have you ever been convicted of a felony? If so, for each conviction state:

20          (a) the city and state where you were convicted;

21          (b) the date of conviction;

22          (c) the offense; and

23          (d) the court and case number.

24

25  **RESPONSE TO FORM INTERROGATORY NO. 2.8:**

26     No.

27

28

-8-

**FORM INTERROGATORY NO. 2.11:**

At the time of the INCIDENT were you acting as an agent or employee for any PERSON? If so, state:

      (a) the name, ADDRESS, and telephone number of that PERSON: and

      (b) a description of your duties.

**RESPONSE TO FORM INTERROGATORY NO. 2.11:**

Yes.

(a)     The entity now known as Snapchat, Inc.

(b)     Plaintiff was the Chief Marketing Officer, co-designer/builder of the application for disappearing messages, co-inventor of the application's technology, and originator of the concept for the application. Plaintiff was also responsible for filing the provisional patent application for the application's technology.

**FORM INTERROGATORY NO. 4.1:**

At the time of the INCIDENT, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the INCIDENT? If so, for each policy state:

      (a) the kind of coverage;

      (b) the name and ADDRESS of the insurance company;

      (c) the name, ADDRESS, and telephone number of each named insured;

      (d) the policy number;

      (e) the limits of coverage for each type of coverage contained in the policy;

      (f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and

      (g) the name, ADDRESS, and telephone number of the custodian of the policy.

-9-

**RESPONSE TO FORM INTERROGATORY NO. 4.1:**

No.

**FORM INTERROGATORY NO. 6.1:**

Do you attribute any physical, mental, or emotional injuries to the INCIDENT? (If your answer is "no," do not answer interrogatories 6.2 through 6.7).

**RESPONSE TO INTERROGATORY NO. 6.1:**

No.

**INTERROGATORY NO. 6.2:**

Identify each injury you attribute to the INCIDENT and the area of your body affected.

**RESPONSE TO INTERROGATORY NO. 6.2:**

N/A. Plaintiff claims no physical injuries to his body as a result of the INCIDENT.

**INTERROGATORY NO. 6.3:**

Do you still have any complaints that you attribute to the INCIDENT? If so, for each complaint state:

(a) a description;

(b) whether the complaint is subsiding, remaining the same, or becoming worse; and

(c) the frequency and duration.

**RESPONSE TO INTERROGATORY NO. 6.3:**

N/A. Plaintiff claims no physical injuries to his body as a result of the INCIDENT.

- 10 -

**INTERROGATORY NO. 6.4:**

Did you receive any consultation or examination except from expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) or treatment from a HEALTH CARE PROVIDER for any injury you attribute to the INCIDENT? If so, for each HEALTH CARE PROVIDER state:

(a) the name, ADDRESS, and telephone number;

(b) the type of consultation, examination, or treatment provided;

(c) the dates you received consultation, examination, or treatment; and

(d) the charges to date.

**RESPONSE TO INTERROGATORY NO. 6.4:**

No.

**INTERROGATORY NO. 6.5:**

Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the INCIDENT? If so, for each medication state:

(a) the name;

(b) the PERSON who prescribed or furnished it;

(c) the date it was prescribed or furnished;

(d) the dates you began and stopped taking it; and

(e) the cost to date.

**RESPONSE TO INTERROGATORY NO. 6.5:**

No.

**INTERROGATORY NO. 6.6:**

Are there any other medical services necessitated by the injuries that you attribute to the INCIDENT that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:

- 11 -

1     (a) the nature;

2     (b) the date;

3     (c) the cost; and

4     (d) the name, ADDRESS, and telephone number of each provider.

5

6   **RESPONSE TO INTERROGATORY NO. 6.6:**

7   No.

8

9   **INTERROGATORY NO. 6.7:**

10     Has any HEALTH CARE PROVIDER advised that you may require future or

11   additional treatment for any injuries that you attribute to the INCIDENT? If so, for each

12   injury state:

13     (a) the name and ADDRESS of each HEALTH CARE PROVIDER;

14     (b) the complaints for which the treatment was advised; and

15     (c) the nature, duration, and estimated cost of the treatment.

16

17   **RESPONSE TO INTERROGATORY NO. 6.7:**

18   No.

19

20   **INTERROGATORY NO. 7.1:**

21     Do you attribute any loss of or damage to a vehicle or other property to the

22   INCIDENT? If so, for each item of property:

23     (a) describe the property;

24     (b) describe the nature and location of the damage to the property;

25     (c) state the amount of damage you are claiming for each item of property and

26   how the amount was calculated; and

27     (d) if the property was sold, state the name, ADDRESS, and telephone number

28   of the seller, the date of sale, and the sale price.

- 12 -

1   **RESPONSE TO INTERROGATORY NO. 7.1:**

2     (a) & (b) Plaintiff's documents and files stored on the partnership's servers. Plaintiff's

3      personal belongings left at Spiegel's home during the summer of 2011.

4     (c) Plaintiff is not seeking damages specifically related to these items of tangible property.

5      Rather, Plaintiff is seeking his 1/3 ownership interest as a partner and joint venturer in the

6      entity now known as Snapchat, Inc.

7     (d) Plaintiff does not know whether his tangible property was sold.

8

9   **INTERROGATORY NO. 7.2:**

10     Has a written estimate or evaluation been made for any item of property referred to in

11   your answer to the preceding interrogatory? If so, for each estimate or evaluation state:

12      (a) the name, ADDRESS, and telephone number of the PERSON who

13   prepared it and the date prepared;

14      (b) the name, ADDRESS, and telephone number of each PERSON who has a

15   copy of it; and

16      (c) the amount of damage stated.

17

18   **RESPONSE TO INTERROGATORY NO. 7.2:**

19   No.

20

21   **INTERROGATORY NO. 7.3:**

22     Has any item of property referred to in your answer to interrogatory 7.1 been

23   repaired? If so, for each item state:

24      (a) the date repaired;

25      (b) a description of the repair;

26      (c) the repair cost;

27      (d) the name, ADDRESS, and telephone number of the PERSON who

28   repaired it;

- 13 -

1           (e) the name, ADDRESS, and telephone number of the PERSON who paid for

2 the repair.

3

4 **<u>RESPONSE TO INTERROGATORY NO. 7.3:</u>**

5 Not to Plaintiff's knowledge.

6

7 **<u>INTERROGATORY NO. 8.1:</u>**

8      Do you attribute any loss of income or earning capacity to the INCIDENT? (If your

9 answer is "no," do not answer interrogatories 8.2 through 8.8).

10

11 **<u>RESPONSE TO INTERROGATORY NO. 8.1:</u>**

12 Yes.

13

14 **<u>INTERROGATORY NO. 8.2:</u>**

15      State:

16           (a) the nature of your work;

17           (b) your job title at the time of the INCIDENT; and

18           (c) the date your employment began.

19

20 **<u>RESPONSE TO INTERROGATORY NO. 8.2:</u>**

21   (a) Student and self-employed

22   (b) Co-founder/partner of the entity now known as Snapchat, Inc.

23   (c) 2011

24

25 **<u>INTERROGATORY NO. 8.3:</u>**

26      State the last date before the INCIDENT that you worked for compensation.

27

28

- 14 -

1 **RESPONSE TO INTERROGATORY NO. 8.3:**

2 None.

3

4 **INTERROGATORY NO. 8.4:**

5 State your monthly income at the time of the INCIDENT and how the amount was

6 calculated.

7

8 **RESPONSE TO INTERROGATORY NO. 8.4:**

9 Plaintiff did not have a monthly income at the time of the INCIDENT. Rather, Plaintiff

10 had a 1/3 ownership interest as a partner and joint venturer in the entity now known as Snapchat,

11 Inc.

12

13 **INTERROGATORY NO. 8.5:**

14 State the date you returned to work at each place of employment following the

15 INCIDENT.

16 **RESPONSE TO INTERROGATORY NO. 8.5:**

17 Since Plaintiff was shut out from the partnership/joint venture in the entity now known as

18 Snapchat, Inc., in August 2011, he has been unable to return to do work for the entity.

19

20 **INTERROGATORY NO. 8.6:**

21 State the dates you did not work and for which you lost income as a result of the

22 INCIDENT.

23

24 **RESPONSE TO INTERROGATORY NO. 8.6:**

25 Plaintiff was shut out from the partnership/joint venture in the entity now known as

26 Snapchat, Inc. in August 2011 and has been unable to return to work for the entity since then.

27

28

- 15 -

**INTERROGATORY NO. 8.7:**

State the total income you have lost to date as a result of the INCIDENT and how the amount was calculated.

**RESPONSE TO INTERROGATORY NO. 8.7:**

Plaintiff has been denied his 1/3 ownership interest as a partner and joint venturer in the entity now known as Snapchat, Inc, and all benefits (monetary and nonmonetary) therefrom. Plaintiff cannot place a value on his 1/3 ownership interest at this time.

**RESPONSE TO INTERROGATORY NO. 8.8:**

Will you lose income in the future as a result of the INCIDENT? If so, state:

       (a) the facts upon which you base this contention;

       (b) an estimate of the amount;

       (c) an estimate of how long you will be unable to work; and

       (d) how the claim for future income is calculated.

**RESPONSE TO INTERROGATORY NO. 8.8:**

Yes, Plaintiff has been denied his 1/3 ownership interest as a partner and joint venturer in the entity now known as Snapchat, Inc., and all benefits (monetary and nonmonetary) therefrom. This damage is ongoing and Plaintiff will continue to suffer such damage until his rightful ownership interest is restored. Plaintiff cannot place a value on his 1/3 ownership interest at this time.

**INTERROGATORY NO. 9.1:**

Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state:

       (a) the nature;

       (b) the date it occurred;

       (c) the amount; and

- 16 -

1    (d) the name, ADDRESS, and telephone number of each PERSON to whom
2  an obligation was incurred.

3

4  **RESPONSE TO INTERROGATORY NO. 9.1:**

5    Plaintiff has been denied his 1/3 ownership interest as a partner and joint venturer in the
6  entity now known as Snapchat, Inc., and all benefits (monetary and nonmonetary) therefrom, since
7  August 2011. This damage is ongoing and Plaintiff will continue to suffer such damage until his
8  rightful ownership interest is restored. Plaintiff cannot place a value on his 1/3 ownership interest
9  at this time.

10

11  **INTERROGATORY NO. 9.2:**

12    Do any DOCUMENTS support the existence or amount of any item of damages
13  claimed in interrogatory 9.1? If so, describe each document and state the name, ADDRESS,
14  and telephone number of the PERSON who has each DOCUMENT.

15

16  **RESPONSE TO INTERROGATORY NO. 9.2:**

17    A response to this interrogatory would necessitate the preparation of a compilation,
18  abstract, audit, or summary of Plaintiff's and Defendants' documents, and the burden or expense
19  of preparing such a compilation would be substantially the same for Plaintiff as for Defendant.
20  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties'
21  production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of
22  additional non-privileged documents, the documents from which the answer to this interrogatory
23  may be ascertained.

24

25  **INTERROGATORY NO. 11.1:**

26    Except for this action, in the past 10 years have you filed an action or made a written
27  claim or demand for compensation for your personal injuries? If so, for each action, claim, or
28  demand state:

- 17 -

1    (a) the date, time, and place and location (closest street ADDRESS or

2  intersection) of the INCIDENT giving rise to the action, claim, or demand;

3    (b) the name, ADDRESS, and telephone number of each PERSON against

4  whom the claim or demand was made or the action filed;

5    (c) the court, names of the parties, and case number of any action filed;

6    (d) the name, ADDRESS, and telephone number of any attorney representing

7  you;

8    (e) whether the claim or action has been resolved or is pending; and

9    (f) a description of the injury.

10

11  **RESPONSE TO INTERROGATORY NO. 11.1:**

12    N/A.  Plaintiff claims no physical injuries to his body as a result of the INCIDENT.

13

14  **INTERROGATORY NO. 11.2:**

15    In the past 10 years have you made a written claim or demand for workers'

16  compensation benefits? If so, for each claim or demand state:

17    (a) the date, time, and place of the INCIDENT giving rise to the claim;

18    (b) the name, ADDRESS, and telephone number of your employer at the time

19  of the injury;

20    (c) the name, ADDRESS, and telephone number of the workers'

21  compensation insurer and the claim number;

22    (d) the period of time during which you received workers' compensation

23  benefits;

24    (e) a description of the injury;

25    (f) the name, ADDRESS, and telephone number of any HEALTH CARE

26  PROVIDER who provided services; and

27    (g) the case number at the Workers' Compensation Appeals Board.

28

- 18 -

**RESPONSE TO INTERROGATORY NO. 11.2:**

No.

**INTERROGATORY NO. 12.1:**

State the name, ADDRESS, and telephone number of each individual:

(a) who witnessed the INCIDENT or the events occurring immediately before or after the INCIDENT;

(b) who made any statement at the scene of the INCIDENT;

(c) who heard any statements made about the INCIDENT by any individual at the scene; and

(d) who YOU OR ANYONE ACTING ON YOUR BEHALF claim has knowledge of the INCIDENT (except for expert witnesses covered by Code of Civil Procedure section 2034).

**RESPONSE TO INTERROGATORY NO. 12.1:**

Plaintiff objects to the phrases "witnessed the INCIDENT or the events occurring immediately before or after the INCIDENT," "scene of the INCIDENT," "statements made about the INCIDENT by any individual at the scene," and "knowledge of the INCIDENT" as vague and ambiguous. Plaintiff objects to this request on the ground that is premature and discovery is still ongoing. Plaintiff reserves the right to supplement this Response once additional information becomes available. Subject to, and without waiving these and the General objections, Plaintiff responds as follows: Plaintiff; Evan Spiegel; Robert Murphy; John Spiegel; Melissa Thomas; Rick Murphy, Robert Murphy's mother; Omar Smith; Eric Jensen; Karl Francel; Nicole James, Chloe Kent; Kaylee Tuberville; PMK Crunchbase; Jennifer Wales; Martha Goldstein; Martha Brown; Frank Brown; Debra Yang; Anu Khosla; Ari Weiss; Audrey Blood; Ben Sagan; Bevan Funderburk; Bobby Nob Hill; Dong Nghi Huynh; Emma Johnson; Erin Pontell; Kendall Stevens; Kristin Lai; Lane Hartman; Laura Bomes; Lauren Ledford; Libbs Carbone; Madelin Konti; Matt McClure; Michelle Deem; Nick Kugelman; Quentin Buckholz; Rachel Joslyn; Riggs Brown;

- 19 -

1   Stephanie Weber; Zineb Laraki; Jack Dubie; Julian Okuyiga; Lily Sadat; Lauren Spiegel; person

2   most knowledgeable at Lightspeed Venture Partners, Benchmark Capital, Institutional Venture

3   Partners, General Catalyst Partners, and SV Angel.

4       Discovery ongoing and Plaintiff reserves the right to amend and/or supplement this

5   response if and when additional evidence is discovered.

6

7   **INTERROGATORY NO. 12.2:**

8       Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any

9   individual concerning the INCIDENT? If so, for each individual state:

10           (a) the name, ADDRESS, and telephone number of the individual

11   interviewed;

12           (b) the date of the interview; and

13           (c) the name, ADDRESS, and telephone number of the PERSON who

14   conducted the interview.

15

16   **RESPONSE TO INTERROGATORY NO. 12.2:**

17       Plaintiff objects to the extent the request seeks information that is protected by the

18   attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving

19   these objections, Plaintiff responds as follows:

20       There have been no non-privileged interviews regarding the incident.

21

22   **INTERROGATORY NO. 12.3:**

23       Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or

24   recorded statement from any individual concerning the INCIDENT? If so, for each statement

25   state:

26           (a) the name, ADDRESS, and telephone number of the individual from whom

27   the statement was obtained;

28

- 20 -

1           (b) the name, ADDRESS, and telephone number of the individual who

2 obtained the statement;

3             (c) the date the statement was obtained; and

4           (d) the name, ADDRESS, and telephone number of each PERSON who has

5 the original statement or a copy.

6

7 **RESPONSE TO INTERROGATORY NO. 12.3:**

8        Plaintiff objects to the extent the request seeks information that is protected by the

9 attorney-client privilege and/or attorney work product doctrine.  Subject to and without waiving

10 these objections, Plaintiff responds as follows:

11       No.

12

13 **INTERROGATORY NO. 12.4:**

14        Do YOU OR ANYONE ACTING ON YOUR BEHALF know of any photographs,

15 films, or videotapes depicting any place, object, or individual concerning the INCIDENT or

16 plaintiff's injuries? If so, state:

17           (a) the number of photographs or feet of film or videotape;

18           (b) the places, objects, or persons photographed, filmed, or videotaped;

19           (c) the date the photographs, films, or videotapes were taken;

20          (d) the name, ADDRESS, and telephone number of the individual taking the

21 photographs, films, or videotapes; and

22          (e) the name, ADDRESS, and telephone number of each PERSON who has

23 the original or a copy of the photographs, films, or videotapes.

24

25 **RESPONSE TO INTERROGATORY NO. 12.4:**

26        Plaintiff objects to the extent the request seeks information that is protected by the

27 attorney-client privilege and/or attorney work product doctrine.  Subject to and without waiving

28 these objections, Plaintiff responds as follows:

-21-

1    A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit,

2    or summary of Plaintiff's and Defendants' documents, and the burden or expense of preparing

3    such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly,

4    pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of

5    non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional

6    non-privileged documents, the documents from which the answer to this interrogatory may be

7    ascertained.

8

9    **INTERROGATORY NO. 12.5:**

10         Do YOU OR ANYONE ACTING ON YOUR BEHALF know of any diagram,

11    reproduction, or model of any place or thing (except for items developed by expert witnesses

12    covered by Code of Civil Procedure sections 2034.210- 2034.310) concerning the

13    INCIDENT? If so, for each item state:

14         (a) the type (i.e., diagram, reproduction, or model);

15         (b) the subject matter; and

16         (c) the name, ADDRESS, and telephone number of each PERSON who has it.

17

18    **RESPONSE TO INTERROGATORY NO. 12.5:**

19         Plaintiff objects to the extent the request seeks information that is protected by the

20    attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving

21    these objections, Plaintiff responds as follows:

22         A response to this interrogatory would necessitate the preparation of a compilation,

23    abstract, audit, or summary of Plaintiff's and Defendants' documents, and the burden or expense

24    of preparing such a compilation would be substantially the same for Plaintiff as for Defendant.

25    Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties'

26    production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of

27    additional non-privileged documents, the documents from which the answer to this interrogatory

28    may be ascertained.

PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FORM INTERROGATORIES, SET ONE
**EXHIBIT 3**
**PAGE 101**

**INTERROGATORY NO. 12.6:**

Was a report made by any PERSON concerning the INCIDENT? If so, state:

(a) the name, title, identification number, and employer of the PERSON who made the report;

(b) the date and type of report made;

(c) the name, ADDRESS, and telephone number of the PERSON for whom the report was made; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of the report.

**RESPONSE TO INTERROGATORY NO. 12.6:**

Plaintiff objects to the extent the request seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, Plaintiff responds as follows:

No.

**INTERROGATORY NO. 13.1:**

Have YOU OR ANYONE ACTING ON YOUR BEHALF conducted surveillance of any individual involved in the INCIDENT or any party to this action? If so, for each surveillance state:

(a) the name, ADDRESS, and telephone number of the individual or party;

(b) the time, date, and place of the surveillance;

(c) the name, ADDRESS, and telephone number of the individual who conducted the surveillance; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of any surveillance photograph, film, or videotape.

**RESPONSE TO INTERROGATORY NO. 13.1:**

Plaintiff objects to the extent the request seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, Plaintiff responds as follows:

No.

**INTERROGATORY NO. 13.2:**

Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;

(b) the date;

(c) the name, ADDRESS, and telephone number of the individual who prepared the report; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy.

**RESPONSE TO INTERROGATORY NO. 13.2:**

Plaintiff objects to the extent the request seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, Plaintiff responds as follows:

No.

**INTERROGATORY NO. 14.1:**

Do YOU OR ANYONE ACTING ON YOUR BEHALF contend that any PERSON involved in the INCIDENT violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the INCIDENT? If so, identify the name, ADDRESS, and telephone number of each PERSON and the statute, ordinance, or regulation that was violated.

- 24 -

**RESPONSE TO INTERROGATORY NO. 14.1:**

Plaintiff objects to the extent the request seeks information that is protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, Plaintiff responds as follows:

No.

**INTERROGATORY NO. 17.1:**

Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

    (a) state the number of the request;

    (b) state all facts upon which you base your response;

    (c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

    (d) identify all DOCUMENTS and other tangible things that support your response and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

**RESPONSE TO INTERROGATORY NO. 17.1:**

    (a) RFA No. 1:   ADMIT that, prior to March 1, 2011, YOU had never attempted to create or develop any new business venture.

    (b) Prior to March 1, 2011, Plaintiff and Evan Spiegel discussed, and were in the initial stages creating, a business venture/company for the design and sale of fashion apparel.

    (c) See Response to Interrogatory No. 12.1.

    (d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

**EXHIBIT 3**
**PAGE 104**

1    the parties' production of non-privileged documents to date, as well as Plaintiff's

2    forthcoming productions of additional non-privileged documents, the documents from

3    which the answer to this interrogatory may be ascertained.

4

5    (a) RFA No. 3:  ADMIT that, prior to March 1, 2011, YOU had never attempted to create or

6        develop any new product or service.

7    (b) Prior to March 1, 2011, Plaintiff and Evan Spiegel discussed, and were in the initial stages

8        creating, a business venture/company for the design and sale of fashion apparel.

9    (c) See Response to Interrogatory No. 12.1.

10   (d) A response to this interrogatory would necessitate the preparation of a compilation,

11       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

12       preparing such a compilation would be substantially the same for Plaintiff as for

13       Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

14       the parties' production of non-privileged documents to date, as well as Plaintiff's

15       forthcoming productions of additional non-privileged documents, the documents from

16       which the answer to this interrogatory may be ascertained.

17

18   (a) RFA No. 5:  ADMIT that, prior to March 1, 2011, YOU had never attempted to create or

19       develop any new product or service.

20   (b) Prior to March 1, 2011, Plaintiff and Evan Spiegel discussed, and were in the initial stages

21       creating, a business venture/company for the design and sale of fashion apparel.

22   (c) See Response to Interrogatory No. 12.1.

23   (d) A response to this interrogatory would necessitate the preparation of a compilation,

24       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

25       preparing such a compilation would be substantially the same for Plaintiff as for

26       Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

27       the parties' production of non-privileged documents to date, as well as Plaintiff's

28

- 26 -

1  forthcoming productions of additional non-privileged documents, the documents from
2  which the answer to this interrogatory may be ascertained.

3
4  (a) RFA No. 6:  ADMIT that YOU claim no ownership, except as an alleged partner, of any
5     intellectual property of Snapchat, Inc.
6  (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now
7     known as Snapchat, Inc., including any intellectual property assets it may possess.
8  (c) See Response to Interrogatory No. 12.1.
9  (d) A response to this interrogatory would necessitate the preparation of a compilation,
10    abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
11    preparing such a compilation would be substantially the same for Plaintiff as for
12    Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
13    the parties' production of non-privileged documents to date, as well as Plaintiff's
14    forthcoming productions of additional non-privileged documents, the documents from
15    which the answer to this interrogatory may be ascertained.

16
17 (a) RFA No. 7:  ADMIT that YOU claim no ownership, except as an alleged partner, of any
18    patent rights of Snapchat, Inc.
19 (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now
20    known as Snapchat, Inc., including any intellectual property assets it may possess.
21 (c) See Response to Interrogatory No. 12.1.
22 (d) A response to this interrogatory would necessitate the preparation of a compilation,
23    abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
24    preparing such a compilation would be substantially the same for Plaintiff as for
25    Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
26    the parties' production of non-privileged documents to date, as well as Plaintiff's
27    forthcoming productions of additional non-privileged documents, the documents from
28    which the answer to this interrogatory may be ascertained.

- 27 -

1

2    (a) RFA No. 8: ADMIT that YOU claim no ownership, except as an alleged partner, of any

3        copyright rights of Snapchat, Inc.

4    (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now

5        known as Snapchat, Inc., including any intellectual property assets it may possess.

6    (c) See Response to Interrogatory No. 12.1.

7    (d) A response to this interrogatory would necessitate the preparation of a compilation,

8        abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

9        preparing such a compilation would be substantially the same for Plaintiff as for

10       Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

11       the parties' production of non-privileged documents to date, as well as Plaintiff's

12       forthcoming productions of additional non-privileged documents, the documents from

13       which the answer to this interrogatory may be ascertained.

14

15    (a) RFA No. 9: ADMIT that YOU claim no ownership, except as an alleged partner, of the

16       "SNAPCHAT" mark.

17    (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now

18       known as Snapchat, Inc., including any intellectual property assets it may possess.

19    (c) See Response to Interrogatory No. 12.1.

20    (d) A response to this interrogatory would necessitate the preparation of a compilation,

21       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

22       preparing such a compilation would be substantially the same for Plaintiff as for

23       Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

24       the parties' production of non-privileged documents to date, as well as Plaintiff's

25       forthcoming productions of additional non-privileged documents, the documents from

26       which the answer to this interrogatory may be ascertained.

27

28

- 28 -

1    (a) RFA No. 10:  ADMIT that YOU claim no ownership, except as an alleged partner, of any

2        portion of the Snapchat, Inc. logo.

3    (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now

4        known as Snapchat, Inc., including any intellectual property assets it may possess.

5    (c) See Response to Interrogatory No. 12.1.

6    (d) A response to this interrogatory would necessitate the preparation of a compilation,

7        abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

8        preparing such a compilation would be substantially the same for Plaintiff as for

9        Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

10       the parties' production of non-privileged documents to date, as well as Plaintiff's

11       forthcoming productions of additional non-privileged documents, the documents from

12       which the answer to this interrogatory may be ascertained.

13

14   (a) RFA No. 11:  ADMIT that YOU claim no ownership, except as an alleged partner, of

15       Snapchat, Inc., Privacy Policy, attached hereto as Exhibit 1.

16   (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now

17       known as Snapchat, Inc., including any assets it may possess.

18   (c) See Response to Interrogatory No. 12.1.

19   (d) A response to this interrogatory would necessitate the preparation of a compilation,

20       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

21       preparing such a compilation would be substantially the same for Plaintiff as for

22       Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

23       the parties' production of non-privileged documents to date, as well as Plaintiff's

24       forthcoming productions of additional non-privileged documents, the documents from

25       which the answer to this interrogatory may be ascertained.

26

27   (a) RFA No. 12:  ADMIT that YOU claim no ownership, except as an alleged partner, of

28       Snapchat, Inc., Terms of Service, attached hereto as Exhibit 2.

- 29 -

1  (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now

2  known as Snapchat, Inc., including any assets it may possess.

3  (c) See Response to Interrogatory No. 12.1.

4  (d) A response to this interrogatory would necessitate the preparation of a compilation,

5  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

6  preparing such a compilation would be substantially the same for Plaintiff as for

7  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

8  the parties' production of non-privileged documents to date, as well as Plaintiff's

9  forthcoming productions of additional non-privileged documents, the documents from

10  which the answer to this interrogatory may be ascertained.

11

12  (a) RFA No. 13: ADMIT that YOU claim no ownership, except as an alleged partner, of

13  Snapchat, Inc., Press Release, attached hereto as Exhibit 3.

14  (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now

15  known as Snapchat, Inc., including any assets it may possess.

16  (c) See Response to Interrogatory No. 12.1.

17  (d) A response to this interrogatory would necessitate the preparation of a compilation,

18  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

19  preparing such a compilation would be substantially the same for Plaintiff as for

20  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

21  the parties' production of non-privileged documents to date, as well as Plaintiff's

22  forthcoming productions of additional non-privileged documents, the documents from

23  which the answer to this interrogatory may be ascertained.

24

25  (a) RFA No. 14: ADMIT that YOU claim no ownership, except as an alleged partner, of

26  Snapchat, Inc., Frequently Asked Questions, attached hereto as Exhibit 4.

27  (b) Plaintiff claims his 1/3 ownership interest as a partner and joint venturer in the entity now

28  known as Snapchat, Inc., including any assets it may possess.

- 30 -

1   (c) See Response to Interrogatory No. 12.1.

2   (d) A response to this interrogatory would necessitate the preparation of a compilation,

3   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

4   preparing such a compilation would be substantially the same for Plaintiff as for

5   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

6   the parties' production of non-privileged documents to date, as well as Plaintiff's

7   forthcoming productions of additional non-privileged documents, the documents from

8   which the answer to this interrogatory may be ascertained.

9

10  (a) RFA No. 15: ADMIT that, unless YOU were partners with Evan Spiegel or Bobby

11  Murphy, YOU are not entitled to any relief in this action.

12  (b) Plaintiff is entitled to relief in this action under various independent causes of action and

13  legal theories, including, but not limited to, breach of joint venture agreement, breach of

14  fiduciary duty, unjust enrichment, fraud, constructive fraud, and conversion.

15  (c) See Response to Interrogatory No. 12.1.

16  (d) A response to this interrogatory would necessitate the preparation of a compilation,

17  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

18  preparing such a compilation would be substantially the same for Plaintiff as for

19  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

20  the parties' production of non-privileged documents to date, as well as Plaintiff's

21  forthcoming productions of additional non-privileged documents, the documents from

22  which the answer to this interrogatory may be ascertained.

23

24  (a) RFA No. 19: ADMIT that, during the time YOU participated in the ALLEGED

25  PARTNERSHIP, YOU did not share equally in the expenses of the ALLEGED

26  PARTNERSHIP.

27

28

- 31 -

1     (b) All three partners in the partnership intended to split the expenses of the partnership

2        equally and between the three of them. Any upfront costs contributed by one partner

3        would be reimbursed by the other two partners so that each paid an equal 1/3 share.

4     (c) See Response to Interrogatory No. 12.1.

5     (d) A response to this interrogatory would necessitate the preparation of a compilation,

6        abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

7        preparing such a compilation would be substantially the same for Plaintiff as for

8        Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

9        the parties' production of non-privileged documents to date, as well as Plaintiff's

10      forthcoming productions of additional non-privileged documents, the documents from

11      which the answer to this interrogatory may be ascertained.

12

13    (a) RFA No. 20: ADMIT that, during the time YOU participated in the ALLEGED

14      PARTNERSHIP, YOU dedicated less time to the pursuits of the ALLEGED

15      PARTNERSHIP than Evan Spiegel.

16    (b) The three partners did not keep a detailed account of the time each spent on the pursuits of

17      the partnership. However, the three partners each spent approximately the same amount of

18      time as each other working in their respective spheres of responsibility for the partnership.

19    (c) See Response to Interrogatory No. 12.1.

20    (d) A response to this interrogatory would necessitate the preparation of a compilation,

21      abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

22      preparing such a compilation would be substantially the same for Plaintiff as for

23      Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

24      the parties' production of non-privileged documents to date, as well as Plaintiff's

25      forthcoming productions of additional non-privileged documents, the documents from

26      which the answer to this interrogatory may be ascertained.

27

28

1   (a) RFA No. 21 ADMIT that, during the time YOU participated in the ALLEGED

2      PARTNERSHIP, YOU dedicated less time to the pursuits of the ALLEGED

3      PARTNERSHIP than Bobby Murphy.

4   (b) The three partners did not keep a detailed account of the time each spent on the pursuits of

5      the partnership. However, the three partners each spent approximately the same amount of

6      time as each other working in their respective spheres of responsibility for the partnership.

7   (c) See Response to Interrogatory No. 12.1.

8   (d) A response to this interrogatory would necessitate the preparation of a compilation,

9      abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

10     preparing such a compilation would be substantially the same for Plaintiff as for

11     Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

12     the parties' production of non-privileged documents to date, as well as Plaintiff's

13     forthcoming productions of additional non-privileged documents, the documents from

14     which the answer to this interrogatory may be ascertained.

15

16  (a) RFA No. 22: ADMIT that YOU ceased participating in the ALLEGED PARTNERSHIP

17     on or before August 30, 2011.

18  (b) Brown did not "cease participating" in the partnership; rather, Spiegel and Murphy

19     prevented Brown from continuing to participate in the partnership/joint venture when they

20     improperly excluded Brown from the partnership/joint venture in August 2011.

21  (c) See Response to Interrogatory No. 12.1.

22  (d) A response to this interrogatory would necessitate the preparation of a compilation,

23     abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

24     preparing such a compilation would be substantially the same for Plaintiff as for

25     Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

26     the parties' production of non-privileged documents to date, as well as Plaintiff's

27     forthcoming productions of additional non-privileged documents, the documents from

28     which the answer to this interrogatory may be ascertained.

- 33 -

1

2  (a) RFA No. 23:  ADMIT that YOU had ceased being a member of the ALLEGED

3      PARTNERSHIP by August 30, 2011.

4  (b) Brown did not "cease being a member" of the partnership; rather, Spiegel and Murphy

5      prevented Brown from continuing to participate in the partnership/joint venture when they

6      improperly excluded Brown from the partnership/joint venture in August 2011.

7  (c) See Response to Interrogatory No. 12.1.

8  (d) A response to this interrogatory would necessitate the preparation of a compilation,

9      abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

10     preparing such a compilation would be substantially the same for Plaintiff as for

11     Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

12     the parties' production of non-privileged documents to date, as well as Plaintiff's

13     forthcoming productions of additional non-privileged documents, the documents from

14     which the answer to this interrogatory may be ascertained.

15

16  (a) RFA No. 24:  ADMIT that YOU performed no tasks on behalf of the ALLEGED

17      PARTNERSHIP after August 30, 2011.

18  (b) Brown did not cease performing work for the partnership; rather, Spiegel and Murphy

19      prevented Brown from continuing to participate in the partnership/joint venture when they

20      improperly excluded Brown from the partnership/joint venture in August 2011.

21  (c) See Response to Interrogatory No. 12.1.

22  (d) A response to this interrogatory would necessitate the preparation of a compilation,

23      abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

24      preparing such a compilation would be substantially the same for Plaintiff as for

25      Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

26      the parties' production of non-privileged documents to date, as well as Plaintiff's

27      forthcoming productions of additional non-privileged documents, the documents from

28      which the answer to this interrogatory may be ascertained.

- 34 -

1

2   (a) RFA No. 25: ADMIT that YOU are not liable for any of the costs that have been incurred

3   by the ALLEGED PARTNERSHIP since August 30, 2011.

4   (b) Plaintiff objects to this request as calling for a legal conclusion. Subject to this objection,

5   Plaintiff responds that to the extent he is legally obligated to assume any liability incurred

6   on behalf of Defendant as a partner/joint venturer, Plaintiff admits that he is liable for any

7   costs incurred by the partnership since August 30, 2011, though the partnership has been

8   converted into Snapchat, Inc., a corporation.

9   (c) See Response to Interrogatory No. 12.1.

10   (d) A response to this interrogatory would necessitate the preparation of a compilation,

11   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

12   preparing such a compilation would be substantially the same for Plaintiff as for

13   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

14   the parties' production of non-privileged documents to date, as well as Plaintiff's

15   forthcoming productions of additional non-privileged documents, the documents from

16   which the answer to this interrogatory may be ascertained.

17

18   (a) RFA No. 26: ADMIT that YOU are not liable for any obligations that have been incurred

19   by the ALLEGED PARTNERSHIP since August 30, 2011.

20   (b) Plaintiff objects to this request as calling for a legal conclusion. Subject to this objection,

21   Plaintiff responds that to the extent he is legally obligated to assume any liability incurred

22   on behalf of Defendant as a partner/joint venturer, Plaintiff admits that he is liable for any

23   obligations incurred by the partnership since August 30, 2011, though the partnership has

24   been converted into Snapchat, Inc., a corporation.

25   (c) See Response to Interrogatory No. 12.1.

26   (d) A response to this interrogatory would necessitate the preparation of a compilation,

27   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

28   preparing such a compilation would be substantially the same for Plaintiff as for

- 35 -

1  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
2  the parties' production of non-privileged documents to date, as well as Plaintiff's
3  forthcoming productions of additional non-privileged documents, the documents from
4  which the answer to this interrogatory may be ascertained.

5

6  (a) RFA No. 27: ADMIT that YOU have not paid any costs that have been incurred by the
7  ALLEGED PARTNERSHIP since August 30, 2011.

8  (b) Plaintiff objects that this request calls for a legal conclusion. Subject to the aforementioned
9  objections, Plaintiff responds that he cannot admit or deny this request. A reasonable
10  inquiry concerning the matter in the particular request has been made to obtain sufficient
11  information and the information known or readily obtainable is insufficient to enable
12  Plaintiff to admit the matter. Since August 2011, Plaintiff has been wrongfully shut out
13  from the partnership/joint venture now known as Snapchat, Inc. Plaintiff therefore does not
14  know whether his 1/3 share of the partnership/joint venture was used to pay any costs
15  incurred by the partnership since August 30, 2011.

16  (c) See Response to Interrogatory No. 12.1.

17  (d) A response to this interrogatory would necessitate the preparation of a compilation,
18  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
19  preparing such a compilation would be substantially the same for Plaintiff as for
20  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
21  the parties' production of non-privileged documents to date, as well as Plaintiff's
22  forthcoming productions of additional non-privileged documents, the documents from
23  which the answer to this interrogatory may be ascertained.

24

25  (a) RFA No. 28: ADMIT that YOU did not have authority to bind the ALLEGED
26  PARTNERSHIP after August 30, 2011.

27

28

- 36 -

(b) Plaintiff objects that this request calls for a legal conclusion. Subject to the aforementioned objections, Plaintiff responds that he cannot admit or deny this request. A reasonable inquiry concerning the matter in the particular request has been made to obtain sufficient information and the information known or readily obtainable is insufficient to enable Plaintiff to admit the matter. Since August 2011, Plaintiff has been wrongfully shut out from the partnership/joint venture now known as Snapchat, Inc. As a wrongfully excluded partner, Plaintiff believed he had the authority to bind the partnership but has not exercised that right.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 29: ADMIT that the ALLEGED PARTNERSHIP did not have authority to bind YOU after August 30, 2011.

(b) Plaintiff objects that this request calls for a legal conclusion. Subject to the aforementioned objections, Plaintiff responds that he cannot admit or deny this request. A reasonable inquiry concerning the matter in the particular request has been made to obtain sufficient information and the information known or readily obtainable is insufficient to enable Plaintiff to admit the matter. Since August 2011, Plaintiff has been wrongfully shut out from the partnership/joint venture now known as Snapchat, Inc. To the extent any actions were taken on behalf of the partnership since August 30, 2011, that have bound Spiegel and Murphy, Plaintiff admits that he is equally as bound as a co-partner/joint venturer.

(c) See Response to Interrogatory No. 12.1.

1    (d) A response to this interrogatory would necessitate the preparation of a compilation,

2        abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

3        preparing such a compilation would be substantially the same for Plaintiff as for

4        Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

5        the parties' production of non-privileged documents to date, as well as Plaintiff's

6        forthcoming productions of additional non-privileged documents, the documents from

7        which the answer to this interrogatory may be ascertained.

8

9    (a) RFA No. 30: ADMIT that, since August 30, 2011, YOU have placed YOUR own interests

10       ahead of the interests of the ALLEGED PARTNERSHIP, Evan Spiegel and Bobby

11       Murphy.

12   (b) After making a reasonable inquiry concerning the matter in this particular request, the

13       information known or readily obtainable is insufficient to enable Plaintiff to admit or deny

14       the matter. Because Plaintiff was shut out of the partnership/joint venture by Spiegel and

15       Murphy in August 2011, Plaintiff has insufficient information regarding the interests of the

16       partnership, Spiegel and Murphy after August 2011.

17   (c) See Response to Interrogatory No. 12.1.

18   (d) A response to this interrogatory would necessitate the preparation of a compilation,

19       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

20       preparing such a compilation would be substantially the same for Plaintiff as for

21       Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

22       the parties' production of non-privileged documents to date, as well as Plaintiff's

23       forthcoming productions of additional non-privileged documents, the documents from

24       which the answer to this interrogatory may be ascertained.

25

26   (a) RFA No. 31: ADMIT that, since August 30, 2011, YOU have never placed the interests of

27       the ALLEGED PARTNERSHIP, Evan Spiegel or Bobby Murphy ahead of YOUR own

28       interests.

-38-

1  (b) After making a reasonable inquiry concerning the matter in this particular request, the

2  information known or readily obtainable is insufficient to enable Plaintiff to admit or deny

3  the matter. Because Plaintiff was shut out of the partnership/joint venture by Spiegel and

4  Murphy in August 2011, Plaintiff has insufficient information regarding the interests of the

5  partnership, Spiegel and Murphy after August 2011.

6  (c) See Response to Interrogatory No. 12.1.

7  (d) A response to this interrogatory would necessitate the preparation of a compilation,

8  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

9  preparing such a compilation would be substantially the same for Plaintiff as for

10  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

11  the parties' production of non-privileged documents to date, as well as Plaintiff's

12  forthcoming productions of additional non-privileged documents, the documents from

13  which the answer to this interrogatory may be ascertained.

14

15  (a) RFA No. 32: ADMIT that YOU did not have an equal right to manage and conduct the

16  affairs of the ALLEGED PARTNERSHIP after August 30, 2011.

17  (b) Plaintiff continues to have an equal right to manage and conduct the affairs of the

18  partnership after August 30, 2011, but Spiegel and Murphy have wrongfully denied

19  Plaintiff the opportunity to exercise his right.

20  (c) See Response to Interrogatory No. 12.1.

21  (d) A response to this interrogatory would necessitate the preparation of a compilation,

22  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

23  preparing such a compilation would be substantially the same for Plaintiff as for

24  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

25  the parties' production of non-privileged documents to date, as well as Plaintiff's

26  forthcoming productions of additional non-privileged documents, the documents from

27  which the answer to this interrogatory may be ascertained.

28

1     (a) RFA No. 33: ADMIT that YOU never had an equal right to manage and conduct the affairs

2         of the ALLEGED PARTNERSHIP.

3     (b) Since the inception of the partnership, Plaintiff has had, and continues to have an equal

4         right to manage and conduct the affairs of the partnership. However, since August 2011

5         Spiegel and Murphy have wrongfully denied Plaintiff the opportunity to exercise his right.

6     (c) See Response to Interrogatory No. 12.1.

7     (d) A response to this interrogatory would necessitate the preparation of a compilation,

8         abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

9         preparing such a compilation would be substantially the same for Plaintiff as for

10        Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

11        the parties' production of non-privileged documents to date, as well as Plaintiff's

12        forthcoming productions of additional non-privileged documents, the documents from

13        which the answer to this interrogatory may be ascertained.

14

15     (a) RFA No. 34: ADMIT that, after April 1, 2011, every task YOU performed for the

16        ALLEGED PARTNERSHIP was done at the direction of Evan Spiegel or Bobby Murphy.

17     (b) Since the inception of the partnership, Plaintiff has had, and continues to have an equal

18        right to manage and conduct the affairs of the partnership. .Plaintiff did not act at the

19        direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint

20        venturer with them.

21     (c) See Response to Interrogatory No. 12.1.

22     (d) A response to this interrogatory would necessitate the preparation of a compilation,

23        abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

24        preparing such a compilation would be substantially the same for Plaintiff as for

25        Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

26        the parties' production of non-privileged documents to date, as well as Plaintiff's

27        forthcoming productions of additional non-privileged documents, the documents from

28        which the answer to this interrogatory may be ascertained.

EXHIBIT 3
PAGE 119

1

2    (a) RFA No. 34: ADMIT that, after April 1, 2011, every task YOU performed for the

3    ALLEGED PARTNERSHIP was done at the direction of Evan Spiegel or Bobby Murphy.

4    (b) Since the inception of the partnership, Plaintiff has had, and continues to have an equal

5    right to manage and conduct the affairs of the partnership. Plaintiff did not act at the

6    direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint

7    venturer with them.

8    (c) See Response to Interrogatory No. 12.1.

9    (d) A response to this interrogatory would necessitate the preparation of a compilation,

10   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

11   preparing such a compilation would be substantially the same for Plaintiff as for

12   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

13   the parties' production of non-privileged documents to date, as well as Plaintiff's

14   forthcoming productions of additional non-privileged documents, the documents from

15   which the answer to this interrogatory may be ascertained.

16

17   (a) RFA No. 35: ADMIT that, after May 1, 2011, every task YOU performed for the

18   ALLEGED PARTNERSHIP was done at the direction of Evan Spiegel or Bobby Murphy.

19   (b) Since the inception of the partnership, Plaintiff has had, and continues to have an equal

20   right to manage and conduct the affairs of the partnership. Plaintiff did not act at the

21   direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint

22   venturer with them.

23   (c) See Response to Interrogatory No. 12.1.

24   (d) A response to this interrogatory would necessitate the preparation of a compilation,

25   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

26   preparing such a compilation would be substantially the same for Plaintiff as for

27   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

28   the parties' production of non-privileged documents to date, as well as Plaintiff's

- 41 -

1  forthcoming productions of additional non-privileged documents, the documents from

2  which the answer to this interrogatory may be ascertained.

3

4  (a) RFA No. 36: ADMIT that, after June 1, 2011, every task YOU performed for the

5  ALLEGED PARTNERSHIP was done at the direction of Evan Spiegel or Bobby Murphy.

6  (b) Since the inception of the partnership, Plaintiff has had, and continues to have an equal

7  right to manage and conduct the affairs of the partnership. Plaintiff did not act at the

8  direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint

9  venturer with them.

10  (c) See Response to Interrogatory No. 12.1.

11  (d) A response to this interrogatory would necessitate the preparation of a compilation,

12  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

13  preparing such a compilation would be substantially the same for Plaintiff as for

14  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

15  the parties' production of non-privileged documents to date, as well as Plaintiff's

16  forthcoming productions of additional non-privileged documents, the documents from

17  which the answer to this interrogatory may be ascertained.

18

19  (a) RFA No. 37: ADMIT that, after July 1, 2011, every task YOU performed for the

20  ALLEGED PARTNERSHIP was done at the direction of Evan Spiegel or Bobby Murphy.

21  (b) Since the inception of the partnership, Plaintiff has had, and continues to have an equal

22  right to manage and conduct the affairs of the partnership. Plaintiff did not act at the

23  direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint

24  venturer with them.

25  (c) See Response to Interrogatory No. 12.1.

26  (d) A response to this interrogatory would necessitate the preparation of a compilation,

27  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

28  preparing such a compilation would be substantially the same for Plaintiff as for

- 42 -

1  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

2  the parties' production of non-privileged documents to date, as well as Plaintiff's

3  forthcoming productions of additional non-privileged documents, the documents from

4  which the answer to this interrogatory may be ascertained.

5

6  (a) RFA No. 38: ADMIT that, after August 1, 2011, every task YOU performed for the

7  ALLEGED PARTNERSHIP was done at the direction of Evan Spiegel or Bobby Murphy.

8  (b) Since the inception of the partnership, Plaintiff has had, and continues to have an equal

9  right to manage and conduct the affairs of the partnership. Plaintiff did not act at the

10  direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint

11  venturer with them.

12  (c) See Response to Interrogatory No. 12.1.

13  (d) A response to this interrogatory would necessitate the preparation of a compilation,

14  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

15  preparing such a compilation would be substantially the same for Plaintiff as for

16  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

17  the parties' production of non-privileged documents to date, as well as Plaintiff's

18  forthcoming productions of additional non-privileged documents, the documents from

19  which the answer to this interrogatory may be ascertained.

20

21  (a) RFA No. 39: ADMIT that YOU authored the May 8, 2012 email message attached hereto

22  as Exhibit 1.

23  (b) Plaintiff objects to this request on the ground that it refers to a settlement communication in

24  violation of Cal. Evid. Code §1152, 1154.

25  (c) n/a.

26  (d) n/a.

27

28

- 43 -

1    (a) RFA No. 40: ADMIT that YOU did not make any false statements in the May 8, 2012

2        email message attached hereto as Exhibit 1.

3    (b) Plaintiff objects to this request on the ground that it refers to a settlement communication in

4        violation of Cal. Evid. Code § 1152, 1154.

5    (c) n/a.

6    (d) n/a.

7

8    (a) RFA No. 41: ADMIT that YOU made false statements in the May 8, 2012 email message

9        attached hereto as Exhibit 1.

10   (b) Plaintiff objects to this request on the ground that it refers to a settlement communication in

11       violation of Cal. Evid. Code § 1152, 1154.

12   (c) n/a.

13   (d) n/a.

14

15   (a) RFA No. 42: ADMIT that, prior to the filing of YOUR COMPLAINT, YOU demanded

16       that YOU receive equity in Snapchat, Inc.

17   (b) Plaintiff never "demanded that [he] receive equity" in Snapchat, Inc. because Plaintiff has

18       had, and continues to have, a 1/3 ownership interest in the partnership and the joint venture.

19   (c) See Response to Interrogatory No. 12.1.

20   (d) A response to this interrogatory would necessitate the preparation of a compilation,

21       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

22       preparing such a compilation would be substantially the same for Plaintiff as for

23       Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

24       the parties' production of non-privileged documents to date, as well as Plaintiff's

25       forthcoming productions of additional non-privileged documents, the documents from

26       which the answer to this interrogatory may be ascertained.

27

28

- 44 -

1     (a) RFA No. 43:  ADMIT that, when you demanded that YOU receive equity in Snapchat, Inc.

2         before YOU filed YOUR COMPLAINT, YOU did not claim or allege that YOU had been

3         partners with Evan Spiegel or Bobby Murphy.

4     (b) Plaintiff never "demanded that [he] receive equity" in Snapchat, Inc. because Plaintiff has

5         had, and continues to have, a 1/3 ownership interest in the partnership and the joint venture.

6     (c) See Response to Interrogatory No. 12.1.

7     (d) A response to this interrogatory would necessitate the preparation of a compilation,

8         abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

9         preparing such a compilation would be substantially the same for Plaintiff as for

10        Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

11        the parties' production of non-privileged documents to date, as well as Plaintiff's

12        forthcoming productions of additional non-privileged documents, the documents from

13        which the answer to this interrogatory may be ascertained.

14

15    (a) RFA No. 44:  ADMIT that, prior to the filing of YOUR COMPLAINT, YOU never

16        claimed in any writing to Evan Spiegel or Bobby Murphy that the three of you had been or

17        were partners.

18    (b) Plaintiff objects to this request to the extent it is intended to refer to a settlement

19        communication in violation of Cal. Evid. Code § 1152, 1154.  Plaintiff admits this request

20        subject to, and without waiving this objection.

21    (c) See Response to Interrogatory No. 12.1.

22    (d) A response to this interrogatory would necessitate the preparation of a compilation,

23        abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

24        preparing such a compilation would be substantially the same for Plaintiff as for

25        Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

26        the parties' production of non-privileged documents to date, as well as Plaintiff's

27        forthcoming productions of additional non-privileged documents, the documents from

28        which the answer to this interrogatory may be ascertained.

1

2    (a) RFA No. 45: ADMIT that, prior to June 1, 2012, YOU never claimed in writing to anyone

3    that YOU, Evan Spiegel and Bobby Murphy had been or were partners.

4    (b) Plaintiff objects to this request to the extent it is intended to refer to a settlement

5    communication in violation of Cal. Evid. Code § 1152, 1154. Plaintiff admits this request

6    subject to, and without waiving this objection.

7    (c) See Response to Interrogatory No. 12.1.

8    (d) A response to this interrogatory would necessitate the preparation of a compilation,

9    abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

10   preparing such a compilation would be substantially the same for Plaintiff as for

11   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

12   the parties' production of non-privileged documents to date, as well as Plaintiff's

13   forthcoming productions of additional non-privileged documents, the documents from

14   which the answer to this interrogatory may be ascertained.

15

16   (a) RFA No. 46: ADMIT that, prior to June 1, 2012, YOU never claimed to anyone that YOU,

17   Evan Spiegel and Bobby Murphy had been or were partners (excluding alleged oral

18   conversations with Evan Spiegel and Bobby Murphy).

19   (b) Plaintiff frequently referred to Evan Spiegel and Robert Murphy as his "partners." These

20   statements were made orally to numerous friends, family members and classmates in the

21   spring and summer of 2011.

22   (c) See Response to Interrogatory No. 12.1.

23   (d) A response to this interrogatory would necessitate the preparation of a compilation,

24   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

25   preparing such a compilation would be substantially the same for Plaintiff as for

26   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

27   the parties' production of non-privileged documents to date, as well as Plaintiff's

28

- 46 -

1    forthcoming productions of additional non-privileged documents, the documents from

2    which the answer to this interrogatory may be ascertained.

3

4    (a) RFA No. 47: ADMIT that YOU were given the task, by Evan Spiegel, of writing and

5        outlining a provisional application for a patent relating to screenshot detection technology.

6    (b) Plaintiff objects to this request on the ground that it refers to a settlement communication in

7        violation of Cal. Evid. Code § 1152, 1154. Subject to and without waiving that objection,

8        Plaintiff responds that: Plaintiff's writing of the provisional patent application was done

9        pursuant to the joint venture and partnership agreement between the three partners/joint

10       venturers. Since the inception of the partnership, Plaintiff has had, and continues to have

11       an equal right to manage and conduct the affairs of the partnership. Plaintiff did not act at

12       the direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint

13       venturer with them.

14   (c) See Response to Interrogatory No. 12.1.

15   (d) A response to this interrogatory would necessitate the preparation of a compilation,

16       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

17       preparing such a compilation would be substantially the same for Plaintiff as for

18       Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

19       the parties' production of non-privileged documents to date, as well as Plaintiff's

20       forthcoming productions of additional non-privileged documents, the documents from

21       which the answer to this interrogatory may be ascertained.

22

23   (a) RFA No. 48: ADMIT that YOU were given the task, by Evan Spiegel, of writing and

24       outlining a provisional application for a patent relating to the application for disappearing

25       messages.

26   (b) Plaintiff objects to this request on the ground that it refers to a settlement communication

27       in violation of Cal. Evid. Code § 1152, 1154. Subject to and without waiving that

28       objection, Plaintiff responds that: Plaintiff's writing of the provisional patent application

1   was done pursuant to the joint venture and partnership agreement between the three
2   partners/joint venturers. Since the inception of the partnership, Plaintiff has had, and
3   continues to have an equal right to manage and conduct the affairs of the partnership.
4   Plaintiff did not act at the direction of Evan Spiegel or Bobby Murphy, because he was an
5   equal partner/joint venturer with them.

6   (c) See Response to Interrogatory No. 12.1.

7   (d) A response to this interrogatory would necessitate the preparation of a compilation,
8   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
9   preparing such a compilation would be substantially the same for Plaintiff as for
10  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
11  the parties' production of non-privileged documents to date, as well as Plaintiff's
12  forthcoming productions of additional non-privileged documents, the documents from
13  which the answer to this interrogatory may be ascertained.

14

15  (a) RFA No. 49: ADMIT that, prior to August 16, 2011, YOU played a lesser role in the
16  process of developing the APPLICATION for disappearing messages than Evan Spiegel
17  and Bobby Murphy.

18  (b) Plaintiff objects to this request on the ground that it refers to a settlement communication in
19  violation of Cal. Evid. Code § 1152, 1154. Subject to and without waiving that objection,
20  Plaintiff responds that: Plaintiff's writing of the provisional patent application was done
21  pursuant to the joint venture and partnership agreement between the three partners/joint
22  venturers. Since the inception of the partnership, Plaintiff has had, and continues to have
23  an equal right to manage and conduct the affairs of the partnership. Plaintiff did not act at
24  the direction of Evan Spiegel or Bobby Murphy, because he was an equal partner/joint
25  venturer with them.

26  (c) See Response to Interrogatory No. 12.1.

27  (d) A response to this interrogatory would necessitate the preparation of a compilation,
28  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

1   preparing such a compilation would be substantially the same for Plaintiff as for

2   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

3   the parties' production of non-privileged documents to date, as well as Plaintiff's

4   forthcoming productions of additional non-privileged documents, the documents from

5   which the answer to this interrogatory may be ascertained.

6

7   (a) RFA No. 50: ADMIT that YOU played a lesser role in the process of developing the

8       APPLICATION for disappearing messages than Evan Spiegel and Bobby Murphy.

9   (b) Plaintiff objects to this request on the ground that it refers to a settlement communication in

10      violation of Cal. Evid. Code § 1152, 1154. Subject to and without waiving that objection,

11      Plaintiff responds that: Plaintiff did not play a lesser role in the process of developing the

12      application for disappearing messages. Plaintiff's role as Chief Marketing Officer and

13      co-designer of the application, co-inventor of the application's technology, and originator

14      of the concept of the application does not constitute a "lesser role" than either Spiegel or

15      Murphy. After August 2011, Spiegel and Murphy wrongfully prevented Plaintiff from

16      participating in the partnership/joint venture, including in any further development of the

17      application.

18  (c) See Response to Interrogatory No. 12.1.

19  (d) A response to this interrogatory would necessitate the preparation of a compilation,

20      abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

21      preparing such a compilation would be substantially the same for Plaintiff as for

22      Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

23      the parties' production of non-privileged documents to date, as well as Plaintiff's

24      forthcoming productions of additional non-privileged documents, the documents from

25      which the answer to this interrogatory may be ascertained.

26

27  (a) RFA No. 51: ADMIT that, as of May 2012, YOU were willing to accept a significantly

28      less portion of equity than either Evan Spiegel or Bobby Murphy.

- 49 -

1    (b) Plaintiff objects to this request on the ground that it refers to a settlement communication in

2        violation of Cal. Evid. Code § 1152, 1154.

3    (c) n/a.

4    (d) n/a.

5

6    (a) RFA No. 52: ADMIT that, in August 2011, YOU asked to receive a 20% equity interest in

7        the company that owned the APPLICATION for disappearing messages.

8    (b) Plaintiff did not "ask to receive" a 20% equity interest in the company that owned the

9        application for disappearing messages in August 2011.

10   (c) See Response to Interrogatory No. 12.1.

11   (d) A response to this interrogatory would necessitate the preparation of a compilation,

12       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

13       preparing such a compilation would be substantially the same for Plaintiff as for

14       Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

15       the parties' production of non-privileged documents to date, as well as Plaintiff's

16       forthcoming productions of additional non-privileged documents, the documents from

17       which the answer to this interrogatory may be ascertained.

18

19   (a) RFA No. 53: ADMIT that, as of August 16, 2011, litigation RELATED TO YOUR claim

20       of an ALLEGED PARTNERSHIP was likely to occur.

21   (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure

22       by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to

23       the extent the Request refers to settlement communications protected from disclosure

24       pursuant to California Evidence Code section 1152(a) and 1154. Subject to the

25       aforementioned objections, Plaintiff responds that he cannot admit or deny this request. A

26       reasonable inquiry concerning the matter in the particular request has been made to obtain

27       sufficient information and the information known or readily obtainable is insufficient to

28       enable Plaintiff to admit the matter.

- 50 -

1    (c) See Response to Interrogatory No. 12.1.

2    (d) A response to this interrogatory would necessitate the preparation of a compilation,

3       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

4       preparing such a compilation would be substantially the same for Plaintiff as for

5       Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

6       the parties' production of non-privileged documents to date, as well as Plaintiff's

7       forthcoming productions of additional non-privileged documents, the documents from

8       which the answer to this interrogatory may be ascertained.

9

10   (a) RFA No. 54: ADMIT that, as of August 16, 2011, YOU had a duty to preserve evidence

11      relating to YOUR claim of an ALLEGED PARTNERSHIP.

12   (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure

13      by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to

14      the extent the Request refers to settlement communications protected from disclosure

15      pursuant to California Evidence Code section 1152(a) and 1154. Lastly, Plaintiff objects

16      because the request does not entail the "application of the law to fact," but is rather, a

17      purely legal question. Subject to the aforementioned objections, Plaintiff responds that he

18      cannot admit or deny this request. A reasonable inquiry concerning the matter in the

19      particular request has been made to obtain sufficient information and the information

20      known or readily obtainable is insufficient to enable Plaintiff to admit the matter.

21   (c) See Response to Interrogatory No. 12.1.

22   (d) A response to this interrogatory would necessitate the preparation of a compilation,

23      abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

24      preparing such a compilation would be substantially the same for Plaintiff as for

25      Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

26      the parties' production of non-privileged documents to date, as well as Plaintiff's

27      forthcoming productions of additional non-privileged documents, the documents from

28      which the answer to this interrogatory may be ascertained.

- 51 -

1

2   (a) RFA No. 55: ADMIT that, as of May 8, 2012, litigation RELATED TO YOUR claim of an

3   ALLEGED PARTNERSHIP was likely to occur.

4   (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure

5   by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to

6   the extent the Request refers to settlement communications protected from disclosure

7   pursuant to California Evidence Code section 1152(a) and 1154. Subject to the

8   aforementioned objections, Plaintiff responds that he cannot admit or deny this request. A

9   reasonable inquiry concerning the matter in the particular request has been made to obtain

10   sufficient information and the information known or readily obtainable is insufficient to

11   enable Plaintiff to admit the matter.

12   (c) See Response to Interrogatory No. 12.1.

13   (d) A response to this interrogatory would necessitate the preparation of a compilation,

14   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

15   preparing such a compilation would be substantially the same for Plaintiff as for

16   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

17   the parties' production of non-privileged documents to date, as well as Plaintiff's

18   forthcoming productions of additional non-privileged documents, the documents from

19   which the answer to this interrogatory may be ascertained.

20

21   (a) RFA No. 56: ADMIT that, as of May 8, 2012, YOU had a duty to preserve evidence

22   relating to YOUR claim of an ALLEGED PARTNERSHIP.

23   (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure

24   by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to

25   the extent the Request refers to settlement communications protected from disclosure

26   pursuant to California Evidence Code section 1152(a) and 1154. Lastly, Plaintiff objects

27   because the request does not entail the "application of the law to fact," but is rather, a

28   purely legal question. Subject to the aforementioned objections, Plaintiff responds that he

- 52 -

1  cannot admit or deny this request. A reasonable inquiry concerning the matter in the

2  particular request has been made to obtain sufficient information and the information

3  known or readily obtainable is insufficient to enable Plaintiff to admit the matter.

4  (c) See Response to Interrogatory No. 12.1.

5  (d) A response to this interrogatory would necessitate the preparation of a compilation,

6  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

7  preparing such a compilation would be substantially the same for Plaintiff as for

8  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

9  the parties' production of non-privileged documents to date, as well as Plaintiff's

10  forthcoming productions of additional non-privileged documents, the documents from

11  which the answer to this interrogatory may be ascertained.

12

13  (a) RFA No. 57: ADMIT that, as of June 30, 2012, litigation RELATED TO YOUR claim of

14  an ALLEGED PARTNERSHIP was likely to occur.

15  (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure

16  by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to

17  the extent the Request refers to settlement communications protected from disclosure

18  pursuant to California Evidence Code section 1152(a) and 1154. Subject to the

19  aforementioned objections, Plaintiff responds that he cannot admit or deny this request. A

20  reasonable inquiry concerning the matter in the particular request has been made to obtain

21  sufficient information and the information known or readily obtainable is insufficient to

22  enable Plaintiff to admit the matter.

23  (c) See Response to Interrogatory No. 12.1.

24  (d) A response to this interrogatory would necessitate the preparation of a compilation,

25  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

26  preparing such a compilation would be substantially the same for Plaintiff as for

27  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

28  the parties' production of non-privileged documents to date, as well as Plaintiff's

- 53 -

1    forthcoming productions of additional non-privileged documents, the documents from

2    which the answer to this interrogatory may be ascertained.

3

4    (a) RFA No. 58: ADMIT that, as of June 30 2012, YOU had a duty to preserve evidence

5    relating to YOUR claim of an ALLEGED PARTNERSHIP.

6    (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure

7    by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to

8    the extent the Request refers to settlement communications protected from disclosure

9    pursuant to California Evidence Code section 1152(a) and 1154. Lastly, Plaintiff objects

10   because the request does not entail the "application of the law to fact," but is rather, a

11   purely legal question. Subject to the aforementioned objections, Plaintiff responds that he

12   cannot admit or deny this request. A reasonable inquiry concerning the matter in the

13   particular request has been made to obtain sufficient information and the information

14   known or readily obtainable is insufficient to enable Plaintiff to admit the matter.

15   (c) See Response to Interrogatory No. 12.1.

16   (d) A response to this interrogatory would necessitate the preparation of a compilation,

17   abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

18   preparing such a compilation would be substantially the same for Plaintiff as for

19   Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

20   the parties' production of non-privileged documents to date, as well as Plaintiff's

21   forthcoming productions of additional non-privileged documents, the documents from

22   which the answer to this interrogatory may be ascertained.

23

24   (a) RFA No. 59: ADMIT that, as of January 1, 2013, litigation RELATED TO YOUR claim of

25   an ALLEGED PARTNERSHIP was likely to occur.

26   (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure

27   by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to

28   the extent the Request refers to settlement communications protected from disclosure

- 54 -

1  pursuant to California Evidence Code section 1152(a) and 1154. Subject to the
2  aforementioned objections, Plaintiff responds that he cannot admit or deny this request. A
3  reasonable inquiry concerning the matter in the particular request has been made to obtain
4  sufficient information and the information known or readily obtainable is insufficient to
5  enable Plaintiff to admit the matter.

6  (c) See Response to Interrogatory No. 12.1.

7  (d) A response to this interrogatory would necessitate the preparation of a compilation,
8  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
9  preparing such a compilation would be substantially the same for Plaintiff as for
10  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
11  the parties' production of non-privileged documents to date, as well as Plaintiff's
12  forthcoming productions of additional non-privileged documents, the documents from
13  which the answer to this interrogatory may be ascertained.

14

15  (a) RFA No. 60: ADMIT that, as of January 1, 2013, YOU had a duty to preserve evidence
16  relating to YOUR claim of an ALLEGED PARTNERSHIP.

17  (b) Plaintiff objects to this request to the extent it seeks information protected from disclosure
18  by the work product doctrine and/or attorney-client privilege. Plaintiff further objects to
19  the extent the Request refers to settlement communications protected from disclosure
20  pursuant to California Evidence Code section 1152(a) and 1154. Lastly, Plaintiff objects
21  because the request does not entail the "application of the law to fact," but is rather, a
22  purely legal question. Subject to the aforementioned objections, Plaintiff responds that he
23  cannot admit or deny this request. A reasonable inquiry concerning the matter in the
24  particular request has been made to obtain sufficient information and the information
25  known or readily obtainable is insufficient to enable Plaintiff to admit the matter.

26  (c) See Response to Interrogatory No. 12.1.

27

28

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 61: ADMIT that YOU did not tell any PERSON (excluding Evan Spiegel and Bobby Murphy) that YOU were partners with Evan Spiegel or Bobby Murphy prior to August 16, 2011.

(b) Plaintiff frequently referred to Evan Spiegel and Robert Murphy as his "partners." These statements were made orally to numerous friends, family members and classmates in the spring and summer of 2011.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 62: ADMIT that, as of the filing of YOUR COMPLAINT, YOU had never provided Evan Spiegel or Bobby Murphy with an exact copy of the provisional patent application for "Timed, non-permanent picture messages for smart phone devices" that YOU submitted to the United States Patent and Trademark Office.

1    (b) In an email dated August 11, 2011, Plaintiff provided Spiegel and/or Murphy with parts of

2        the provisional patent application.

3    (c) See Response to Interrogatory No. 12.1.

4    (d) A response to this interrogatory would necessitate the preparation of a compilation,

5        abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

6        preparing such a compilation would be substantially the same for Plaintiff as for

7        Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

8        the parties' production of non-privileged documents to date, as well as Plaintiff's

9        forthcoming productions of additional non-privileged documents, the documents from

10      which the answer to this interrogatory may be ascertained.

12   (a) RFA No. 63: ADMIT that Evan Spiegel instructed YOU to list Bobby Murphy as the sole

13      inventor on the provisional patent application for "Timed, non-permanent picture

14      messages for smart phone devices" that YOU submitted to the United States Patent and

15      Trademark Office.

16   (b) Spiegel never gave Plaintiff the purported instruction, nor did Spiegel have any authority to

17      do so.

18   (c) See Response to Interrogatory No. 12.1.

19   (d) A response to this interrogatory would necessitate the preparation of a compilation,

20      abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

21      preparing such a compilation would be substantially the same for Plaintiff as for

22      Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

23      the parties' production of non-privileged documents to date, as well as Plaintiff's

24      forthcoming productions of additional non-privileged documents, the documents from

25      which the answer to this interrogatory may be ascertained.

27   (a) RFA No. 64: ADMIT that Evan Spiegel never interfered with YOUR possession of any of

28      YOUR tangible personal property.

- 57 -

(b) Assuming that the phrase "tangible personal property" excludes Plaintiff's ownership interest in the partnership or Snapchat, Inc., Plaintiff responds as follows: Spiegel and/or Murphy interfered with Plaintiff's possession of his tangible personal property, including but not limited to, by denying Plaintiff access to the documents and files stored on the partnership's servers. Spiegel interfered with Plaintiff's access to tangible property left at Spiegel's home during the summer of 2011.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 65: ADMIT that Bobby Murphy never interfered with YOUR possession of any of YOUR tangible personal property.

(b) Assuming that the phrase "tangible personal property" excludes Plaintiff's ownership interest in the partnership or Snapchat, Inc., Plaintiff responds as follows: Spiegel and/or Murphy interfered with Plaintiff's possession of his tangible personal property, including but not limited to, by denying Plaintiff access to the documents and files stored on the partnership's servers.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's

- 58 -

1    forthcoming productions of additional non-privileged documents, the documents from

2    which the answer to this interrogatory may be ascertained.

3

4    (a) RFA No. 66: ADMIT that Toyopa Group, LLC never interfered with YOUR possession of

5        any of YOUR tangible personal property.

6    (b) Assuming that the phrase "tangible personal property" excludes Plaintiff's ownership

7        interest in the partnership or Snapchat, Inc., Plaintiff responds as follows:  Spiegel and/or

8        Murphy, either as individuals or as agents of Toyopa Group, LLC, interfered with

9        Plaintiff's possession of his tangible personal property, including but not limited to, by

10       denying Plaintiff access to the documents and files stored on the partnership's servers.

11   (c) See Response to Interrogatory No. 12.1.

12   (d) A response to this interrogatory would necessitate the preparation of a compilation,

13       abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

14       preparing such a compilation would be substantially the same for Plaintiff as for

15       Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

16       the parties' production of non-privileged documents to date, as well as Plaintiff's

17       forthcoming productions of additional non-privileged documents, the documents from

18       which the answer to this interrogatory may be ascertained.

19

20   (a) RFA No. 67: ADMIT that Snapchat, Inc. never interfered with YOUR possession of any of

21       YOUR tangible personal property.

22   (b) Assuming that the phrase "tangible personal property" excludes Plaintiff's ownership

23       interest in the partnership or Snapchat, Inc., Plaintiff responds as follows:  Spiegel and/or

24       Murphy, either as individuals or as agents of Snapchat, Inc., interfered with Plaintiff's

25       possession of his tangible personal property, including but not limited to, by denying

26       Plaintiff access to the documents and files stored on the partnership's servers.

27   (c) See Response to Interrogatory No. 12.1.

28

- 59 -

PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FORM INTERROGATORIES, SET ONE

EXHIBIT 3
PAGE 138

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 68: ADMIT that YOU were not the first PERSON to have the idea for an APPLICATION for disappearing messages.

(b) A reasonable inquiry concerning the matter in the particular request has been made to obtain sufficient information and the information known or readily obtainable is insufficient to enable Plaintiff to admit the matter.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 69: ADMIT that YOU were dissociated from the ALLEGED PARTNERSHIP on or before August 30, 2011.

(b) Plaintiff was improperly and unlawfully removed from the partnership/joint venture by Spiegel and Murphy in August 2011.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 70: ADMIT that the ALLEGED PARTNERSHIP had dissolved on or before August 30, 2011.

(b) The partnership between Plaintiff, Spiegel and Murphy was never dissolved; rather, the partnership continued and is now known as Snapchat, Inc.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

(a) RFA No. 71: ADMIT that the ALLEGED PARTNERSHIP had dissolved on or before May 8, 2012.

(b) The partnership between Plaintiff, Spiegel and Murphy was never dissolved; rather, the partnership continued and is now known as Snapchat, Inc.

(c) See Response to Interrogatory No. 12.1.

1  (d) A response to this interrogatory would necessitate the preparation of a compilation,
2  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
3  preparing such a compilation would be substantially the same for Plaintiff as for
4  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
5  the parties' production of non-privileged documents to date, as well as Plaintiff's
6  forthcoming productions of additional non-privileged documents, the documents from
7  which the answer to this interrogatory may be ascertained.

8

9  (a) RFA No. 72: ADMIT that, as of August 13, 2011, YOU had never discussed with Evan
10  Spiegel or Bobby Murphy the submission of a second provisional patent application.
11  (b) Plaintiff and Spiegel discussed the possibility of filing a second provisional patent
12  application prior to August 13, 2011.
13  (c) See Response to Interrogatory No. 12.1.
14  (d) A response to this interrogatory would necessitate the preparation of a compilation,
15  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
16  preparing such a compilation would be substantially the same for Plaintiff as for
17  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
18  the parties' production of non-privileged documents to date, as well as Plaintiff's
19  forthcoming productions of additional non-privileged documents, the documents from
20  which the answer to this interrogatory may be ascertained.

21

22  (a) RFA No. 73: ADMIT that, prior to May 1, 2011, YOU had not entered into any partnership
23  or joint venture agreement with Bobby Murphy.
24  (b) On or about late March or early April 2011, Plaintiff, Spiegel and Murphy all agreed to
25  form a partnership/joint venture to develop an application for disappearing messages.
26  (c) See Response to Interrogatory No. 12.1.
27  (d) A response to this interrogatory would necessitate the preparation of a compilation,
28  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

- 62 -

1  preparing such a compilation would be substantially the same for Plaintiff as for
2  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
3  the parties' production of non-privileged documents to date, as well as Plaintiff's
4  forthcoming productions of additional non-privileged documents, the documents from
5  which the answer to this interrogatory may be ascertained.

6

7  (a) RFA No. 74: ADMIT that YOU have never paid any debts or obligations incurred by
8  Toyopa Group, LLC.

9  (b) Plaintiff incurred various expenses on behalf of the joint venture and partnership now
10  known as Snapchat, Inc. fka Toyopa Group LLC. For example, Plaintiff contributed funds
11  to Toyopa Group's airfare and transportation expenses.

12  (c) See Response to Interrogatory No. 12.1.

13  (d) A response to this interrogatory would necessitate the preparation of a compilation,
14  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
15  preparing such a compilation would be substantially the same for Plaintiff as for
16  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
17  the parties' production of non-privileged documents to date, as well as Plaintiff's
18  forthcoming productions of additional non-privileged documents, the documents from
19  which the answer to this interrogatory may be ascertained.

20

21  (a) RFA No. 75: ADMIT that YOU are not liable for the debts and obligations incurred by
22  Toyopa Group, LLC.

23  (b) Plaintiff objects to this request as calling for a legal conclusion. Subject to this objection,
24  Plaintiff responds that to the extent he is legally obligated to assume any liability incurred
25  on behalf of the partnership as a partner/joint venturer, Plaintiff admits that he is equally
26  liable as Spiegel and Murphy for the debts and obligations incurred by the partnership,
27  including by Toyopa Group, LLC.

28  (c) See Response to Interrogatory No. 12.1.

- 63 -

1  (d) A response to this interrogatory would necessitate the preparation of a compilation,

2  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

3  preparing such a compilation would be substantially the same for Plaintiff as for

4  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

5  the parties' production of non-privileged documents to date, as well as Plaintiff's

6  forthcoming productions of additional non-privileged documents, the documents from

7  which the answer to this interrogatory may be ascertained.

8

9  (a) RFA No. 76: ADMIT that YOU have never paid any debts or obligations incurred by

10  Snapchat, Inc.

11  (b) Plaintiff incurred various expenses on behalf of the joint venture and partnership now

12  known as Snapchat, Inc. fka Toyopa Group LLC. For example, Plaintiff contributed funds

13  to Toyopa Group's airfare and transportation expenses.

14  (c) See Response to Interrogatory No. 12.1.

15  (d) A response to this interrogatory would necessitate the preparation of a compilation,

16  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

17  preparing such a compilation would be substantially the same for Plaintiff as for

18  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

19  the parties' production of non-privileged documents to date, as well as Plaintiff's

20  forthcoming productions of additional non-privileged documents, the documents from

21  which the answer to this interrogatory may be ascertained.

22

23  (a) RFA No. 77: ADMIT that YOU are not liable for the debts and obligations incurred by

24  Snapchat, Inc.

25  (b) Plaintiff objects to this request as calling for a legal conclusion. Subject to this objection,

26  Plaintiff responds that to the extent he is legally obligated to assume any liability incurred

27  on behalf of the partnership as a partner/joint venturer, Plaintiff admits that he is equally

28

- 64 -

1  liable as Spiegel and Murphy for the debts and obligations incurred by the partnership,
2  including by Snapchat, Inc.

3  (c) See Response to Interrogatory No. 12.1.

4  (d) A response to this interrogatory would necessitate the preparation of a compilation,
5  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
6  preparing such a compilation would be substantially the same for Plaintiff as for
7  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
8  the parties' production of non-privileged documents to date, as well as Plaintiff's
9  forthcoming productions of additional non-privileged documents, the documents from
10  which the answer to this interrogatory may be ascertained.

11

12  (a) RFA No. 78: ADMIT that YOU have never paid any debts or obligations incurred by the
13  ALLEGED PARTNERSHIP.

14  (b) Plaintiff did pay debts and obligations of the alleged partnership, including
15  travel/transportation fees and a fee for filing a patent application.

16  (c) See Response to Interrogatory No. 12.1.

17  (d) A response to this interrogatory would necessitate the preparation of a compilation,
18  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of
19  preparing such a compilation would be substantially the same for Plaintiff as for
20  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to
21  the parties' production of non-privileged documents to date, as well as Plaintiff's
22  forthcoming productions of additional non-privileged documents, the documents from
23  which the answer to this interrogatory may be ascertained.

24

25  (a) RFA No. 79: ADMIT that YOU are not liable for the debts and obligations incurred by the
26  ALLEGED PARTNERSHIP.

27

28

- 65 -

(b) Plaintiff objects to this request as calling for a legal conclusion.  Subject to this objection, Plaintiff responds that to the extent he is legally obligated to assume any liability incurred on behalf of the partnership as a partner/joint venturer, Plaintiff admits that he is equally liable as Spiegel and Murphy for the debts and obligations incurred by the partnership.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.


(a) RFA No. 80: ADMIT that YOU believed the APPLICATION should be marketed to consumers as an application to be used for "sexting."

(b) Plaintiff, Spiegel and Murphy all believed the application could be marketed to consumers for a variety of uses, including "sexting."  However, after further discussion, they all agreed to market the application for a variety of non-sexting uses.

(c) See Response to Interrogatory No. 12.1.

(d) A response to this interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary of Plaintiff's documents, and the burden or expense of preparing such a compilation would be substantially the same for Plaintiff as for Defendant.  Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to the parties' production of non-privileged documents to date, as well as Plaintiff's forthcoming productions of additional non-privileged documents, the documents from which the answer to this interrogatory may be ascertained.

- 66 -

1  (a) RFA No. 81: ADMIT that Evan Spiegel paid for a storage unit in which YOU stored

2  YOUR possessions prior to moving them to John Spiegel's residence in Los Angeles.

3  (b) After making a reasonable inquiry concerning the matter in this particular request, the

4  information known or readily obtainable is insufficient to enable Plaintiff to admit or deny

5  the matter. Plaintiff does not know whether Evan Spiegel or Evan Spiegel's father paid for

6  the storage unit. Evan Spiegel allowed Plaintiff to use his storage unit because Plaintiff

7  had previously allowed Evan Spiegel to use Plaintiff's storage unit the previous summer.

8  (c) See Response to Interrogatory No. 12.1.

9  (d) A response to this interrogatory would necessitate the preparation of a compilation,

10  abstract, audit, or summary of Plaintiff's documents, and the burden or expense of

11  preparing such a compilation would be substantially the same for Plaintiff as for

12  Defendant. Accordingly, pursuant to CCP section 2023.230, Plaintiff directs Defendant to

13  the parties' production of non-privileged documents to date, as well as Plaintiff's

14  forthcoming productions of additional non-privileged documents, the documents from

15  which the answer to this interrogatory may be ascertained.

16

17  (a) RFA No. 84: ADMIT that, as of March 1, 2011, YOU had applied for a job or internship

18  for the summer of 2011.

19  (b) After making a reasonable inquiry concerning the matter in this particular request, the

20  information known or readily obtainable is insufficient to enable Plaintiff to admit or deny

21  the matter. Plaintiff cannot recall whether he had applied for a job or internship for the

22  summer of 2011.

23  (c) N/A.

24  (d) N/A.

25

26  **INTERROGATORY NO. 50.1:**

27  For each agreement alleged in the pleadings:

28

- 67 -

1    (a) identify each DOCUMENT that is part of the agreement and for each state

2  the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;

3    (b) state each part of the agreement not in writing, the name, ADDRESS, and

4  telephone number of each PERSON agreeing to that provision, and the date that part of the

5  agreement was made;

6    (c) identify all DOCUMENTS that evidence any part of the agreement not in

7  writing and for each state the name, ADDRESS, and telephone number of each PERSON

8  who has the DOCUMENT;

9    (d) identify all DOCUMENTS that are part of any modification to the

10  agreement, and for each state the name, ADDRESS, and telephone number of each PERSON

11  who has the DOCUMENT;

12    (e) state each modification not in writing, the date, and the name, ADDRESS,

13  and telephone number of each PERSON agreeing to the modification, and the date the

14  modification was made;

15    (f) identify all DOCUMENTS that evidence any modification of the

16  agreement not in writing and for each state the name, ADDRESS, and telephone number of

17  each PERSON who has the DOCUMENT.

18

19  **RESPONSE TO INTERROGATORY NO. 50.1:**

20    The joint venture and partnership agreements alleged in the pleadings were oral between

21  Plaintiff, Evan Spiegel and Bobby Murphy.  The three may be contacted through their respective

22  counsel of record.

23

24  **INTERROGATORY NO. 50.2:**

25    Was there a breach of any agreement alleged in the pleadings? If so, for each breach

26  describe and give the date of every act or omission that you claim is the breach of the

27  agreement.

28

- 68 -

1 **RESPONSE TO INTERROGATORY NO. 50.2:**

2       Plaintiff objects that this request is unduly burdensome, oppressive and harassing.

3 Plaintiff objects that this request is premature as discovery is still ongoing and Plaintiff

4 therefore reserves the right to supplement this response. Subject to and notwithstanding this

5 objection, Plaintiff responds as follows:

6       Yes. The partnership agreement was breached on or about August 2011 when Evan

7 Spiegel and Bobby Murphy improperly shut Plaintiff out of the partnership/joint venture entity

8 now known as Snapchat, Inc. As stated in Plaintiff's Complaint, Defendants did so by changing

9 the passwords for the partnership's/joint venture's computer services and accounts to prevent

10 Plaintiff from doing any further work on the partnership/joint venture. Defendants also cut off all

11 communication with Plaintiff and refused to discuss the partnership/joint venture with him.

12

13 **INTERROGATORY NO. 50.3:**

14       Was performance of any agreement alleged in the pleadings excused? If so, identify

15 each agreement excused and state why performance was excused.

16

17 **RESPONSE TO INTERROGATORY NO. 50.3:**

18       Plaintiff's performance of the partnership/joint venture agreement alleged in his Complaint

19 were excused by Defendants' acts of preventing Plaintiff from performing.

20

21 **INTERROGATORY NO. 50.4:**

22       Was any agreement alleged in the pleadings terminated by mutual agreement, release,

23 accord and satisfaction, or novation? If so, identify each agreement terminated, the date of

24 termination, and the basis of the termination.

25

26 **RESPONSE TO INTERROGATORY NO. 50.4:**

27       No.

28

**INTERROGATORY NO. 50.5:**

Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

**RESPONSE TO INTERROGATORY NO. 50.5:**

No.

**INTERROGATORY NO. 50.6:**

Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**RESPONSE TO INTERROGATORY NO. 50.6:**

No.

DATED:  September 23, 2013                LEE TRAN LIANG & WANG LLP

By: _____
    K. Luan Tran
    James M. Lee
    Cyrus Khojandpour
    Lisa J. Chin

    RAY A. MANDLEKAR, ATTORNEY AT LAW
    Ray A. Mandlekar

    Attorneys for Plaintiff
    Frank Reginald Brown, IV

- 70 -

1                        **VERIFICATION**

2    I, Frank Reginald Brown IV, declare as follows:

3         I am a plaintiff in the matter *Brown v. Snapchat et al.*, Case No. BC501483, Los

4    Angeles Superior Court. I am familiar with the contents of the foregoing document titled

5    **PLAINTIFF REGINALD BROWN IV'S RESPONSES TO DEFENDANT**

6    **SNAPCHAT, INC.'S FORM INTERROGATORIES, SET ONE.** The information

7    supplied therein is based on my own personal knowledge and/or has been supplied by

8    attorneys, compiled from available documents, or obtained from others.  To the extent the

9    information in the document is within my personal knowledge, I certify that such

10   information is true.  As to all other information in the document, I am informed and believe

11   that it is true.

12        I certify under penalty of perjury under the laws of the State of California that the

13   foregoing is true and correct.

14        Executed on September 23, 2013, at Durham, North Carolina.

15

16    Frank Reginald Brown IV

17     TYPE OR PRINT NAME                       SIGNATURE

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 3
PAGE 150