QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Bruce E. Van Dalsem (Bar No. 124128)
  (brucevandalsem@quinnemanuel.com)
  B. Dylan Proctor (Bar No. 219354)
  (dylanproctor@quinnemanuel.com)
  Joseph C. Sarles (Bar No. 254750)
  (josephsarles@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendants Snapchat, Inc.,
Toyopa Group, LLC, Evan Thomas
Spiegel, and Robert Cornelius Murphy

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FRANK REGINALD BROWN IV, an individual,<br><br>            Plaintiff,<br><br>    vs.<br><br>SNAPCHAT, INC., a Delaware corporation; TOYOPA GROUP, LLC, a California Limited Liability Company; EVAN THOMAS SPIEGEL, an individual; ROBERT CORNELIUS MURPHY, an individual; LIGHTSPEED VENTURE PARTNERS IX, L.P., a California limited partnership; BENCHMARK CAPITAL PARTNERS VII, L.P., a California limited partnership; INSTITUTIONAL VENTURE PARTNERS XIV, L.P., a Delaware limited partnership; GENERAL CATALYST GROUP VI, L.P., a Delaware limited partnership; GC&H INVESTMENTS, LLC, a California limited liability company; SV ANGEL IV, L.P., a Delaware limited partnership; SF GROWTH FUND, an unknown entity; THL A17 Limited, an unknown entity; and DOES 1 through 25 inclusive,<br>            Defendants. | CASE NO. 2:13-CV-8569 RGK (SSx)<br><br>Judge:   Hon. Suzanne H. Segal<br>Courtroom 23<br><br>**DISCOVERY MATTER**<br><br>**APPLICATION OF DEFENDANTS SNAPCHAT, INC., EVAN THOMAS SPIEGEL, AND ROBERT CORNELIUS MURPHY FOR:**<br><br>**(1) TEMPORARY RESTRAINING ORDER;**<br><br>**(2) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION;**<br><br>**(3) ORDER TO SHOW CAUSE RE DISCOVERY, CONTEMPT, AND SANCTIONS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>([Proposed] Temporary Restraining Order, [Proposed] Order to Show Cause, and Declaration of Bruce E. Van Dalsem filed concurrently) |

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Pursuant to Rules 37 and 65 of the Federal Rules of Civil Procedure and this Court's inherent power, defendants Snapchat, Inc., Evan Spiegel, and Robert Murphy (collectively, "Snapchat") respectfully seek (1) a temporary restraining order and order to show cause for issuance of a preliminary injunction to prevent plaintiff and his counsel from further violating the Protective Order entered in this case by wrongfully disclosing Snapchat's confidential information, and (2) an order to show cause why plaintiff and his counsel should not be held in contempt and sanctioned for Protective Order violations they have committed.

On or about November 21, 2013, the news publication Business Insider (www.businessinsider.com) ("Business Insider") released what it described as "leaked videos" of depositions in this case that Snapchat had designated as "Confidential" under the Protective Order.   On November 25, 2013, Business Insider released "more never-before-seen clips from the depositions."   Snapchat immediately demanded that plaintiff disclose the source of these "leaks."   On December 2, 2013, after repeated inquiries, plaintiff's counsel finally admitted that they had knowingly provided members of the media with deposition testimony that Snapchat had designated as "Confidential" under the Protective Order entered in this case.   (The Protective Order was entered by the Superior Court of the County of Los Angeles prior to defendants' removal of this action to this Court, and is now enforceable as an order of this Court pursuant to 28 U.S.C. § 1450.)   Plaintiff and his counsel boldly claimed they had a right to make such disclosures—despite the contrary terms of the Protective Order—because they unilaterally (and wrongly) determined that Snapchat had waived its rights under the Protective Order.   Plaintiff and his counsel also refused to cease further violations of the Protective Order, stating that they reserve the right to disclose Snapchat's confidential documents and information to the media—at any time and without any warning or meet and confer—

1  whenever they unilaterally determine that Snapchat has, in their erroneous view,
2  waived its rights under that Order.

3      As established in the accompanying memorandum of points and authorities,
4  supporting declaration and exhibits, Snapchat will suffer great or irreparable injury if
5  plaintiff is permitted to disclose Snapchat's confidential information to the public.   A
6  temporary restraining order is therefore necessary.   Further, an order to show cause
7  why Plaintiff and his counsel should not be held in contempt and sanctioned should
8  also issue.   Accordingly, pursuant to Rules 37 and 65 of the *Federal Rules of Civil*
9  *Procedure*, Local Rules 7-19 and 65-1, 28 U.S.C. § 1450, and this Court's inherent
10  powers, Snapchat seeks the following orders:

11      (1)    A temporary restraining order ("TRO") enjoining plaintiff and his
12  counsel and their agents, or any other person acting on their behalf or in concert with
13  them, from any further disclosures of information designated as "Confidential" or
14  "Highly Confidential—Attorney's Eyes Only" under the Protective Order except as
15  permitted by the Protective Order, including specifically that all such persons are
16  enjoined from disclosing such information on the purported basis that plaintiff
17  unilaterally determines that Snapchat has waived its rights under that Order;

18      (2)    An order to show cause ("OSC") why the TRO should not be entered as
19  a preliminary injunction;

20      (3)    An OSC why Snapchat should not be permitted to take immediate
21  discovery into the Protective Order violations, including through document demands,
22  a deposition of the plaintiff, and a Rule 30(b)(6) deposition of his counsel; and

23      (4)    An OSC why plaintiff and his counsel should not be held in contempt
24  and sanctioned for their violations of the Protective Order, including at a minimum by

25
26
27
28

1  imposing monetary sanctions for the fees and costs incurred by Snapchat in

2  addressing this violation of the Protective Order.[1]

3       The requested relief is necessary to prevent great or irreparable injury to

4  Snapchat.   Snapchat has produced substantial amounts of commercially sensitive and

5  private information in this case, including among other things highly confidential

6  financial and investment information related to Snapchat's business, sensitive

7  information regarding Snapchat's business plans, and private, personal

8  communications of individual third parties subject to rights of privacy under the

9  California Constitution.   Plaintiff and his counsel purport to reserve the right to

10  disclose any and all such information to the public at any time.   Indeed, plaintiff

11  has apparently scheduled imminent "exclusive" interviews with additional media

12  outlets to discuss this case.   In the absence of the relief sought, it is highly likely that

13  plaintiff and his counsel will commit additional violations of the Protective Order.

14  *See* Declaration of Bruce E. Van Dalsem ("Van Dalsem Decl.") submitted herewith.

15  **<u>Compliance with Local Rule 7-19</u>**

16       Counsel for Snapchat (Bruce Van Dalsem and Joseph Sarles) spoke with

17  counsel for plaintiff (Luan Tran) via teleconference on December 2, 2013 and

18  provided plaintiff's counsel with notice of this application and the substance of the

19  arguments raised herein.   Van Dalsem Decl., ¶ 2.   Mr. Van Dalsem asked Mr. Tran

20  if plaintiff and his counsel would agree to refrain from making additional disclosures

21  of information designated under the Protective Order, and Mr. Tran stated he and his

22  client would not so agree.   Contact information for plaintiff's counsel is as follows:

23       Luan K. Tran (luan.tran@ltlw.com)
   Lee Tran Liang & Wang LLP
24       601 S. Figueroa St., Suite 3900
25       Los Angeles, CA 90017
   213-612-8900
26

27  ---

[1]  Snapchat reserves its rights to seek other and further relief, including as to

28  sanctions, as the facts regarding Plaintiff's violations develop.

1    This application is based on the accompanying memorandum of points and

2  authorities, the declaration of Bruce E. Van Dalsem, such matters which this Court

3  may judicially notice, and such evidence and argument as may be presented at the

4  hearing.

5  DATED:   December 6, 2013          QUINN EMANUEL URQUHART &

6                                     SULLIVAN, LLP

7

8                              By:

9                                     Bruce E. Van Dalsem

10                                    Counsel for Snapchat, Inc., Evan Spiegel,
                                      Robert Murphy, and Toyopa Group LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ..................................................................... 3

ARGUMENT ..................................................................................... 9

I.  SNAPCHAT HAS SATISFIED THE REQUIREMENTS FOR A TRO AND AN OSC RE PRELIMINARY INJUNCTION ......................................... 9

    A.  The Requirements for the Issuance of a TRO ......................... 9

    B.  Snapchat Is Highly Likely To Prevail On The Merits ........................... 10

    C.  Snapchat Has Satisfied The Other Requirements For Issuance Of A TRO And An OSC Re Issuance Of A Preliminary Injunction ........... 14

II.  THE COURT ISSUE AN OSC REGARDING DISCOVERY AND SANCTIONS ................................................................................. 15

    A.  Discovery Is Needed To Determine The Extent Of The Protective Order Violations ................................................. 15

    B.  Sanctions Are Available Under Rule 37 And Inherent Power ............... 16

CONCLUSION .................................................................................. 19

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011)............................................................... 9

*Alliance for Wild Rockies v. Cottrell,*
   622 F.3d 1045 (9th Cir. 2010)............................................................... 9

*Bank of Montreal v. Optionable, Inc.,*
   No. 09 CIV. 7557 GBD JLC, 2011 WL 6259668 (S.D.N.Y. Dec. 15, 2011) ....... 11

*Booth v. Wilson,*
   No. 96-Civ-920(RO), 1997 WL 615490   (S.D.N.Y. Oct. 6, 1997) ..................... 18

*Cal. Pharmacists Ass'n v. Maxwell-Jolly,*
   563 F.3d 847 (9th Cir. 2009)................................................................. 9

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ........................................................................... 18

*Cima v. Wellpoint Health Networks, Inc.,*
   No. 4:05-CV-4127-JPG, 2006 WL 1064054 (S.D. Ill. Apr. 20, 2006)................ 11

*In re Criminal Contempt Proceedings,*
   329 F.3d 131 (2d Cir. 2003) ................................................................ 14

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
   10 F.3d 693 (9th Cir. 1993) ................................................................ 17

*Eli   Lilly & Co. v. Gottstein,*
   617 F.3d 186 (2d Cir. 2010) ................................................................ 14

*Evon v. Law Offices of Sidney Mickell,*
   688 F.3d 1015 (9th Cir. 2012)............................................................. 18

*Facebook, Inc. v. Jeremi Fisher, No. C 09-05842 JF (PVT),*
   2009 WL 5095269 (N.D. Cal. Dec. 21, 2009) ........................................ 14

*Falstaff Brewing Corp. v. Miller Brewing Co.,*
   702 F.2d 770 (9th Cir. 1983)........................................................ 16, 17

*Fjelstad v. Am. Honda Motor Co.,*
   762 F.2d 1334 (9th Cir. 1985)............................................................. 18

*In re Google Litig.,*
   No. C 08-03172 RMW, 2011 WL 6951972 (N.D. Cal. July 8, 2011).............. 18

*Grace v. Center for Auto Safety,*
   155 F.R.D. 591 (E.D. Mich. 1994), *rev'd on other grounds*, 72 F.3d 1236
   (6th Cir. 1996) ................................................................................ 19

*Harmston v. City and County of San Francisco,*
    No. C 07-01186SI, 2007 WL 3306526 (N.D. Cal. Nov. 6, 2007) ........................ 12

*Hawaii Newspaper Agency v. Bronster,*
    103 F.3d 742 (9th Cir. 1996) ........................................................................... 14

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,*
    887 F. Supp. 1320 (N.D. Cal. 1995) ................................................................... 9

*McDonald v. Cooper Tire & Rubber Co.,*
    No. 8:01-C 2005 WL 2810707 (M.D. Fla. Oct. 27, 2005) ................................. 13

*Nevil v. Ford Motor Co.,*
    No. CV 294-015, 1999 WL 1338625 (S.D. Ga. Dec. 23, 1999) ......................... 18

*New York State Nat. Org. for Women v. Terry,*
    697 F. Supp. 1324 (S.D.N.Y. 1988) .................................................................. 18

*Pos-A-Traction, Inc. v. Kelley-Springfield Tire Co.,*
    112 F. Supp. 2d 1178 (C.D. Cal. 2000) .............................................................. 10

*Resolution Trust Corp. v. Northpark Joint Venture,*
    958 F.2d 1313 (5th Cir. 1992) ........................................................................... 10

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980) ................................................................................... 16, 17

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,*
    685 F.3d 486 (5th Cir. 2012) ............................................................................. 16

*Spallone v. United States,*
    493 U.S. 265 (1990) .......................................................................................... 17

*Telecomm. Sys., Inc. v. Mobile 365, Inc.,*
    No. CIV.A.3:06CV485, 2009 WL 5943235 (E.D. Va. Mar. 31, 2009) ............... 12

*Trenado v. Cooper Tire & Rubber Co.,*
    274 F.R.D. 598 (S.D. Tex. 2011) ....................................................................... 19

*Union Planters Bank, N.A. v. Gavel,*
    CIV.A.02-1224, 2002 WL 975675 (E.D. La. May 9, 2002) ............................... 14

*United Mine Workers of Am. v. Bagwell,*
    512 U.S. 821 (1994) ................................................................................... 16, 17

*United States v. Sumitomo Marine & Fire Ins. Co.,*
    617 F.2d 1365 ................................................................................................... 15

*United States v. United Mine Workers of America,*
    330 U.S. 258 (1947) .......................................................................................... 18

*Universal Engraving, Inc. v. Duarte,*
    519 F. Supp. 2d 1140 (D. Kan. 2007) ................................................................ 14

*Vuitton et Fils S. A. v. Carousel Handbags*,
  592 F.2d 126 (2d Cir. 1979) ............................................................ 18, 19

*Winter v. Natural Resources Defense Council*,
  555 U.S. 7, 129 S. Ct. 365 (2008) ...................................................... 9

### **Statutes/Rules**

Fed. R. Civ. P. 37 ................................................................................ 16, 17

Fed. R. Civ. P. 37(b)(2)(A) ................................................................. 16, 17

Fed. R. Civ. P. 37(b)(2)(C) ..................................................................... 17

28 U.S.C. § 1450 ................................................................................... 1, 10

### **Miscellaneous**

6 James Wm. Moore et al., *Moore's Federal Practice* § 26.108[2]
  (3d ed. 2013) ...................................................................................... 16

*APPLICATION FOR TRO AND OSC RE PROTECTIVE ORDER VIOLATIONS*

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Immediate relief is necessary to prevent plaintiff and his counsel from further disclosing Snapchat's confidential information in violation of the Protective Order entered in this case.   In late November, a media source, Business Insider, published on the Internet self-described "leaked videos" of the depositions of the individual defendants in this case.   Following repeated inquiries, on December 2, 2013, plaintiff's counsel finally admitted that they had released these videos to the press—despite knowing that Snapchat had designated them as "Confidential" under the Protective Order—apparently as part of their ongoing, wrongful effort to try this case in the press.   Also on December 2, 2013, plaintiff's counsel stated that unless Snapchat seeks judicial relief to enforce the Protective Order, they will continue to assert a unilateral right to publicly disclose, without any notice or meet and confer, literally every scrap of confidential information designated by Snapchat in this case if plaintiff, and plaintiff alone, merely ***contends*** that designation has been waived. These materials include, among other things, Snapchat's highly confidential financial and investment information, current and future business plans, and personal, private communications of both the parties and third parties, which are entitled to privacy protections under the California Constitution.

The Superior Court from which this case was removed entered the Protective Order on April 18, 2013, as adapted from the Los Angeles Superior Court Model Protective Order.   Under 28 U.S.C. § 1450, that Order was "federalized" upon removal and now has the same force and effect as an Order of this Court.   The Order provides that "Confidential Materials shall not be disclosed to anyone except as provided in this Protective Order" and that such materials "shall be used by the persons receiving them only for the purposes of preparing for, conducting, participating in the conduct of, and/or prosecuting and/or defending the Proceeding, and not for any business or other purpose whatsoever."   The law is clear that

-1-

intentional violations of a Protective Order, such as here, are punishable by contempt and other significant sanctions.

Asked to explain their brazen violation of the Protective Order, plaintiff's counsel have asserted that in their unilateral view—a view never previously even disclosed to Snapchat, let alone adopted by any court—Snapchat has waived confidentiality designations as to all matters produced in this action prior to April 26, 2013.   Plaintiff argues that by merely sending a single email stating that he objects to all designations made in the case and doing nothing else, plaintiff obliged Snapchat to seek a Court order enforcing *every single designation* in the case, on pain of waiver. This absurd view has never been accepted and in fact has been rejected—and sanctioned—by courts faced with similar circumstances.   The entire purpose of entering a Protective Order at the start of discovery is to dispense with the requirement to bring every document and every bit of testimony before the Court for a confidentiality determination one-by-one, yet plaintiff and his counsel contend that is precisely what must be done to prevent them from disclosing defendants' confidential information to the media.

Plaintiff's position flies in the face of the Protective Order's purpose and its clear terms.   Far from permitting an objecting party to trigger waiver without any meet and confer or any judicial determination, the Protective Order has a clear and specific provision related to waiver of a confidentiality designation, and plaintiff indisputably failed to comply with it.   Paragraph 8 of the Protective Order requires a party objecting to a designation to provide a "Designation Objection" setting forth "the *specific* Documents, Testimony or Information to which *each* objection pertains, and the *specific* reasons and support for such objections."   Plaintiff has never complied with this provision as to any designation; instead, plaintiff's counsel sent a single email purporting to object on a blanket basis to *all* confidentiality designations in the entire case.   So that disputes may be resolved short of Court intervention, the Protective Order next requires that, if an objection to a designation is made, "[t]he

parties *shall* confer in good faith as to the validity of the designation."   But no such conference ever took place here, as plaintiff, after sending his blanket objection email, refused to meet and confer with Snapchat on any discovery issue (including the designation issue) and instead sought and received a months-long stipulated stay while plaintiff pursued an unsuccessful motion to disqualify Snapchat's counsel. After the stay was lifted, plaintiff and his counsel never again raised any Protective Order issue and never sought to meet and confer as required by the Protective Order. And showing that even plaintiff did not genuinely believe there had been any waiver, after the stay was lifted plaintiff repeatedly *agreed* to respect the confidentiality of the very documents he now claims may be publicly disclosed based on his April 2013 email.

Plaintiff and his counsel have flagrantly violated the Protective Order and have asserted a unilateral right to continue doing so.   Their flaunting of a Court Order should be immediately enjoined and their violation of the Order punished with contempt and monetary sanctions.   In addition, the Court should allow Snapchat to take immediate discovery into these violations, including through document demands and through depositions of Plaintiff and his counsel.[2]

## STATEMENT OF FACTS

The Operative Protective Order.   Defendants removed this case from Los Angeles Superior Court on November 20, 2013.   Dkt. 1.   While this case was pending in state court, the parties agreed to and submitted a Stipulated Protective Order, which was filed on April 2, 2013 and entered as an Order on April 18, 2013. *See* Van Dalsem Decl., Ex. A (hereinafter, "Protective Order").   Among other things, the Order provides that "*Confidential Materials shall not be disclosed to anyone* except as provided in this Protective Order" and that such materials "shall be used by the persons receiving them only for the purposes of preparing for, conducting,

---

[2]   Snapchat reserves its rights to seek other and further relief as the facts regarding plaintiff's violations develop.

1   participating in the conduct of, and/or prosecuting and/or defending the Proceeding,

2   and not for any business or other purpose whatsoever."   Protective Order, ¶ 12

3   (emphasis added).

4         The Protective Order also provides a three-step process for resolving disputes

5   about designations of confidentiality under the Order.   <u>First</u>, a party objecting to a

6   designation must provide a "Designation Objection" setting forth "the specific

7   Documents, Testimony or Information to which each objection pertains, and

8   the specific reasons and support for such objections."   Protective Order, ¶ 8.

9   <u>Second</u>, "[t]he parties shall confer in good faith as to the validity of the designation

10  within five (5) court days after receiving the Designating Party's grounds for the

11  asserted designation."   *Id.*   This requirement of a meet and confer is not contained

12  the Superior Court Model Protective Order—the parties specifically negotiated this

13  provision and added it to the Protective Order.   *See* Van Dalsem Ex. A at 24

14  (showing redline changes from Model Protective Order).   <u>Third</u>, if, after the above

15  are completed, "the parties are unable to reach agreement," then the designating party

16  "shall have thirty (30) days from receipt of the written Designation Objections to

17  either (a) agree in writing to de-designate . . . and/or (b) file a motion with the Court."

18  *Id.*, ¶ 8.

19         <u>Snapchat's Designations of Deposition Transcripts</u>.   The Protective Order

20  permits parties to designate deposition transcripts under the Protective Order, and

21  permits them to either designate an entire transcript or specific portions of a

22  transcript.   *See* Protective Order at ¶ 6(b) ("For Testimony given in depositions the

23  Designating Party may . . . designate the entirety of the Testimony at the deposition . .

24  . with the right to identify more specific portions of the Testimony as to which

25  protection is sought").   Snapchat, through its prior counsel in this case, designated

26  the entire deposition transcripts of defendants Evan Spiegel and Robert Murphy as

27  "Confidential" under the Protective Order.   Spiegel Depo. at 364-365 (Mr. Lambert:

28  "I'd like the presumptive designation of confidential.") (Van Dalsem Decl., Ex. B);

-4-

April 11, 2013 Email from M. Lambert to L. Tran ("[T]he transcripts are so designated in accordance with the Protective Order.") (Van Dalsem Decl., Ex. C). Snapchat also produced several hundred pages of documents in April 2013, designating them as "Confidential" as well.   *Id.*, Ex. D.   Virtually all of these documents disclose personal email addresses (of defendants and numerous third parties); others disclose Snapchat's non-public business plans and ideas; and others disclose home addresses of defendants and third parties.   More recently, Snapchat has produced thousands of pages of additional documents which contain confidential financial and investment information related to Snapchat's business, sensitive information regarding Snapchat's business plans, and private, personal communications of individual third parties.   Van Dalsem Decl., ¶ 8.

   <u>Plaintiffs Make A Blanket Objection, and Then Refuse To Confer</u>.   On April 26, 2013, plaintiff sent an email to Snapchat's prior counsel, Cooley LLP, "object[ing] to Defendants' 'confidential' designation of: (i) the entire transcript of the depositions of Evan Spiegel and Bobby Murphy; and (ii) the entire production of documents by Defendants."   Van Dalsem Decl., Ex. D.   This email did not set forth any "specific" objections to "specific" documents or testimony, as required by the Protective Order.   *See* Protective Order at ¶ 8.   Instead, this blunderbuss communication purported to object, in one fell swoop, to ***all*** of defendants' designations.

   This email was also sent just as Snapchat's current counsel was substituting in for prior counsel.   On April 29, 2013, three days after plaintiff sent his email, Snapchat's prior counsel responded by requesting that plaintiff "direct all communications" to "Defendants' new counsel."   *Id.*   But rather than do so, that same day, plaintiff's counsel stated that they would not formally discuss *anything* in the case with Snapchat's new counsel, Quinn Emanuel, based on a purported "conflict of interest issue facing Quinn Emanuel."   Van Dalsem Decl., ¶ 9. Plaintiff's counsel then informed defendants that they refused to engage in any

1  further litigation activities until the purported "conflict of interest" issue was

2  resolved.   Van Dalsem Decl., ¶ 9.   Thus, less than five days after plaintiff emailed

3  his purported designation objections, the parties agreed—at plaintiff's request— to a

4  "standstill," which was memorialized in a stay agreement, so that plaintiff could

5  pursue an (ultimately unsuccessful) motion to disqualify Quinn Emanuel.   Van

6  Dalsem Decl., Ex. F; *see also* Van Dalsem Decl., Ex. G (order denying

7  disqualification).

8        After plaintiff's disqualification motion was denied, the parties agreed to lift

9  the stay.   But plaintiff never again mentioned his April 2013 designation objections

10  and never provided any specificity regarding those designations.   The parties never

11  met and conferred or discussed them.

12        Plaintiff Assents To The Very Confidentiality Designations He Now Claims

13  Were Waived Months Before.   After the stay was lifted, far from pursuing his

14  designation objections—or claiming the designations had been waived—plaintiff's

15  counsel agreed to **honor** defendants' confidentiality designations as to the some of

16  the very documents now at issue.   For example, on October 8, 2013—six months

17  after plaintiff sent his designation objection email—plaintiff agreed to redact

18  sensitive information from documents before filing them in court.   *See* Van Dalsem

19  Decl., Ex. H.   These documents were produced by Snapchat in April 2013, and thus

20  are the same documents plaintiff now contends may be publicly disclosed based on

21  his April 2013 email.   Van Dalsem Decl., Exs. D, H.   In agreeing to redact portions

22  of these documents in October, plaintiff's counsel acknowledged:   "*I know that*

23  *under the protective order, there is a process for us to go through to de-designate*

24  *'confidential' tags*, but I am hopeful that we don't have to do so for these

25  documents," thus showing that even plaintiff did not believe that any confidentiality

26  protections had been waived following his April 2013 email.   *Id.*   And then again,

27  on October 16, 2013, plaintiff's counsel agreed to remove from a public filing

28  confidential information that plaintiff had extracted from documents produced by

Snapchat as "confidential" in April 2013, thus again acknowledging the ongoing validity of defendants' confidentiality designations.   *See Van Dalsem Decl., Ex. I.*

      <u>Plaintiffs Abruptly Disclose Confidential Materials To The Media and Assert The Right To Continue Doing So</u>.   On November 21, 2013, the news publication Business Insider published video excerpts of the confidential Spiegel and Murphy depositions on its website as part of a news story about this case.   *See* http://www.businessinsider.com/snapchat-lawsuit-video-depositions-2013-11.   The article described the materials as "leaked videos."   Snapchat immediately asked plaintiff's counsel if they had disclosed the videos to Business Insider.   Van Dalsem Decl., Ex. J.   Plaintiff's counsel failed to provide an answer, but claimed—remarkably—that the videos were not entitled to any protection under the Protective Order, despite Snapchat's designations of them as Confidential, because defendants had purportedly waived their rights.   Van Dalsem Decl., Ex. K.

      Specifically, plaintiff's counsel claimed that Snapchat had waived the protections of the Protective Order by failing to file a written motion within 30 days of plaintiffs' April 26, 2013 email seeking to uphold the designations of every item to which plaintiff had objected—*i.e.,* every designated item in the case up to that date. *See* Van Dalsem Decl., Ex. K.   Plaintiff also claimed that, by agreeing in October 2013 that certain previously-designated confidential documents could be publicly filed *after they were redacted*, Snapchat had somehow waived its rights under the Protective Order as to **all** designated information in the case.   Van Dalsem Decl., Ex. K at 3.   And for good measure Plaintiff claimed that defendant Murphy's deposition transcript was never designated as confidential in the first place (*id.* at 1), even though Snapchat's prior counsel had unequivocally designated this transcript—and even though plaintiff's own April 26 email expressly objected "to Defendants' 'confidential' designation of . . . [the] depositions of Evan Spiegel **and Bobby Murphy**," thus proving that plaintiff knew this information had been designated by defendants.   Van Dalsem Decl., Ex. D (emphasis added).

Four days later, Business Insider then released another set of Confidential videos, describing them as "more never-before-seen clips from the depositions."   *See* http://www.businessinsider.com/snapchat-lawsuit-videos-2013-11.   Snapchat again immediately demanded that plaintiff's counsel confirm whether they or their client had disclosed this information to the media.   *Id.*, Ex. L.   But it was not until December 2, 2013, that plaintiff's counsel finally admitted that yes, they in fact had provided all of this information to the media.   Van Dalsem Decl., ¶ 2.   Defendants still do not know what other information plaintiff has publicly disclosed, and to who else their disclosures were made.

Plaintiffs Refuse To Refrain From Further Disclosures.   On top of these violations, Plaintiffs continue to insist they have an unfettered right to further disclose confidential information despite the Protective Order.   On November 12, 2013, plaintiff sent an email to defendants' current counsel purporting to object to the "designation of the documents produced by Defendants since Quinn Emanuel substituted into the case."   Van Dalsem Decl., Ex. M.   Then, in an email dated November 22, 2013, plaintiff asserted that all such materials would automatically become subject to public disclosure as of December 12, 2013, based on the November 12 email, unless defendants were to seek relief from the Court.   *Id.*   As with their April 29 email, plaintiff's November 12 email did not set forth any specific objections to specific documents or testimony as required by the Protective Order. Snapchat also invited a meet and confer regarding specific documents and objections (*id.*, Ex. M), and that invitation has never been accepted (*id.*), and thus this requirement of the Protective Order again remains unsatisfied.

The parties discussed this matter on December 2, 2013.   At that time, defendants asked whether plaintiffs would agree not to make further public disclosures of information that defendants have designated under the Protective Order at least until these disputes are resolved.   Plaintiff expressly refused, and "reserved the right" to make additional public disclosures of designated materials, to anyone at

any time.   Van Dalsem Decl., ¶ 2.   Plaintiff apparently intends to give an "exclusive interview" to GQ magazine regarding this case (*id.*), so the prospect of further violations of the Protective Order in the near future is significant.

## ARGUMENT

### I.   SNAPCHAT HAS SATISFIED THE REQUIREMENTS FOR A TRO AND AN OSC RE PRELIMINARY INJUNCTION

#### A.   The Requirements for the Issuance of a TRO

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction*." Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).   A party seeking either must meet one of two alternative tests.   To satisfy the first test, the court must find four factors:   that Snapchat is "likely to succeed on the merits, that [it is] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Cal. Pharmacists Ass'n v. Maxwell-Jolly,* 563 F.3d 847, 849 (9th Cir. 2009).   Under the alternative test, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011) (holding that the "'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*").[3]

As set forth below, Snapchat meets either test.

_____

[3]   Similarly, a party seeking a preliminary injunction must establish (1) it is likely to succeed on the merits, (2) a likelihood of irreparable harm absent the injunction, (3) the balance of equities tips in its favor, and (4) the injunction is in the public interest.  *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1049 (9th Cir. 2010) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7,   129 S. Ct. 365, 374 (2008).

## B.   Snapchat Is Highly Likely To Prevail On The Merits

In order to establish the "probable validity" of its claims, Snapchat need only demonstrate that it is "more likely than not" that it will prevail.   *Pos-A-Traction, Inc. v. Kelley-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000).   This is essentially the same as showing as a likelihood of success on the merits.

Snapchat is highly likely to prevail in establishing that plaintiff and his counsel have violated the Protective Order by disclosing materials that Snapchat designated as confidential.   There is no dispute that Snapchat designated the materials at issue as confidential under the Protective Order.   There also is no dispute that plaintiff and his counsel publicly disclosed, to the media, these designated materials.   And there can be no dispute that the Protective Order has the full force of an Order of this Court.[4]   Thus, plaintiff and his counsel have violated the Protective Order.

Plaintiff's excuse for this violation is that the materials were somehow "de-designated."   This is frivolous.   Plaintiffs' arguments are nonsensical, and his excuse is inconsistent with even plaintiffs' own prior conduct.

First, this excuse clearly has been recently manufactured in an effort to justify plaintiff's wrongdoing.   As discussed above, as recently as six weeks ago, plaintiff agreed to honor the defendants' confidentiality designations as to some of the very documents as to which plaintiff now claims the protections of the Protective Order were lost more than six months ago.   *See supra* at 6.   Plaintiff's acknowledgement in October that "I know that under the protective order, there is a process for us to go through to de-designate 'confidential' tags" as to documents produced prior his April

_____

[4]   Under 28 U.S.C. § 1450, upon removal, the Superior Court's Protective Order was given the full force and effect of an Order of this Court.   *See, e.g.*, *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1316 (5th Cir. 1992) ("A prior state court order in essence is federalized when the action is removed to federal court").

*APPLICATION FOR TRO AND OSC RE PROTECTIVE ORDER VIOLATIONS*

26, 2013 email (Van Dalsem Decl., Ex. H), is flatly inconsistent with his current claim that all such documents had been effectively de-designated by May 2013.

Second, while plaintiff now claims that his April 2013 email effectively forced a waiver of all confidentiality protections under the terms of the Protective Order, plaintiff did not even **begin** to comply with the requirements of the Protective Order itself in challenging Snapchat's designations.   By its terms, that Order requires an objection to "**specific** Documents, Testimony or Information to which each objection pertains, and the **specific** reasons and support for such objections".   Protective Order, ¶ 8 (emphasis added).   Plaintiff's April 26, 2013 email offered no specific objection to any specific documents and no specific reasons for those objections, and thus did not satisfy the first requirement.   Such a blunderbuss email would not even support a motion to de-designate, let alone a claimed right to unilaterally deem the Protective Order waived.   *See, e.g., Bank of Montreal v. Optionable, Inc.*, No. 09 CIV. 7557 GBD JLC, 2011 WL 6259668 at *2-3 (S.D.N.Y. Dec. 15, 2011) (holding that a blanket objection to confidentiality designations that "seeks disclosure of BMO's entire document production" was insufficient, and without "specific objections from Nordlicht, BMO is not—and, for obvious reasons, cannot be—expected to explain its reasons behind its designations").   "Merely sending one letter to the Defendants is not a good faith effort."   *Cima v. Wellpoint Health Networks, Inc.*, No. 4:05-CV-4127-JPG, 2006 WL 1064054 at *3 (S.D. Ill. Apr. 20, 2006) (rejecting argument that party waived ability to "assert that the protective order applies to any documents filed in this case" and ordering parties to explain in writing their position as to whether "*each document* is governed by the protective order") (emphasis in original).

Third, the Protective Order also requires that, after a properly-specific objection to a designation is made, the "parties **shall** confer in good faith as to the validity of the designation."   Protective Order, ¶ 8 (emphasis added).   Plaintiff never even attempted to satisfy this requirement.   On the contrary, plaintiff's counsel **refused** to confer with Snapchat's counsel on any discovery issue for months;

*APPLICATION FOR TRO AND OSC RE PROTECTIVE ORDER VIOLATIONS*

requested and received a stay of all discovery; and then never again raised the issue before disclosing the Confidential materials to the media.   *See supra* at 5-6.   Thus, plaintiff clearly never satisfied the most basic requirements of the Protective Order itself in contesting Snapchat's designations.   Plaintiff's counsel's decision to proceed with public disclosures without complying with the Protective Order's meet and confer obligations is a clear violation of the Order.   *See Harmston v. City and County of San Francisco*, No. C 07-01186SI, 2007 WL 3306526 at *4-7 (N.D. Cal. Nov. 6, 2007) ("Instead of following the procedures laid out in the protective order, Cohen and McCoy evidently decided that because they thought defendants' counsel did not have grounds to designate the whole of Chief Fong's deposition testimony as confidential, they could ignore the order…").   (*Harmston* presented remarkably similar circumstances to those here.   There, Plaintiff's counsel publicly disclosing (including to news media) a deposition transcript that defendants had designated "confidential" in its entirety.   *Id.* at *4.   Counsel contended that "the designation was improper" but failed "to first meet and confer with defendants" and did not bring the issue to the Court before making disclosures to the media.   *Id.* at *5-6.   The Court ruled this was a violation, and imposed sanctions:   "regardless of whether the parties were justified in their designations," the "Court can make that decision only after plaintiffs have met and conferred with defendants regarding the challenged material, and have filed the proper motions."   *Id.* at *6 n.3.

Fourth, citing no authority in either the Protective Order or otherwise, plaintiff claimed in his November 21 letter that Snapchat's agreement in October that certain portions of deposition testimony could be publicly filed, and that certain documents—*with redactions*—could be publicly filed, somehow waived confidentiality as to *all documents and transcripts*.   Van Dalsem Decl., Ex. K at 2-3. But the law is clear that de-designation of some portions of a document or transcript does not waive the designations of other portions, much less other documents.   Such "conclusions are *unreasonable*."   *Telecomm. Sys., Inc. v. Mobile 365, Inc.*, No.

1   CIV.A.3:06CV485, 2009 WL 5943235 at *6 (E.D. Va. Mar. 31, 2009) ("TCS goes on

2   to argue that because Mobile 365 removed confidentiality designations from some

3   documents that it was not unreasonable for TCS to conclude that [confidentiality]

4   designations had become 'old news' for all documents, or that because some

5   documents and information were publicly known that all such information could not

6   remain confidential.   These conclusions are *unreasonable.*   It is reasonable to

7   believe that the confidentiality designations Mobile 365 did not remove remained

8   because those documents are still confidential, and therefore are subject to the

9   Court's Protective Order.") (quotations omitted); *McDonald v. Cooper Tire & Rubber*

10  *Co.*, No. 8:01-CV-1306-T-27TGW, 2005 WL 2810707 (M.D. Fla. Oct. 27, 2005)

11  ("By unilaterally determining that Cooper had waived the provisions of the protective

12  order, ignoring the judicial process for resolution of any such dispute and failing to

13  seek authority to share information in light of an earlier court order expressly denying

14  that authority, it is apparent that the Magistrate Judge's findings that Smith willfully

15  violated the terms of the protective order and conducted himself in bad faith is

16  supported by the record and is not clearly erroneous.").

17          Fifth, plaintiff also claimed in his November 21 letter that some of the

18  disclosed information—the Murphy deposition videos—was never designated in the

19  first place.   Van Dalsem Decl., Ex. K   This too is frivolous.   Snapchat's prior

20  counsel had unequivocally designated this transcript—and plaintiff's own April 26

21  email expressly objected "to Defendants' 'confidential' designation of . . . [the]

22  depositions of Evan Spiegel ***and Bobby Murphy***," thus proving that plaintiff knew

23  this information had been designated confidential.   Van Dalsem Decl., Ex. D

24          Finally, courts consistently reject claims that a disclosure in violation of a

25  protective order was justified, or not a violation at all, because the information in

26  question purportedly was not properly designated.   That is because "the question

27  [whether a party] designated its produced documents in good faith is distinct from the

28  question whether those subject to the protective order were free to ignore it." *Eli*

-13-

*Lilly & Co. v. Gottstein*, 617 F.3d 186, 196 (2d Cir. 2010) (citing *In re Criminal Contempt Proceedings,* 329 F.3d 131, 138 (2d Cir. 2003) ("it is well settled that persons subject to an injunctive order ... are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order")).   The fact that the information was designated is what matters, and that fact cannot reasonably be disputed.

For these reasons, Snapchat is highly likely to prevail in showing that plaintiff and/or his counsel have violated the Protective Order.   And as plaintiff has expressly "reserved the right" to further disclose defendants' confidential information, there is a grave risk that plaintiff will persist with these violations, unless enjoined.

## C.   Snapchat Has Satisfied The Other Requirements For Issuance Of A TRO And An OSC Re Issuance Of A Preliminary Injunction

The other potentially relevant considerations in considering a request for a TRO and an OSC for issuance of a preliminary injunction are likelihood of irreparable injury, balancing of the equities/hardships, and the public interest.   All weigh in favor of granting relief.   Disclosure of Snapchat's sensitive financial information and business plans is a classic irreparable injury.   *See, e.g.*, *Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742, 747 (9th Cir. 1996) ("public disclosure of [a party's] financial records" constitutes "an irreparable injury"); *Facebook, Inc. v. Jeremi Fisher*, No. C 09-05842 JF (PVT), 2009 WL 5095269 at *2 (N.D. Cal. Dec. 21, 2009) (issuing TRO because harm to "reputation and to the personal privacy of [third parties]" constitutes "a clear possibility of irreparable injury"); *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1149 (D. Kan. 2007) ("[I]nformation UEI considers proprietary was [made public].   No amount of monetary damages can make that information no longer public."); *Union Planters Bank, N.A. v. Gavel*, CIV.A.02-1224, 2002 WL 975675 at *6 (E.D. La. May 9, 2002) ("irreparable injury would result if Gavel were allowed to disclose the private financial information provided to him").

1    As to the other factors, there is no hardship or inequity in requiring plaintiff
2  and his counsel to comply with the Protective Order.   Nor does the public interest
3  favor violations of Court orders.   Indeed, plaintiff and his counsel are using the
4  disclosure of Snapchat's confidential information to foment and manipulate press
5  coverage of this case.   Business Insider promoted the confidential videos it released
6  as "leaked," indicated that even the press understood these materials were supposed
7  to be kept confidential.   *See* http://www.businessinsider.com/snapchat-lawsuit-video-
8  depositions-2013-11.   The public interest weighs heavily against "leaks" of materials
9  in violation of a Court Order.   *See, e.g.*, *United States v. Sumitomo Marine & Fire*
10 *Ins. Co.*, 617 F.2d 1365, 1370 ("[T]he public interest requires . . . that Court orders be
11 obeyed") (internal quotation omitted).
12    Thus, a TRO should issue.   And for all the same reasons, an order to show
13 cause for issuance of a preliminary injunction should also be made.
14 **II.    THE COURT ISSUE AN OSC REGARDING DISCOVERY AND**
15 **SANCTIONS**
16 **A.    Discovery Is Needed To Determine The Extent Of The Protective**
17 **Order Violations**
18    The existing record fully supports the issuance of a contempt citation and
19 imposition of monetary sanctions, as shown below.   However, discovery is needed to
20 determine the full scope of plaintiff's and his counsel's violations and wrongdoing,
21 and the appropriate extent of the sanctions.   While plaintiff's counsel claimed on
22 December 2, 2013, when finally admitting to making the disclosures at issue, that no
23 other public disclosures had been made, plaintiff and his counsel expressly refused to
24 agree to refrain from further disclosures.   Van Dalsem Decl., ¶ 2.   Media stories
25 about this case emerge virtually every day and thus defendants do not know what
26 wrongful disclosures have been made as of today.   Moreover, given the severity of
27 the wrongdoing, defendants have a right to obtain testimony under oath about who
28 made the disclosures, who authorized them, and what the purpose of these disclosures

1   were, including to assess damages.   Accordingly, Snapchat requests the Court issue

2   an OSC why Snapchat should not be permitted to depose plaintiff and a Rule 30(b)(6)

3   witness on behalf of plaintiff's counsel, and propound requests for documents,

4   concerning their disclosures of documents that were designated under the Protective

5   Order.

6           **B.**     **Sanctions Are Available Under Rule 37 And Inherent Power**

7         Regardless of whether discovery is ordered, sanctions are appropriate based on

8   the current record, and an OSC re sanctions should also issue.   "Contempt sanctions

9   are frequently imposed against a person who violates a protective order."  6 James

10   Wm. Moore et al., *Moore's Federal Practice* § 26.108[2] (3d ed. 2013).   Sanctions

11   fall into two general categories – civil and criminal.   *See United Mine Workers of*

12   *Am. v. Bagwell*, 512 U.S. 821, 826-27 (1994).   Civil sanctions allow the Court to

13   police the litigation process, coerce compliance with its orders, and compensate

14   litigants for harm caused by the sanctionable conduct.   *Bagwell*, 512 U.S. at 828-29.

15   This Court has authority to impose civil sanctions under Federal Rule of Civil

16   Procedure 37 and under its inherent power.

17         First, Rule 37 provides for sanctions where a party disobeys a discovery order,

18   including violating a Court's protective order.   Fed. R. Civ. P. 37(b)(2)(A); *Falstaff*

19   *Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (imposing

20   Rule 37 sanctions for protective order violation); *see also Smith & Fuller, P.A. v.*

21   *Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is thus

22   significant authority in support of the imposition of Rule 37(b) sanctions for violation

23   of Rule 26(c) protective orders").   Rule 37 sanctions "must be applied diligently both

24   to penalize those whose conduct may be deemed to warrant such a sanction, [and] to

25   deter those who might be tempted to such conduct in the absence of such a deterrent."

26   *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 752 (1980) (internal citations omitted).

27   Though Rule 37 sanctions serve a punitive role, they "never have been considered

28   criminal" because they "penalize a party's failure to comply with the rules of conduct

1  governing the litigation process."  *Bagwell*, 512 U.S. at 833.

2     Rule 37 provides for a broad range of potential sanctions – among them

3  establishing facts, striking pleadings, dismissing an action, entering a default

4  judgment, or holding a litigant in contempt.   Fed. R. Civ. P. 37(b)(2)(A).   At a

5  minimum, after finding a Rule 37 violation "the court *must* order the disobedient

6  party, the attorney advising that party, or both to pay the reasonable expenses,

7  including attorney's fees" caused by the violation unless the conduct was

8  "substantially justified" or ordering fees would be "unjust." Fed. R. Civ. P.

9  37(b)(2)(C) (emphasis added); *Falstaff Brewing Corp.*, 702 F.2d at 784.[5]

10     <u>Second</u>, "courts have inherent power to enforce compliance with their lawful

11  orders through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990)

12  (internal quotation marks omitted).   A court may hold a party or a non-party in civil

13  contempt for failing to comply with a court order where: "(1) [the contemnor]

14  violated the court order, (2) beyond substantial compliance, (3) not based on a good

15  faith and reasonable interpretation of the order, (4) by clear and convincing

16  evidence."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693,

17  695 (9th Cir. 1993).

18     Plaintiff and his counsel may argue that contempt sanctions should not be

19  awarded because they acted based on a "mistaken" belief about the Protective Order's

20  provisions, but that position should be rejected.   But plaintiff's counsel admitted just

21  weeks ago that "I know that under the protective order, there is a process for us to go

22  through to de-designate 'confidential' tags," Van Dalsem Decl., Ex. H, and they have

23  never engaged in that process.   In any event, as the Ninth Circuit held in a recent

24  protective order violation case, "it is clear that a 'willful' violation of a court order

25  _____

26  [5]   Snapchat cannot now estimate the amount of attorneys' fees and costs it will
incur in addressing the violation of the Protective Order because, for example, it does

27  not yet know what discovery on this issue may be taken.   Snapchat therefore seeks
leave to file a supplemental declaration and evidence in support of the request for

28  monetary sanctions, once that amount can be determined.

1    does not require proof of mental intent such as bad faith or an improper motive, but

2    rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney*

3    *Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012).   "'Disobedient conduct not shown to

4    be outside the control of the litigant' is all that is required to demonstrate willfulness,

5    bad faith, or fault." *In re Google Litig.*, No. C 08–03172 RMW, 2011 WL 6951972,

6    at *5 (N.D. Cal. July 8, 2011) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762

7    F.2d 1334, 1341 (9th Cir. 1985)); *see also Nevil v. Ford Motor Co.*, No. CV 294-015,

8    1999 WL 1338625, at *4-5 (S.D. Ga. Dec. 23, 1999) ("Even if this general

9    information is already in the public domain . . . this evidence came from specific

10   General Tire documents [and therefore] violates the terms of the Protective Order.

11   Accordingly, I find that Mr. Carlson's actions are in contempt of this Court.").   Thus,

12   sanctions under the Court's inherent powers are clearly warranted.

13          The Court's inherent authority gives it discretion to "fashion an appropriate

14   sanction" up to and including "outright dismissal of a lawsuit." *Chambers v.*

15   *NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (citing *Roadway Express*, 447 U.S. at 765).

16   "Judicial sanctions in civil contempt proceedings may . . . be employed for either or

17   both of two purposes: to coerce the defendant into compliance with the court's order,

18   and to compensate the complainant for losses sustained." *United States v. United*

19   *Mine Workers of America*, 330 U.S. 258, 303-04 (1947).   "It is the duty of the Court

20   to compensate a complaining party for damages caused by violation of an

21   injunction." *New York State Nat. Org. for Women v. Terry*, 697 F. Supp. 1324, 1333

22   (S.D.N.Y. 1988).   These damages are akin to tort damages.   *Vuitton et Fils S. A. v.*

23   *Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).   The damages are

24   awarded "not to vindicate the court's authority but to make reparation to the injured

25   party and restore the parties to the position they would have held had the injunction

26   been obeyed." *Id.*   A court "is not free to exercise its discretion and withhold an

27   order of civil contempt awarding damages, to the extent [those damages] are

28   established." *Id.*; *see also Booth v. Wilson*, No. 96-Civ-920(RO), 1997 WL 615490

-18-

(S.D.N.Y. Oct. 6, 1997) (finding non-party in contempt for assisting party in violating order forbidding transfer of property, and awarding sanctions against non-party in amount that was wrongly transferred).

In this case, sanctions should both cure the harm and end the continuing threat to Snapchat and other third parties whose confidential information plaintiff and his counsel seek to disclose.   Courts have recognized the importance of both goals.   *See, e.g., Grace v. Center for Auto Safety*, 155 F.R.D. 591, 602 (E.D. Mich. 1994) ("The imposition of sanctions in this case against Ditlow and Robinson serves the dual purpose of vindicating judicial authority and compensating GM for the expenses caused by Robinson's and Ditlow's willful violation of the protective order.   These two functions: maintaining the integrity of the court and making GM whole for the expenses caused by defense counsel and defendant's misconduct are explained below."), *rev'd on other grounds*, 72 F.3d 1236, 1238 (6th Cir. 1996); s*ee Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 602 (S.D. Tex. 2011) (ordering payment of opposing counsel's attorneys' fees stemming from the protective order violations); *Vuitton et Fils S.A.,* 592 F.2d at 130 ("The district court is not free to exercise its discretion and withhold an order of civil contempt awarding damages, to the extent [those damages] are established.").   Although discovery is necessary to understand the full scope of the Protective Order violations and appropriate sanctions, at a minimum, plaintiff and his counsel should be ordered, jointly and severally, to pay the reasonable expenses, including attorney's fees, that Snapchat has incurred in investigating this matter and briefing this application, as required by Rule 37 if a Protective Order violation is found.

## **CONCLUSION**

For the foregoing reasons, Snapchat respectfully requests that the relief requested herein be granted.

1  DATED:   December 6, 2013          QUINN EMANUEL URQUHART &
2                                     SULLIVAN, LLP

3

4                                     By:
5                                         Bruce E. Van Dalsem
6                                         Attorneys for Snapchat, Inc., Evan Spiegel,
                                          Robert Murphy, and Toyopa Group LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28