1  LEE TRAN LIANG & WANG LLP
    K. Luan Tran (Bar No. 193808)
2    *luan.tran@ltlw.com*
    James M. Lee (Bar No. 192301)
3    *james.lee@ltlw.com*
    Cyrus Khojandpour (SBN 260233)
4    *cyrus.khojanpour@ltlw.com*
   601 S. Figueroa Street, Suite 3900
5  Los Angeles, California 90017
   Tel.: 213-612-8900 / Fax: 213-612-3773
6
   RAY A. MANDLEKAR, ATTORNEY AT LAW
7    Ray A. Mandlekar (SBN 196797)
    *raym@mandlekarlaw.com*
8  601 S. Figueroa Street, Suite 4050
   Los Angeles, CA  90017
9  Tel: 213-785-6130 / Fax: 213-254-9001

10 Attorneys for Plaintiff

11
                    **UNITED STATES DISTRICT COURT**
12
                   **CENTRAL DISTRICT OF CALIFORNIA**
13
                        **WESTERN DIVISION**
14

15 FRANK REGINALD BROWN, IV,          CASE NO.:  2:13-CV-8569 RGK (SSx)

16                      Plaintiff,     Judge:      Hon. Alicia G. Rosenberg
                                       Courtroom:  B, 8th Floor
17        v.
                                       **DISCOVERY MATTER**
18
                                       **PLAINTIFF'S OPPOSITION TO**
19 SNAPCHAT, INC., et al.,             **APPLICATION OF DEFENDANTS**
                                       **SNAPCHAT, INC., EVAN**
20                      Defendants.    **THOMAS SPIEGEL, AND**
                                       **ROBERT CORNELIUS MURPHY**
21                                     **FOR:**

22                                     **(1) TEMPORARY RESTRAINING**
                                       **ORDER;**
23                                     **(2) OSC RE PRELIMINARY**
                                       **INJUNCTION;**
24                                     **(3) ORDER TO SHOW CAUSE RE**
                                       **DISCOVERY, CONTEMPT, AND**
25                                     **SANCTIONS**

26                                     *[Proposed Order, Request for Judicial*
                                       *Notice, and Declaration of K. Luan*
27                                     *Tran Filed Concurrently Herewith]*

28

                                      PLAINTIFF'S OPPOSITION TO APPLICATION OF DEFENDANTS

# TABLE OF CONTENTS

Page

**I.   INTRODUCTION** .................................................................................... 1

**II.  STATEMENT OF FACTS** ........................................................................ 2

A.  Plaintiff's Allegations and the Filing of His Complaint ................................ 2

B.  Defendants' Early Media Campaign ................................................................ 3

C.  Defendants Initiate and Permit Discovery Without a Protective Order .......... 3

D.  Defense Counsel Commits to Designate Only Portions of the Deposition
Transcripts as "Confidential" ........................................................................... 4

E.  The State Court Declines to Find "Good Cause" Present and Declines to
Enter a True "Protective Order" ...................................................................... 5

F.  The April Correspondence and Defendants' Aggressive Discovery Activity 5

G.  Defendants Publicly File Portions of the Deposition Transcripts .................. 7

H.  The Deposition Clip Releases ......................................................................... 8

I.   Defense Counsel Fails to Demonstrate Any Concern about
"Commercially Sensitive" Information ........................................................... 9

**III. ARGUMENT** ........................................................................................... 9

A.  This Court Lacks Subject Matter Jurisdiction ................................................ 9

B.  There is no "Protective Order" to Enforce; and Even if there Were,
Defendants Repeatedly Waived any Potential Protection ............................. 10

1.  No Enforceable "Protective Order" Ever Issued ...................................... 10

2.  Defense Counsel's Inaction Caused the Loss of any Potential Protection 11

a.  Failure to Make a Particularized Showing of "Good Cause" .............. 11

b.  Failure to Designate the Deposition Transcripts as "Confidential"  .... 11

c.  Failure to Meet-and-Confer and Move to Protect Confidentiality ....... 12

d.  Defendants' Manifold Excuses are Unavailing .................................... 13

3.  Defendants' Filing of the Deposition Transcripts Waived any Possible
Protection ...................................................................................................... 14

4.   Plaintiff's Counsel Never Acknowledged the Confidentiality of the Materials at Issue ............................................................................14

5.   Defendants Demonstrated Their Understanding That The Subject Information is Not "Confidential" ...................................................16

6.   None of Released Information is "Confidential" ....................................16

C.   Because There is no Confidentiality Protection, Neither Contempt, FRCP 37 Sanctions or a TRO are Available.........................................17

1.   Defendants Have Not Shown Contempt is Available ...............................17

2.   Defendants Have Not Shown Sanction are Available ..............................18

3.   Defendants Have Not Shown a TRO is Available ...................................18

D.   Discovery is Unwarranted ................................................................20

IV.   **CONCLUSION**............................................................................20

PLAINTIFF'S OPPOSITION TO APPLICATION OF DEFENDANTS

# TABLE OF AUTHORITIES

Page(s)

Cases

*Biovail Laboratories v. Anchen Pharmaceuticals*,
  463 F.Supp.2d 1073 (C.D. Cal. 2006) ............................................................ 18

*Cantrell v. Great Republic Ins. Co.*,
  873 F.2d 1249 (9th Cir.1989) ......................................................................... 10

*Caterpillar v. Friedmann*,
  164 F.R.D. 76 (D. Or. 1995) .......................................................................... 20

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F.2d 1390 (9th Cir.1991) ......................................................................... 17

*Dead Kennedys v. Biafra*,
  37 F.Supp.2d 1151 (N.D. Cal. 1999) ............................................................. 10

*Gates v. Shinn*,
  98 F.3d 463 (9th Cir. 1996) ............................................................................ 18

*Go-Video v. The Motion Picture Ass'n of America*,
  10 F.3d 693 (9th Cir. 1993) ............................................................................ 17

*Hickman v. Taylor*,
  329 U.S. 495, 513 (1947) ................................................................................ 20

*H.O.D. Properties, LLC v. Sarkisyan*,
  2013 WL 4052469 (C.D. Cal. Aug. 12, 2013) ............................................... 10

*HSBC Bank USA v. Ramirez*,
  2008 WL 4724055 (C.D. Cal. Oct. 21, 2008) ................................................ 10

*Jepson, Inv. v. Makita Elec. Works.*,
  30 F.3d 854 (7th Cir. 1994) ...................................................................... 11, 17

*Kamakana v. City and County of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) .............................................................. 10, 11, 17

*Littlejohn v. BIC Corp.*,
  851 F.2d 673 (3d Cir. 1988) ........................................................................... 14

*Makar-Wellbon v. Sony Electrics*,
  187 F.R.D. 576 (E.D. Wis. 1999) ................................................................... 10

*Matter of Cont'l Illinois Sec. Litig.*,
   732 F.2d 1302 (7th Cir. 1984) ............................................................ 6

*No Doubt v. Activision Publishing, Inc.*,
   702 F.Supp.2d 1139 (C.D. Cal. 2010)................................................... 9

*Oddo v. Ries*,
   743 F.2d 630 (9th Cir. 1984) ............................................................. 10

*Phoenix Solutions v. Wells Fargo Bank*,
   254 F.R.D. 568 (N.D. Cal. 2008) ...................................................... 14

*Public Citizen v. Liggett Group, Inc.*,
   848 F.2d 775 (1st Cir. 1988) ..................................................... 11, 17

*Rivera v. NIBCO*,
   384 F.3d 822 (9th Cir. 2004) ............................................................. 16

*Shelton v. Am. Motors Corp.*,
   805 F.2d 1323 (8th Cir. 1986) .......................................................... 20

*United States v. Fleischman*,
   339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906 (1950). ............................ 18

*United States v. Joyce*,
   498 F.2d 592 (7th Cir. 1974) ............................................................ 18

*Winter v. NRDC*,
   555 U.S. 7 (2008) ............................................................................... 19

*World Wide Rush, LLC v. City of Los Angeles*,
   606 F.3d 676 (9th Cir. 2010) ............................................................ 17

Statutes & Rules

28 U.S.C. § 1447(c) ................................................................................ 10

Federal Rule of Civil Procedure 26 ........................................................ 10

Federal Rule of Civil Procedure 37 .................................................. 17, 18

Federal Rule of Civil Procedure 65 ........................................................ 19

Cal. Code Civ. Proc. § 2031.060 ............................................................ 10

# I.  **INTRODUCTION**[1]

Defendants' Application [ECF No. 13] is a meritless attempt to scapegoat plaintiffs' counsel for defense counsel's neglect of their own responsibilities and their strategic mistake of initiating the disclosure of discovery materials to the public.  Defendants present an incomplete version of events– selectively quoting statements of counsel at deposition and in emails, wholly omitting other correspondence and neglecting to mention critical documents in the state court file establishing the propriety of plaintiff counsel's conduct.  Specifically, defendants:

- omit that the supposed "protective order" defendants seek to enforce is not an "order" at all.  The state court judge declined to find present the "good cause" required for issuance of a protective order– and so properly refused to issue an actual protective order;

- partially quote communications between counsel to obscure the fact that defense counsel committed itself to a short timeline to designate the depositions in question as "confidential," but then carelessly blew that deadline, resulting in the material being made public; and

- neglect to mention that defendants themselves placed portions of the supposedly "confidential" deposition transcripts in the public court file in July, and so waived any purported "confidentiality."

Defendants also, on several occasions, failed to take the required action to preserve any potential confidentiality for the subject materials.

In short: (1) there was and is no "protective order" for Plaintiff's counsel to violate; and even if there were, (2) Defendants' counsel failed to designate the subject depositions as confidential under it; and even if they did, (3) they waived

---

[1]  Plaintiff filed this case in state court on February 21, 2013, and defendants filed a petition for removal on November 20, 2013.  As discussed below, Plaintiff respectfully asserts that this Court has no jurisdiction over this action, and is scheduled to file remand motion on December 16, 2013.  By filing this Opposition, Plaintiff does not waive his objection to federal jurisdiction.

1  that protection by: (a) failing to assert their rights to confidentiality; and (b) by

2  themselves placing the deposition transcripts in the public file.

3        Defendants have no legitimate complaint with Plaintiff's counsel.

4  Defendants state that their "commercially sensitive" information is at risk of

5  disclosure.  But Plaintiff has *never* disclosed such information, and always

6  contended that this is the only type of information that actually qualifies for

7  confidentiality protection.  Defendants' real complaint is that their efforts to shape

8  public opinion about this case in the media backfired when Plaintiff exercised his

9  right to defend himself.  For this, a TRO, contempt and sanctions are unavailable.

10  **II.    STATEMENT OF FACTS**

11  **A.    Plaintiff's Allegations and the Filing of His Complaint**

12        Plaintiff initiated this case in Los Angeles Superior Court with the filing of

13  his complaint on February 21, 2013, asserting claims for, *inter alia*, breach of a

14  partnership agreement and conversion.  His complaint concerns the company now

15  known as "Snapchat," which was founded in 2011 by plaintiff Reggie Brown

16  ("Brown") and defendants Evan Spiegel ("Spiegel") and Bobby Murphy

17  ("Murphy") while the three were fellow students and fraternity brothers at Stanford

18  University.  Snapchat is known for its mobile phone application that allows users

19  to send messages that spontaneously delete themselves after a set period of time.

20        Plaintiff alleges that he alone devised the idea for the mobile phone

21  application in 2011.  He shared the idea with defendant Spiegel; the two joined

22  forces to develop the application together, and brought in defendant Murphy to

23  help, establishing a three-way partnership to develop the application, with all

24  profits to be split equally among the three young men.  The three then built the

25  application (then named "Picaboo") and made it available to the public.  In a

26  gutless act of betrayal, however, defendants Spiegel and Murphy abruptly turned

27  on their friend and fraternity brother Brown, physically excluding him from the

28  project in order to appropriate his share of the profits.

**B.    Defendants' Early Media Campaign**

After defendants wrongfully excluded plaintiff from the venture but before plaintiff filed suit, defendants took to the media to disseminate the false story that they alone devised Picaboo and founded the company without Brown.  For example, at the end of 2012, Defendants took the public position that defendant Spiegel came up with the idea for the application for a product design class at Stanford in 2011.  *See* Declaration of Luan Tran Dec. ("Tran Dec.") Ex. 1.

Plaintiff's lawsuit, however, immediately caused the press to question the veracity of defendants' earlier statements omitting Brown's role.  For example, in an article about the lawsuit, one reporter for TechCrunch magazine noted that "[defendant] Spiegel has never mentioned [plaintiff] Brown in the five interviews he and I have done for TechCrunch pieces, and he has talked at length to the media about coming up with the idea with [defendant] Murphy."  Tran Decl. Ex. 2.  Defendants, however, doubled down on their false denial of Brown's early role with the company, stating:  "We are aware of the allegations, believe them to be utterly *devoid of merit*, and will vigorously defend ourselves against this *frivolous* suit."  Tran Dec. Ex. 3 (unless otherwise indicated, all emphasis is added).

**C.    Defendants Initiate and Permit Discovery Without a Protective Order**

Defendants – then represented by the world-class law firm of Cooley LLP – immediately initiated discovery in the case by serving, on March 5, 2013, a notice of deposition for plaintiff Brown that contained extensive document requests.  *See* Tran Decl. Ex. 4.  This was a mere seven business days after the action was filed.  Thus at this time there was no protective order in place; the parties had not even reached any stipulation concerning confidentiality, much less submitted one to the court.  As defense counsel must have expected, plaintiff's counsel responded by quickly noticing the depositions of defendants Spiegel and Murphy, which too contained document demands.  *See* Tran Decl. Ex. 5 and 6.

On April 2, 2013, the parties submitted to the state court a stipulation and

1  proposed protective order.  The court had yet to rule on the submission when, on

2  April 5, 8 and 9, defendants nonetheless elected to proceed with their fast-paced

3  discovery plan:  On those dates, the depositions of Brown, Spiegel and Murphy,

4  respectively, took place.  Also, on April 5 Brown produced documents; and on

5  April 8 defendants produced 807 pages of documents (Bates SNP00001-807; the

6  "April Documents").  *See* Tran Dec. at ¶ 8.

7        Notably, defendants' counsel never requested that the depositions and

8  document production be postponed pending the court's actual issuance of the

9  proposed protective order.  Instead, in order to pursue the tactical decision of

10  taking plaintiff's deposition quickly, defendants knowingly undertook the risk that

11  the court would not find "good cause" to enter the protective order.

12  **D.    Defense Counsel Commits to Designate Only Portions of the**

13  **        Deposition Transcripts as "Confidential"**

14        At the conclusion of Plaintiff Brown's deposition on April 5, 2013, defense

15  counsel declined to make any designation of the transcript as confidential.  *See*

16  Tran Dec. at Ex. 7.  At the conclusion of defendant Spiegel's deposition on April 8,

17  2013, defense counsel stated with regard to confidentiality as follows:

18        MR. LAMBERT:  I have just one thing.  So we have a protective

19        order that's on file.  I'd like the *presumptive* designation of

20        confidential.  I mean, we have the highly confidential presumption in

21        there.  Mr. Brown has been in here today, so I have no intention of

22        cutting off any access of his to the transcript, but I'd like it to be

23        maintained in that *presumptive* stage of confidentiality <u>*until* we can</u>

24        <u>*have a chance to review it and designate what portions we believe are*</u>

25        <u>*not entitled to that – entitled to that designation*</u>.

26  Declaration of Bruce E. Van Dalsem [ECF No. 13-2] ("Van Dalsem Dec.") at Exh.

27  B at 44-46 (deposition pages 364:18-365:2).  Notably, Defendants quote only part

28  of this statement, effectively concealing Mr. Lambert's promise to specifically

1   designate portions of the transcript as confidential.  *See* Application at 4:28.  In an

2   April 11, 2013, email, Mr. Lambert cites "Section 4.b.ii" of the proposed

3   protective order, and a timetable of "30 days following receipt of the deposition

4   transcript."  Van Dalsem Dec. Ex. C at p. 50-51.  There is no such section of the

5   proposed protective order; this typo is a reference to section "6.b.ii," which indeed

6   contains the 30-day deadline for counsel to specify particular deposition testimony

7   to be designated as confidential.  *See id*. Ex. A at p. 5.

8       **E.      The State Court Declines to Find "Good Cause" Present and**

9       **Declines to Enter a True "Protective Order"**

10      On April 8, 2013, the state court denied entry of the proposed protective

11  order on procedural grounds.  *See* Plaintiff's RJN Ex. 1.  On April 18, 2013, the

12  state court ruled on the re-submission of it.  Significantly, Judge John Segal ***struck***

13  ***out*** the lines "GOOD CAUSE APPEARING" and "IT IS SO ORDERED."  *See*

14  Van Dalsem Dec. at Ex. A page 16.  Defendants took no action in response.

15      **F.      The April Correspondence and Defendants' Aggressive Discovery**

16      **Activity**

17      On April 26, 2013, plaintiff's attorney Luan Tran sent an email to

18  defendants' lawyer Mark Lambert (again, of Cooley LLP).  It stated in its entirety:

19      Dear Mark:

20      Pursuant to par. 8 of the Protective Order, I am writing to object to

21      Defendants' "confidential" designation of: (i) the entire transcript of

22      the depositions of Evan Spiegel and Bobby Murphy; and (ii) the entire

23      production of documents by Defendants (SNP0000001-807) [*i.e.*, the

24      April Documents] (collectively "Designated Materials").

25      The Designated Materials can be divided up into: (1) discussions

26      between the parties regarding their work on this project; (2)

27      discussions with third parties (friends/family…) regarding this

28      project; (3) public postings on various websites or social media; and

1   (4) personal notes regarding the business.  There is nothing

2   "confidential" about these materials, and we are unaware of any case

3   law or statute that would treat such materials as "confidential" that

4   should be hidden from the public.  If anything, your clients have given

5   numerous press interviews and posted on websites/social media sites

6   about how Snapchat started, their involvement in the business, the

7   operations of the business, and even the allegations and merits of this

8   lawsuit by Plaintiff.

9   In a good faith effort to resolve this, Plaintiff is willing to agree to the

10  "confidential" designation for Mr. Spiegel's testimony regarding any

11  plan for Snapchat's acquisition (339:15-342:5).  However, for the

12  above reasons, Plaintiff does not agree to the wholesale "confidential"

13  designation by Defendants.

14  ***Moreover, please be reminded that at Mr. Spiegel's deposition about***

15  ***three weeks ago, you represented to us that you will be reviewing the***

16  ***transcripts to inform us of what specific "portions" thereof that***

17  ***Defendants will designate as "confidential."  We still have not heard***

18  ***back from you.***  But regardless, as discussed, we believe that at best

19  for Defendants, only the above-cited portion of Mr. Spiegel's

20  deposition transcript (339:15-342:5) can arguably qualify as

21  "confidential."

22  ***We look forward to hearing from you***.  Thank you.

23  Luan.

24  Van Dalsam Dec. Ex. D at p. 53-54.

25        On April 29, 2013, Mr. Lambert responded to this email by an email stating

26  in substance only:  "Copied on this e-mail are Defendants' new counsel at Quinn.

27  Please direct all communications to them."  Van Dalsam Dec. Ex. D at p. 53.

28  Copied on the email were four Quinn Emanuel attorneys.  *See id*.  That same day,

1    Mr. Lambert also sent plaintiff's counsel Tran a letter stating, among other things,

2    that "As Quinn Emanuel is now sole counsel of record in this litigation, I defer all

3    other matters addressed in your April 26, 2013 e-mail to them."  Tran Dec. Ex. 8.

4    Copied on the letter were three Quinn Emanuel attorneys.

5       Also on April 29, defendants' new counsel, Bruce Van Dalsem of Quinn

6    Emanuel, sent plaintiff's counsel Tran a letter "*in response to your April 26, 2013*

7    *email to Mark Lambert* regarding issues with Mr. Brown's document production,"

8    threatening "to file a motion to compel" *within four days* if plaintiff did not

9    produce certain documents within three days.  *See* Tran Dec. Ex. 9.  In Mr. Van

10   Dalsem's letter, he *declines to respond* to the other items in Mr. Tran's email

11   concerning claimed confidentiality of the materials, Mr. Lambert's promise to

12   specify which portions of the depositions should be treated as confidential, or

13   plaintiff's offer to keep company "acquisition" testimony confidential.  *See id*.

14   Defendants fail to place this letter before the Court.

15       On May 18, 2013, the parties agreed to a voluntary "stay" of the case to

16   pursue settlement.  Van Dalsem Dec. Ex. F at p. 60.  The stay was lifted at one

17   point, and so the Quinn Emanuel firm resumed their aggressive discovery efforts

18   on June 3, 2013, by barraging plaintiff's counsel with 35 special interrogatories, 84

19   requests for admission, and 48 form interrogatories.  Tran Dec. Ex.10, 11 & 12.

20       **G.**     **Defendants Publicly File Portions of the Deposition Transcripts**

21       On July 19, 2013, defendants filed an opposition to plaintiff's motion

22   disqualify them.  *See* Plaintiff's RJN Ex. 2.  In it, they asserted that plaintiff

23   Brown's claims were "a recent fabrication" that he "made up."  *See id*. at 1:5, 4:13.

24   In support of this attack, defendants submitted excerpts of the deposition

25   transcripts into the public court file.  *See* Plaintiff's RJN Ex. 3 (July 19, 2013,

26   Sarles Decl. ("Sarles Dec.") Ex. D (Brown depo. tr.); Sarles Decl. Ex.E (Murphy

27   depo. tr.)).  Defendants also publicly filed discovery documents containing

28   personal email addresses, phone numbers and defendant Spiegel's home address.

1 | *See id.*, Sarles Dec. Exs. A & C.  A media article – featuring the defendant-friendly

2 | title "Evan Spiegel and Bobby Murphy Say Alleged Snapchat Co-Founder Never

3 | Had Equity"– reprinted the entire Sarles Declaration, including the deposition

4 | excerpts and personal information.  *See* Tran Dec. at Ex. 13.

5 |      After the state court denied Plaintiff's disqualification motion on August 2,

6 | 2013 (Van Dalsem Dec. Ex. G), the parties' voluntary stay was lifted and never

7 | reinstated.  Defendants' counsel still never responded to Mr. Tran's April 26 email

8 | or designated any portion of the deposition transcripts as confidential.

9 |     **H.**    **The Deposition Clip Releases**

10 |      On November 20, 2013– over seven months after (among other things) Mr.

11 | Lambert's unfulfilled promise to specify which portions of deposition transcripts

12 | would be confidential within 30 days– investigative journalist Alyson Shontell of

13 | Business Insider magazine published an article on Brown's lawsuit featuring

14 | portions of videotapes from the depositions of Spiegel, Murphy and Brown.  *See*

15 | Tran Dec. Ex. 14 ("Nov. 20 BI Article").  On November 25, 2013, another article

16 | ran featuring more deposition clips from the Spiegel and Murphy depositions.  *See*

17 | Tran Dec. Ex. 15 ("Nov. 25 BI Article").  Business Insider also published a few

18 | documents from the April Documents.  *See* Tran Dec. Ex. 14 and 15.  Business

19 | Insider obtained the clips and documents from plaintiff's counsel.

20 |      The clips and documents run by Business Insider do *not* contain any

21 | commercially sensitive information, or any personal information.  Instead, they

22 | contain testimony concerning work on the Picaboo application in 2011.  In this

23 | regard, the released clips and documents contain only ***the same basic subject***

24 | ***matter as the deposition transcripts defendants themselves put into the public***

25 | ***record***.[2]  In fact, the clips concern the *same topics* plaintiff Brown discussed in his

26 |

27 | [2] *Compare* Plaintiff's RJN Ex. 3 (Sarles Dec. D (Brown deposition pages 53-57; 230-233; 408-413) and Ex.E (Murphy deposition pages 118-123) with Nov. 20

28 | BI Article (Tran Dec. Ex. 14) (videos viewable at http://www.businessinsider.com/snapchat-lawsuit-video-depositions-2013-11) and

1    deposition for *seven hours – i.e.*, the parties' work on Picaboo – a deposition which

2    no party has designated confidential.

3         Some of the videos also contained testimony already released to the public

4    via plaintiff's amended complaint– a document publicly filed with defendants'

5    approval a month before. *See* Tran Dec. Exh. 16. For example, one video featured

6    defendant Spiegel admitting that it was in fact plaintiff – and not he – who came up

7    with the idea for the Picaboo application. *See* Tran Dec. Ex. 14. This same

8    testimony is quoted in plaintiff's amended complaint, ¶26. *See* Tran Dec. Ex. 16.

9    Another clip featured defendant Spiegel admitting that when he sent a summer

10   2011 email to a blogger stating he had just "built an app [*i.e.*, Picaboo] with two

11   friends of mine," he was referring to defendant Murphy and plaintiff. *See* Tran

12   Dec. Ex. 14. The same email and testimony is in the amended complaint, ¶¶50-51.

13   *See* Tran Dec. Ex. 16. While the deposition clips did not contain any

14   "confidential" information, they discredited defendants' previous media campaign

15   whereby they sought to wrongfully take credit for plaintiff's idea, deny his early

16   role in the company and falsely smear him as a shakedown artist.

17       **I.    Defense Counsel Fails to Demonstrate Any Concern about**

18             **"Commercially Sensitive" Information**

19       In the discussions between counsel after the releases, defense counsel never

20   raised any concern that plaintiff's counsel would release commercially sensitive

21   information. *See* Tran Dec. ¶ 17.

22   **III.   ARGUMENT**

23       **A.    This Court Lacks Subject Matter Jurisdiction**

24       "The Ninth Circuit has expressed a strong presumption against removal."

25   *No Doubt v. Activision Publishing, Inc.*, 702 F.Supp.2d 1139, 1141 (C.D. Cal.

26   2010). "A removed action must be remanded to state court if the federal court

27

28   Nov. 25 BI Article Tran Dec. Ex. 15) (videos viewable at
     http://www.businessinsider.com/snapchat-lawsuit-videos-2013-11).

1   lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  "The burden of

2   establishing federal jurisdiction is on the party seeking removal, and the removal

3   statute is strictly construed against removal jurisdiction."  *HSBC Bank USA v.*

4   *Ramirez*, 2008 WL 4724055 at *1 (C.D. Cal. 2008).

5        Defendants waited too long to remove this case, which was filed in state

6   court on February 21, 2013, resulting in waiver.  *See Cantrell v. Great Republic*

7   *Ins. Co.*, 873 F.2d 1249, 1256 (9th Cir.1989).  Also, partnership disputes yield no

8   basis for federal jurisdiction.  *See Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984);

9   *Dead Kennedys v. Biafra*, 37 F.Supp.2d 1151, 1152-1153 (N.D. Cal. 1999).  This

10  Court should remand this action on its own motion.  *See H.O.D. Properties, LLC v.*

11  *Sarkisyan*, 2013 WL 4052469 *1 (C.D. Cal. 2013) ("The court … must remand an

12  action *sua sponte* if it determines that it lacks subject matter jurisdiction").

13       **B.    There is no "Protective Order" to Enforce; and Even if there**

14              **Were, Defendants Repeatedly Waived any Potential Protection**

15       **1.    No Enforceable "Protective Order" Ever Issued**

16       Defendants ignore that Judge Segal struck out the recitation of "GOOD

17  CAUSE APPEARING" in the proposed protective order, as well as the "IT IS SO

18  ORDERED" language.  In doing so, Judge Segal was simply following the law.

19  California law permits issuance of a protective order only "for good cause shown."

20  *Cal. Code Civ. Proc*. § 2031.060.  The federal standard is the same.  *See*

21  *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006)

22  (FRCP 26 requires a "particularized showing" of "good cause"); *Makar-Wellbon v.*

23  *Sony Electrics*, 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective

24  orders require good cause showing); *see also* Hon. Suzanne H. Segal, Judges'

25  Procedures and Schedules ¶13 ("The Court may only enter a protective order upon

26  a showing of good cause").  But the proposed protective order lacked any

27  "particularized showing" of good cause, and instead spoke in conclusory terms.

28  *See* Van Dalsem Dec. Ex. A at page 3 (simply concluding that information "*may*

1    be subject to confidentiality limitations on disclosure due to federal laws, state

2    laws, and privacy rights"). Thus it could never have attained the status of a true

3    "protective order." *See Jepson, Inv. v. Makita Elec. Works.*, 30 F.3d 854, 858 (7th

4    Cir. 1994) ("if good cause is not shown, the discovery materials in question should

5    not receive judicial protection…") (*quoting Public Citizen v. Liggett Group, Inc.*,

6    848 F.2d 775, 789 (1st Cir. 1988); *Kamakana*, 447 F.3d at 1183 ("approved and

7    entered" stipulated protective order was "*not a guarantee of confidentiality*"

8    because it "contained no good cause findings;" noting "the hazard of stipulated

9    protective orders"). This destroys the entire basis for the Application.

10       **2.    Defense Counsel's Inaction Caused the Loss of any Potential**

11             **Protection**

12       **a.    Failure to Make a Particularized Showing of "Good Cause"**

13       When, on April 18, 2013, Judge Segal declined to enter the proposed

14   protective order due to the lack of any "good cause" showing, it was incumbent

15   upon defense counsel to take action. Defendants should have immediately

16   petitioned the state court (unilaterally, if necessary) for a finding of good cause

17   given that defendants now had deposition transcripts and documents produced in

18   discovery. With these, defendants could have attempted to point to specific

19   testimony and documents furnishing the "good cause" warranting issuance of an

20   actual protective order. Instead, defense counsel chose to do nothing to protect its

21   clients' information. As a result, no enforceable "protective order" ever issued.

22       **b.    Failure to Designate the Deposition Transcripts as "Confidential"**

23       Similarly, defense counsel failed to fulfill Mr. Lambert's commitment to

24   promptly designate portions of the deposition transcripts as confidential. Despite

25   Mr. Tran's April 26 email reminding of the 30-day deadline, Quinn Emanuel

26   neither complied nor replied to Mr. Tran that no such designation was required.

27       As such, even if there was a real protective order in place (which there was

28   not), *the deposition transcripts were never validly designated confidential in the*

-11-

1 | *first place*.  Defendants' attempt to erase from the record Mr. Lambert's
2 | commitment to designate parts the transcript confidential – by selectively quoting
3 | his statement at the deposition (*see* Application at 4) – only reveals defense
4 | counsel's true knowledge that their failure here is fatal to the Application.

5 |          **c.      Failure to Meet-and-Confer and Move to Protect Confidentiality**

6 |          Even if defendants had properly designated the deposition transcripts as
7 | confidential, they were required to take action to preserve those designations and
8 | those of the April Documents.  Specifically, they were required to meet-and-confer
9 | with plaintiff's counsel within 5 days of Mr. Tran's April 26 email, and move the
10 | court to preserve the designations within 30 days of April 26, assuming no
11 | resolution.  *See* Van Dalsem Dec. Ex. A at p. 7.  Again, defense counsel chose to
12 | do nothing instead.  Thus even if protection was present in the first place,
13 | defendants' failures here caused the materials to be "de-designated."  *See id*.

14 |          While Defendants contend that Mr. Tran's April 26 email is not specific
15 | enough, it is sufficiently specific and detailed as to the categories of documents
16 | and testimony considered non-confidential.  It identifies the information,
17 | describing precisely how only a small fraction of it could be entitled to
18 | confidentiality protection.  Defendants' disingenuous demand for more detail is
19 | nonsensical, as Mr. Tran clearly indicated his belief that all of the April Documents
20 | and deposition testimony (with the exception of Spiegel Depo. "339:15-342:5")
21 | were not confidential.  One struggles to imagine how more detail would have aided
22 | the analysis; the email explains, in short, that everything besides the commercially
23 | sensitive information contained on the specified deposition pages is merely
24 | information about work being done on the application and public website postings,
25 | and on this basis, none of it qualifies for protection.  Upon reading it, defendants
26 | knew (1) exactly what information plaintiff considered non-confidential; and (2)
27 | exactly why.  More detail would have consisted only of listing Bates Numbers and
28 | deposition pages individually– make-work that does not add to the analysis.

1   Notably, at this time defendants never stated to plaintiff's counsel their supposed

2   belief that Mr. Tran's email was insufficient, but simply ignored it.

3       **d.    Defendants' Manifold Excuses are Unavailing**

4       Defendants' protestations that these events came at a time when new defense

5   counsel was "substituting in" (Application at 5) are meritless.  As indicated,

6   defense counsel had ample time and resources to enter the case by threatening a

7   rapid-fire motion to compel, and even sent a letter addressing other parts of the

8   April 26 email.  They simply chose to do nothing about confidentiality.  Moreover,

9   the only logical significance of citing the "substituting" of defense counsel is to

10  subtly seek absolution for some oversight.  *By merely raising the argument,*

11  *defense counsel concedes that they are to blame here*.

12      Defendants' other purported excuses– that plaintiff counsel refused to meet-

13  and-confer, and that the case was stayed, are equally unavailing.  First, while

14  plaintiff's counsel did at one point refuse to deal with Quinn Emanuel due to the

15  conflict issue, this does not excuse Mr. Van Dalsem's omission of any response to

16  the April 26 email's discussion of confidentially in his April 29 letter.  Again, he

17  was able to threaten an immediate "motion to compel" at this time.  Mr. Van

18  Dalsem – along with the four other Quinn Emanuel attorneys whom Mr. Lambert

19  made aware of the email – simply chose to ignore it.  Defendants point out that

20  plaintiff's counsel sent a similar email on November 12, 2013, concerning other

21  discovery materials, and highlight defendants' email response *two days later*,

22  which argued that the email does not comply with ¶8 of the protective order.  *See*

23  Application at 8.  This only demonstrates defendants' understanding that *they must*

24  *promptly respond to such emails* to protect their rights.  They simply chose not to

25  with regard to the April 26 email.  Defendants claim also that their November 14

26  email was an invitation to meet and confer which was never accepted by plaintiff.

27  *Id*.  But Mr. Tran in fact replies "I am willing to meet and confer with you further

28  next week.  How about next Tuesday?"  Van Dalsem Dec. Ex. M at p.97.

1    Second, with regard to the stay, the point is moot:  By August 2, the stay

2    was permanently lifted and the conflict issue resolved– but Quinn Emanuel still did

3    nothing on the confidentiality issue.  In addition, the stay was lifted for a brief time

4    in June, whereupon Quinn Emanuel again did nothing on the confidentiality issue,

5    and instead focused on serving massive discovery requests.  If they were able to do

6    that, they could have also responded to the April 26 email.  Defendants complain

7    also that plaintiff's counsel "never again raised" the confidentiality issues after

8    April 26.  Application at 12.  But it is not plaintiff counsel's job to repeatedly

9    remind defense counsel to fulfill its commitments and mind deadlines.  Mr. Tran's

10   reminder and request for a response on April 26 was more than enough.

11       **3.    Defendants' Filing of the Deposition Transcripts Waived any**

12       **Possible Protection**

13   Assuming *arguendo* there was a valid protective order and defendants had

14   not otherwise waived it, when in July of 2013 defendants placed excerpts of the

15   Murphy and Brown transcripts in the state court file, they waived any purported

16   confidentiality protection.  This is simple fairness – defendants cannot be permitted

17   to selectively release portions of deposition transcripts they perceive to benefit

18   them, and then prohibit plaintiff from responding by claiming that "confidentiality"

19   protects the "entire deposition transcripts" (Application at 4) from disclosure.

20   The same fairness rationale prohibiting selective waivers of privilege applies here.

21   *See, e.g., Phoenix Solutions v. Wells Fargo Bank*, 254 F.R.D. 568, 576 (N.D. Cal.

22   2008) (subject matter waiver is required to avoid the unfairness when a litigant

23   "reveal[s] those that support the cause while claiming the shelter of the privilege to

24   avoid disclosing those that are less favorable"); *see also Littlejohn v. BIC Corp.*,

25   851 F.2d 673, 680 (3d Cir. 1988) (mere "references and scattered quotes" made in

26   court sufficient to waive protective order protection).

27       **4.    Plaintiff's Counsel Never Acknowledged the Confidentiality of the**

28       **Materials at Issue**

1   As indicated, plaintiff's counsel was on record as early as April 26, 2013,

2   that in its opinion, almost none of the subject materials qualify for confidential

3   protection.  Defendants, however, point to email exchanges on October 8 and 16,

4   2013, in which plaintiff's counsel supposedly acknowledged confidentiality.  *See*

5   Application at 6-7.  These assertions are without merit.

6   On October 8, plaintiff's counsel did email defendants to see if they would

7   would agree "to remove the 'confidential' designation for these documents" and

8   spoke of "de-disgnat[ion]."  Van Dalsem Dec. Ex. H.  But by "these documents,"

9   Mr. Tran was referring to specific documents *attached to his email*.  Significantly,

10  "these documents" were not part of the April Documents, but were from a later

11  production by defendants.  Thus, Mr. Tran was not conceding the "confidential"

12  status of any documents of the April Documents.  This is obscured because

13  defendants fail to include the documents attached to Mr. Tran's email, to which he

14  refers.  *See* Tran Dec. Ex. 17 (email with attachments showing Bates of SNP2450

15  and SNP3450– outside that of the April Documents (SNP1-807)).[3]

16  Defendants contend that because, as part of the same email exchange, Mr.

17  Tran agreed to redact personal information such as email and home addresses, such

18  is a further acknowledgment of confidentiality.  This desperate argument fails.

19  First, plaintiffs' counsel routinely redacts such information out of simple courtesy.

20  For example, during the deposition of defendant Spiegel, plaintiff's counsel

21  introduced an exhibit bearing personal information of defendant Spiegel's father –

22  but only after redacting those numbers.  *See* Tran Dec. at Ex. 18.  This was *before*

23  any assertion of confidentiality by defendants.  Second, as mentioned, defendants

24  themselves included personal identifying information in the documents they placed

25  in the public court file; thus they cannot argue that the mere presence of such

26  information renders them "confidential" under the law.

27
28  [3] Regarding these emails, defendants previously stated "we will not object to the public filing of these two exhibits" if certain redactions were made.  Van Dalsem Ex. H at p. 68.  Plaintiff made the redactions.  *See* Tran Dec. Ex. 17.

### 5.   Defendants Demonstrated Their Understanding That The Subject Information is Not "Confidential"

Ironically, the October 16 email exchange actually demonstrated defendants' understanding of the very limited nature of confidentiality protection.  When asked if they would stipulate to filing of plaintiff's amended complaint – which contains excerpts of defendants' deposition testimony and text from the April Documents (*see* Tran Decl. Exh. 16 at ¶¶ 26, 48, 51, 79) they replied merely that "…it appears to contain confidential information obtained from Defendants' document production.  *Specifically, the financial numbers* disclosed in Paragraph 70-72 …" Thus, *the only information defense counsel considered "confidential" was the "financial numbers."*  This is, in essence, plaintiff's position, *i.e.*, that only the commercially sensitive business information of the company is confidential.

### 5.   None of Released Information is "Confidential"

None of the material in the April Documents or depositions, with the exception noted in the April 26 email, qualifies as "confidential" under the law.  "'Good cause' is established where it is specifically demonstrated that disclosure will cause a 'specific prejudice or harm'."  *Rivera v. NIBCO*, 384 F.3d 822, 827 (9th Cir. 2004).  Defendants cannot make this showing, as these items contain only discussion of the parties' work on Picaboo and related matters.

Defendants' own conduct of placing deposition transcripts and documents in the public court file and seeking to excise only "financial" information from plaintiffs' amended complaint show their true belief that discovery materials concerning work on the Picaboo application are not "confidential."  Accordingly, they cannot even be designated as such under the proposed protective order.  *See* Van Dalsem Dec. Ex. A at p.3 (allowing "confidential" designation only when a party "believes in good faith that such information is entitled to confidential treatment under applicable law").  While the dissemination of these materials may perturb defendants because they undermine their efforts to slime plaintiff as a

1   shakedown artist in the media, this concern does not satisfy state or federal

2   standards for the issuance of a protective order.

3       *Plaintiff is happy to agree* – as he offered on April 26, 2013 – to keep

4   confidential defendants' truly commercially sensitive information, such as business

5   plans or acquisition information.  No agreement was reached, though, because

6   defense counsel never raised this concern in purporting to meet-and-confer

7   concerning the Application– which indicates the goal of the Application is not to

8   protect defendants' legitimate rights, but rather to prevent plaintiff from unraveling

9   defendants' media campaign against him.

10      **C.    Because There is no Confidentiality Protection, Neither**

11           **Contempt, FRCP 37 Sanctions or a TRO are Available**

12           **1.    Defendants Have Not Shown Contempt is Available**

13      To obtain contempt defendants must show: "(1) that [plaintiff's counsel]

14   violated [a] court order, (2) beyond substantial compliance, (3) not based on a good

15   faith and reasonable interpretation of the order, (4) by clear and convincing

16   evidence."  *Go-Video v. The Motion Picture Ass'n of America*, 10 F.3d 693, 695

17   (9th Cir. 1993).  Defendants cannot meet this standard.

18      "[T]he legitimacy of the contempt adjudication is based on the validity of

19   the underlying order."  *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d

20   676, 689 (9th Cir. 2010) (*quoting Davies v. Grossmont Union High Sch. Dist.*, 930

21   F.2d 1390, 1394 (9th Cir.1991)).  Here, there was no true, enforceable protective

22   order because the requisite "particularized showing" of "good cause" was not

23   made.  *See Kamakana*, 447 F.3d at 1183; *Jepson,* 30 F.3d at 858; *Public Citizen*,

24   848 F.2d at 789.  As such, contempt is unavailable to defendants.  And even if

25   there was such an order, defendants waived that potential protection in multiple

26   ways.  Plaintiff's counsel had, at a minimum, "a good faith and reasonable

27   interpretation" of such, based on the above analysis.

28      While plaintiff's counsel firmly believes in the correctness of its

1    interpretation of what Judge Segal intended by striking out "GOOD CAUSE

2    APPEARING" and "IT IS SO ORDERED" on April 18, and their conclusions

3    about defendants' waiver conduct, the very worst defendants can credibly say

4    about plaintiff's counsel is that there was some ambiguity as to the significance of

5    these events.  This is insufficient to support a finding of contempt.  *See Gates v.*

6    *Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) ("If an injunction does not clearly describe

7    prohibited or required conduct, it is not enforceable by contempt").

8          It is well established that before one may be punished for contempt for

9          violating a court order, the terms of such order should be clear and

10         specific, and *leave no doubt or uncertainty* in the minds of those to

11         whom it is addressed.  [Citations.]  Failure to take action required by

12         an order can be punished only if the action is clearly, specifically, and

13         *unequivocally commanded* by that order.  *United States v. Fleischman*,

14         339 U.S. 349, 370-371, 70 S.Ct. 739, 94 L.Ed. 906 (1950).

15   *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974).

16                **2.    Defendants Have Not Shown Sanction are Available**

17         For the same reason, FRCP 37 sanctions are unavailable.  These too require

18   a real "court order" and a genuine "failure to comply" with it.  FRCP 37(b).  There

19   was no court order and even if there were, defendants waived their rights under it;

20   plaintiffs' counsel didn't fail to comply with it.

21                **3.    Defendants Have Not Shown a TRO is Available**

22         For similar reasons the requested TRO is unavailable.  Due to the lack of a

23   court order and defendants' waivers, all of the subject information is public.  *See*

24   *Biovail Laboratories v. Anchen Pharmaceuticals*, 463 F.Supp.2d 1073, 1079 (C.D.

25   Cal. 2006) ("It is well established that the fruits of pretrial discovery are in the

26   absence of a court order to the contrary, presumptively public").  Defendants seek

27   a TRO "to prevent plaintiff and his counsel from further violating the Protective

28   Order."  Application at i.  But again, there is no enforceable protective order and

1   even if there was, plaintiff has not violated it; defendants have waived it.

2          Defendants also fail to meet the other stringent requirements for issuance of

3   a TRO.  To warrant the "extraordinary remedy" of injunctive relief under

4   Fed.R.Civ.P. 65, the proponent "must establish that he is likely to succeed on the

5   merits, that he is likely to suffer irreparable harm in the absence of preliminary

6   relief, that the balance of equities tips in his favor, and that an injunction is in the

7   public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  These demanding

8   requirements are unsatisfied here.  Defendants have not shown likelihood to

9   succeed on the merits, given the lack of an enforceable "good cause" protective

10  order and defendants' waiver conduct.

11         Critically, the *only* claimed basis for showing irreparable harm in the

12  Application is that "Disclosure of Snapchat's ***sensitive financial information and***

13  ***business plans*** is a classic irreparable injury."  Application at 14.  But again,

14  Plaintiff has *never* released such information and, as early as April 26, contended

15  that such commercially sensitive information *is entitled to protection and should*

16  *be kept confidential*.  As indicated, this never came up in counsel's discussions

17  before the filing of the Application because defense counsel never expressed any

18  concern about it.  *See* Tran Dec. at ¶ 17.  But Plaintiff is happy to agree to keep

19  such information confidential, as only it meets the "good cause" standard.

20         The balance of equities tips in plaintiff's favor.  Again, the disclosures

21  merely respond to defendants' media campaign that falsely claimed that they came

22  up with the idea for Picaboo, denied plaintiff Brown's role in the venture and

23  attempted to paint him as a shakedown artist whose lawsuit is a "frivolous"

24  "fabrication" containing allegations that he "made up."  Snapchat is a major

25  company and tech sensation that has the press banging at its door.  Plaintiff is

26  entitled to fight back against them.

27         Defendants have not shown that the public interest would favor a TRO.

28  While there is a public interest in protecting truly commercially sensitive

1   information, again, that is not at issue here.  Defendants cannot show there is a

2   public interest in concealing information about work on the Picaboo application,

3   given that *they themselves have repeatedly took to the media to discuss the origin*

4   *of the company and how the application came about.*  *See* Tran Dec. Exs. 1, 13.

5        **D.    Discovery is Unwarranted**

6        Courts look with disfavor on attempts to depose opposing counsel. . . .

7        Depositions of opposing counsel are disruptive of the adversarial

8        process and harmful to the standards of the legal profession, and entail

9        a high risk of implicating opinion work product.

10  *Caterpillar v. Friedmann*, 164 F.R.D. 76, 78 (D. Or. 1995); *see also Shelton v. Am.*

11  *Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("The practice of forcing trial

12  counsel to testify as a witness, however, has long been discouraged") (*citing to*

13  *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)).

14       Defendants claim that they "still do not know what other information

15  plaintiff has publicly disclosed, and to who else their disclosures were made."

16  Application at 8.  This is inaccurate.  Plaintiff's counsel assured defense counsel

17  that there are no other materials released that have not already been published.  *See*

18  Tran Dec. at ¶ 18.  Thus, there is no need for discovery.

19  **IV.   CONCLUSION**

20       For the foregoing reasons, this Court should deny defendants all relief.

21  Dated:  December 9, 2013       RAY A. MANDLEKAR, ATTORNEY AT LAW

22

23                   By: _____

24                      Ray A. Mandlekar

25                   LEE TRAN LIANG & WANG LLP

26                   K. Luan Tran
                     James M. Lee

27                   Cyrus Khojandpour
                     Attorneys for Plaintiff

28                   Frank Reginald Brown, IV

PLAINTIFF'S OPPOSITION TO APPLICATION OF DEFENDANTS