QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Bruce E. Van Dalsem (Bar No. 124128)
  (brucevandalsem@quinnemanuel.com)
  B. Dylan Proctor (Bar No. 219354)
  (dylanproctor@quinnemanuel.com)
  Joseph C. Sarles (Bar No. 254750)
  (josephsarles@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendants Snapchat, Inc., Toyopa Group, LLC, Evan Thomas Spiegel, and Robert Cornelius Murphy

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FRANK REGINALD BROWN IV, an individual,<br><br>            Plaintiff,<br><br>    vs.<br><br>SNAPCHAT, INC., a Delaware corporation; TOYOPA GROUP, LLC, a California Limited Liability Company; EVAN THOMAS SPIEGEL, an individual; ROBERT CORNELIUS MURPHY, an individual; LIGHTSPEED VENTURE PARTNERS IX, L.P., a California limited partnership; BENCHMARK CAPITAL PARTNERS VII, L.P., a California limited partnership; INSTITUTIONAL VENTURE PARTNERS XIV, L.P., a Delaware limited partnership; GENERAL CATALYST GROUP VI, L.P., a Delaware limited partnership; GC&H INVESTMENTS, LLC, a California limited liability company; SV ANGEL IV, L.P., a Delaware limited partnership; SF GROWTH FUND, an unknown entity; THL A17 Limited, an unknown entity; and DOES 1 through 25 inclusive.<br>            Defendants. | CASE NO. 2:13-CV-8569 RGK (SSx)<br><br>Judge:   Hon. Alecia Rosenberg<br>Courtroom B – 8th Floor<br><br>**DISCOVERY MATTER**<br><br>**REPLY IN SUPPORT OF APPLICATION OF DEFENDANTS SNAPCHAT, INC., EVAN THOMAS SPIEGEL, AND ROBERT CORNELIUS MURPHY FOR:**<br><br>**(1) TEMPORARY RESTRAINING ORDER;**<br><br>**(2) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION;**<br><br>**(3) ORDER TO SHOW CAUSE RE DISCOVERY, CONTEMPT, AND SANCTIONS**<br><br>(Declarations of Bruce E. Van Dalsem and Joseph C. Sarles filed concurrently) |

1        Plaintiff and his counsel give a long list of excuses for their misconduct in
2   opposition, including a strident new one they have never made before:   that the
3   Order the parties have operated under and treated *as an Order* for the past 8 months
4   in fact was never "enforceable" at all, and so plaintiff can violate it as he sees fit.
5   Neither this nor any of plaintiff's other post-hoc excuses is even plausible.   The
6   Protective Order was signed and entered by a judge as an Order, and that makes it
7   enforceable.   Plaintiff argues that no good cause supported its issuance, but that is
8   irrelevant unless and until the Order is vacated, which has never happened.
9        Plaintiff also argues waiver under the terms of the (purportedly invalid)
10  Protective Order, but a precondition for de-designation under that Order is the
11  occurrence of a meet and confer—and it is undisputed that no such conference ever
12  took place.   Plaintiff argues that defendants also waived by placing some documents
13  into the public record themselves, but plaintiff ignores and has no answer to the clear
14  law that such limited disclosures do *not* waive confidentiality protections as to other
15  non-disclosed information—plaintiff's exclusive reliance on *privilege* waiver law to
16  support his Protective Order waiver argument here is misplaced.   And plaintiff
17  argues that some designated information was not truly confidential, but again plaintiff
18  ignores and has no answer to the clear law that he cannot simply disclose information
19  he unilaterally decides was improperly designated, and that arguments about
20  improper designation cannot be used to justify a prior Protective Order violation.
21       Plaintiff relies on this long list of post-hoc excuses because he cannot deny his
22  wrongful conduct.   To obtain a litigation advantage, plaintiff and his counsel
23  knowingly disclosed Snapchat's confidential information to the press.   They
24  admitted previously to providing deposition clips to the media, and they now admit,
25  for the first time, that they also gave the media "a few documents" that Snapchat had
26  designated.   This was all done surreptitiously—prior to their disclosures, plaintiff
27  never provided notice that, in their confused view, defendants had purportedly
28  waived their rights under the Protective Order (let alone that such Order never

-1-
*APPLICATION FOR TRO AND OSC RE PROTECTIVE ORDER VIOLATIONS*

actually issued).   Undisputed facts thus show that plaintiff and counsel have intentionally violated an Order that now has the force of an Order of this Court. Plaintiff argues (as a further excuse) that this Court is powerless to remedy his violation because plaintiff will argue in the future that the Court lacks subject matter jurisdiction, but the Court obviously has jurisdiction to enforce its own prior Orders, and it also has jurisdiction over plaintiff's counsel as officers of the court.

As to remedy, plaintiff and his counsel claim a TRO and injunction are unnecessary because they are "happy to agree" to keep *some* of Snapchat's information confidential (i.e., whatever plaintiff unilaterally determines merits protection), but the parties already had an agreement—the Protective Order—and plaintiff and his counsel are now renouncing it wholesale.   A TRO and injunction are plainly needed to prevent further disclosures of Snapchat's designated information. And as to sanctions, plaintiff and his counsel argue they had a "good faith" belief that the Protective Order was not "real," but their own conduct shows they in fact had no such belief at all—they repeatedly cited and invoked the Order's provisions, and when asked to explain their violations of it, made no claim that the Order was not extant.   An OSC should thus issue regarding discovery into these serious violations of a Court Order, and regarding contempt and Rule 37 sanctions.

I.  **PLAINTIFF'S AND HIS COUNSEL INTENTIONALLY AND FLAGRANTLY VIOLATED THE PROTECTIVE ORDER**

There is no dispute that plaintiff and counsel knowingly disclosed to the press information produced by Snapchat.   Their many excuses for this misconduct all fail.

   A.  **A Document Labeled "Order" And Signed By The Presiding Judge Is Indeed "Real" Order**

Demonstrating the willfulness with which they violated the Protective Order, plaintiff and his counsel now contend—after months of *invoking* the Protective Order's provisions where it suited them—that their clear violations are excused because the "Stipulation and Protective Order" is not a "real" or "true protective

1  order" (Opp. at 5, 10, 11), even though it was signed by the Court on a page entitled
2  "ORDER."  This is nonsense.  The court ordered as follows:

> **ORDER**
> GOOD CAUSE APPEARING, the Court hereby approves this Stipulation and Protective Order.
> IT IS SO ORDERED.
> Dated: April 18, 2013
> JOHN L. SEGAL
> THE HON. JOHN L. SEGAL

Van Dalsem Decl., Ex. A. On the caption page, the Court blacked out the word "[Proposed]" so that the document as signed was titled "Stipulation **and Protective Order**":

> FRANK REGINALD BROWN, IV,
>      Plaintiffs,
> vs.
> SNAPCHAT, INC., a Delaware corporation; TOYOPA GROUP, LLC, a California Limited Liability Company; EVAN THOMAS SPIEGEL, an individual; ROBERT CORNELIUS MURPHY, an individual; and DOES 1 through 25 inclusive,
>
> Case No. BC501483
> STIPULATION AND PROTECTIVE ORDER
> Dept:     50
> Judge:    Hon. John L. Segal
> Action Filed: February 21, 2013

Obviously, a "Stipulation and Protective Order" that is signed by a court under the "ORDER" heading, with a statement that the court "approves" the Stipulation and Protective Order, has the force of a "real" and "true" Protective Order.  *See Howard v. Drapkin*, 222 Cal. App. 3d 843, 848 (1990) ("This stipulation was ultimately signed by the court and converted into an order.").  And indeed, until yesterday, plaintiff and his counsel never suggested otherwise.  To the contrary, plaintiff consistently treated the Protective Order *as the court Order* that it plainly is.  Van Dalsem Decl., Dkt. 13-1, Ex. H (10/8/13 Email from L. Tran: "*I know that under the protective order, there is a process for us to go through to de-designate 'confidential' tags…*"); *id.*, Ex. M (11/12/13 Email from L. Tran: "*Pursuant to par. 8 of the*

*Protective Order…*"); *id*, Ex. C (4/26/13 Email from L. Tran: "*Pursuant to par. 8 of the Protective Order…*"). Notably, plaintiff offers no authority supporting his new position to the contrary.[1]

### B. The Los Angeles Superior Court Model Protective Order Is A "True Protective Order" Once Signed By A Judge

Grasping further, plaintiff contends that the Protective Order's language could "*never* have attained the status of a true protective order" because it "spoke in conclusory terms." Opp. at 10-11. But plaintiff ignores that the Protective Order is a minor modification of the *Los Angeles Superior Court Model Protective Order*. *See* Van Dalsem Decl., Ex. A. It was *plaintiff* who proposed using the Los Angeles Superior Court Model. *See* Supplemental Declaration of Bruce E. Van Dalsem, filed concurrently ("Supp. Van Dalsem Decl."), Ex. A (3/28/13 Email from L. Tran: "Joe, let's use this model protective order prepared by the LASC. Came from the court's website. Thx."). Plaintiff cites *Kamakana v. City and Cty of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006), but there a *non-party* sought to rely on a Protective Order and failed to obtain a necessary court Order to maintain documents under seal. The case has no bearing here, where Snapchat is a party to the Protective Order and the question is not whether a Court was obligated to grant a sealing request but whether another party to the Protective Order was free to simply ignore the Order.

---

[1] The Court's decision to remove the "good cause" language, although not explained, aligns with the process contemplated by the Protective Order. If the parties have conferred as required by the Order and been unable to reach agreement, the Protective Order provides for a motion to determine whether good cause exists to seal particular information. Protective Order, ¶ 8. The Court's decision to make clear that it reserved its "good cause" determinations for a later time does not somehow remove the Court's ability to enter orders controlling the discovery process, and the "it is so ordered" language was redundant because immediately above Judge Segal's signature, centered on the page, is the word "ORDER."

### C. The Transcripts And Documents Released Were Clearly Designated

Although plaintiff's counsel concede they disclosed "a few documents" that Snapchat designated under the Protective Order (without identifying how many or which documents), they argue the deposition transcripts were "never validly designating confidential." Opp. at 11-12. But plaintiff simply ignores the April 11, 2013 email cited in Snapchat's TRO Application, in which Snapchat's prior counsel stated that "the transcripts [of defendants Spiegel and Murphy] a*re so designated in accordance with the Protective Order.*" Van Dalsem Decl., Ex. C (emphasis added). Plaintiff also ignores his own counsel's *objection* to the designation, which itself acknowledged that both deposition transcripts had been designated under the Protective Order. Van Dalsem Decl., Ex. D. Plaintiff cites to no authority in the Protective Order or otherwise suggesting that Snapchat's prior counsel's statement that those designations may be later narrowed rendered its initial designations invalid.

### D. Plaintiff's Failure To Meet And Confer Precludes Any Waiver

Without quoting the Protective Order, plaintiff and his counsel argue Snapchat was "required to meet-and-confer with plaintiff's counsel" to avoid waiver (Opp. at 12), but the Protective Order's meet and confer requirement is a *prerequisite* to any motion practice or waiver, not a unilateral obligation on Snapchat. The Order states "**the parties shall confer in good faith** as to the validity of the designation" **before** any motion is brought, and thus before waiver could be triggered by failure to bring a motion. Protective Order at ¶ 8. Plaintiff and his counsel do not dispute that no such conference occurred, and further admit that "plaintiff's counsel did at one point refuse to deal with Quinn Emanuel." Opp. at 13. That point was April 30, *four days* after sending their objection email to the Protective Order designations (and

*before* the time in which the Protective Order requires that "the parties shall confer in good faith").   Van Dalsem Decl., ¶ 9.[2]

     Plaintiff argues a single email sent before his refusal to confer with Snapchat's new counsel is sufficient (Opp. at 12), but even if plaintiff's counsel had not refused to meet and confer with Snapchat's new counsel, "[m]erely sending one letter to the Defendants is not a good faith effort."   *Cima v. Wellpoint Health Networks, Inc.*, No. 4:05-CV-4127-JPG, 2006 WL 1064054 at \*3 (S.D. Ill. Apr. 20, 2006) (ordering parties to explain in writing their position as to whether "*each document* is governed by the protective order") (emphasis in original).   Plaintiff claims his counsel's email did not even need to list "Bates Numbers and deposition," because that would be "make-work" (Opp. at 12), but that is precisely the work the *Court* would have to do if plaintiff's reading of the Protective Order were accepted.   Under plaintiff's reading, if he objects to hundreds of documents on a blanket basis and refuses to meet and confer, confidentiality is lost unless the *Court* reviews and approves the designation of every single page to which plaintiff objected.   One does not "struggle to imagine" (Opp. at 12) why a Court order would require the *parties* to go through the exercise of conferring about each document in dispute before requiring the *Court* to resolve each such dispute.   If plaintiff wished for a document to be de-designated or for a motion to be brought upholding each designation, he was obligated at a

---

[2]  Plaintiff's counsel has engaged in similar double-talk as to the conference concerning this TRO.   Mr. Tran claims that the "only issue Mr. Van Dalsem raised was with the release of the deposition transcripts" (Tran Decl. ¶ 17), but that is false. Mr. Van Dalsem wrote that "[i]f you won't agree to stop providing materials subject to the protective order to the media, we have a problem."   Van Dalsem Decl., Ex. M. During the Rule 7-19 conference, Mr. Van Dalsem expressly asked Mr. Tran if his firm and his client would agree to stop providing confidential materials to the media, at least until resolution of the jurisdictional issues, and Mr. Tran categorically refused. *See* Supp. Van Dalsem Decl., ¶¶ 2-3; Declaration of Joseph C. Sarles, filed concurrently, at ¶¶ 2-3.

minimum to confer with Snapchat about the designation of each such document. His undisputed failure to do so means there was no waiver.

### E. Withdrawal Of Designations As To Some Documents Does Not Waive Protection As To All Other Documents

Plaintiff's next excuse is that the public filing of "excerpts of the Murphy and Brown transcripts" purportedly waived protection as to the entire transcripts, under purportedly analogous selective waiver of *privilege* authorities. Opp. at 14. But the law is well-established that where a party "remove[s] confidentiality designations from some documents . . . the confidentiality designations [the party] did not remove remain[] because those documents are still confidential, and therefore subject to the Court's Protective Order." *Telecomm. Sys., Inc. v. Mobile 365, Inc.*, No. CIV.A.3:06CV485, 2009 WL 5943235 at *6 (E.D. Va. Mar. 31, 2009). This makes sense—a party can de-designate some of its own documents without waiving its designations as to all other documents, and so the analogy to selective disclosures of privileged information is inapt. Plaintiff and his counsel also assert Snapchat publicly filed defendants' "personal email addresses" and "phone numbers"(Opp. at 7), but that is simply false—that information was *redacted* from the filings plaintiff cites. *See* Plaintiff's RJN, Ex. 3. Each of plaintiff's many excuses thus fails. Plaintiff's disclosures were wrongful, and they violated an Order of this Court.

## II. THE COURT SHOULD PREVENT FURTHER VIOLATIONS AND IMPOSE SANCTIONS

The Court should take action to ensure that further violations do not occur. In addition, plaintiff's and counsel's intentional violations clearly warrant sanctions.

### A. This Court Always Has Jurisdiction To Enforce Its Orders

First, plaintiff argues that this Court is powerless to enforce the Protective Order until plaintiff's forthcoming motion to remand is decided. Opp. at 9-10. But under 28 U.S.C. § 1450, "[a]ll injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or

modified by the district court." *See* TRO App. at 10 n.4.  Like any other state court order, the Protective Order is enforceable even if a party intends to seek a remand to state court.  *See Pena v. Taylor Farms Pacific, Inc.*, No. 2:13-CV-1282 KJM AC, 2013 WL 3933934, *5 & n.3 (E.D. Cal. Jul. 29, 2013) (finding state court scheduling order  in effect under 28 U.S.C. § 1450 in removed action notwithstanding plaintiffs' indication that they might file remand motion); *Heidel v. Voight*, 456 F.Supp. 959, 959 (D.C. Wis. 1978) (finding state court injunction in effect in removed action under 28 U.S.C. § 1450 while remand motion was pending).   And regardless of subject matter jurisdiction over the merits of a dispute, "the district court always has jurisdiction to enforce its own orders."   *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (federal courts have "ancillary jurisdiction . . . to manage its proceedings, vindicate its authority, and effectuate its decrees.").   The Court also has jurisdiction to regulate plaintiff's counsel as officers of the Court.   *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (a district court "has inherent authority to regulate the conduct of attorneys who appear before it" (citation omitted)).

### B.    A TRO and OSC Re Injunction Should Issue

Plaintiff does not dispute disclosure of confidential information is an irreparable injury.   Injunctive relief is clearly necessary to prevent that harm—plaintiff has repudiated the Court Order requiring confidentiality, claiming it does not exist and cannot be enforced.   Plaintiff and his counsel are purportedly "happy to agree" to keep *some* of Snapchat's information confidential (Opp. at 17), but this is merely an offer to comply with *only some of a Court Order* (and a claim of right to violate other parts, as plaintiff's counsel has already done).   Injunctive relief is necessary to prevent further violations of the Order.

### C.    Sanctions Are Appropriate

Finally, plaintiff provides no argument against Rule 37 sanctions other than his spurious claim that no order was violated.  Opp. at 18.   An Order *was* violated, and

1  it is undisputed that Rule 37 sanctions are for plaintiff's and his counsels' unrepentant
2  violations. *Harmston v. City and County of San Francisco*, No. C 07-01186SI, 2007
3  WL 3306526 at *4-7 (N.D. Cal. Nov. 6, 2007) (imposing sanctions for Protective
4  Order violation in light of failure "to first meet and confer" regarding intended
5  disclosures, "regardless of whether the parties were justified in their designations");
6  *In re Criminal Contempt Proceedings,* 329 F.3d 131, 138 (2d Cir. 2003) ("it is well
7  settled that persons subject to an injunctive order ... are expected to obey that decree
8  until it is modified or reversed, even if they have proper grounds to object to the
9  order")). Notably, Rule 37 does not require a finding of willfulness, *see Fed. R. Civ.*
10 *P.* 37, although willfulness is established even by plaintiff's admissions thus far, and
11 may further be established following discovery, which the Court should order.
12 Appropriate sanctions under Rule 37 may take many forms, but at a minimum,
13 sanctions in the form of Snapchat's fees and expenses are appropriate on this record.
14     Plaintiff and his counsel contend, in opposing the request for an OSC re
15 contempt, that they had a "good faith" belief that the Court's Protective Order wasn't
16 a "real" order. Opp. at 17-18. But their conduct shows the opposite—until they
17 were caught violating it, plaintiff's counsel repeatedly invoked the Order, as
18 discussed above. Counsel's post-hoc claim that a court Order they repeatedly cited
19 and relied on actually did not even exist is not credible, and certainly is no defense to
20 contempt. Plaintiff's counsel believed the Protective Order had all the force and
21 effect of any other Court Order, and willfully chose to violate it. That is all that is
22 required for contempt.

23 DATED:   December 10, 2013        QUINN EMANUEL URQUHART &
24                                   SULLIVAN, LLP
25
26                                   By: /s/ Bruce E. Van Dalsem
27                                       Bruce E. Van Dalsem
                                         Attorneys for Snapchat, Inc., Evan Spiegel,
28                                       Robert Murphy, and Toyopa Group LLC